**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Anne Beste (SBN 326881)
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:   (858) 914-2001
Facsimile:   (858) 914-2002

*Attorneys for Plaintiff Tatoma, Inc.*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATOMA, INC., a California Corporation, DBA Atelier Aucoin Salon, on behalf of itself and all others similarly situated,<br><br>                          Plaintiff,<br><br>           vs.<br><br>GAVIN NEWSOM, in his official capacity as the Governor of California; XAVIER BECERRA, in his official capacity as the Attorney General of California; and KRISTY UNDERWOOD, in her official capacity as Executive Officer of the State Board of Barbering and Cosmetology,<br><br>                          Defendants. | Case No. **'21 CV0098 BEN JLB**<br><br>**CLASS ACTION COMPLAINT FOR:**<br>1. **14th AMENDMENT DUE PROCESS;**<br>2. **14th AMENDMENT EQUAL PROTECTION;**<br>3. **5th AMENDMENT TAKINGS;**<br>4. **CAL. CONST. ART. 1 § 1 RIGHT TO LIBERTY;**<br>5. **CAL. CONST. ART. 1 § 7 RIGHT TO PROPERTY; and**<br>6. **CAL. CONST. ART. 1 § 19 TAKINGS WITHOUT COMPENSATION**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

# INTRODUCTION

California courts have routinely held that the California Constitution provides just compensation to property owners when their land is taken for public use, because the law seeks to bar the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.

Since March 2020, the State of California has issued multiple closure orders prohibiting barbering and cosmetology professionals from operating their businesses.  These businesses have been singled out for closure in order to benefit the public.  They remain one of the only types of businesses which have been ordered to completely shut down, with no opportunity to conduct any operations whatsoever or earn a livelihood, despite the lack of any showing or evidence that the operation of hair salons at the same levels permitted for other types of businesses (*e.g.*, 20% capacity) would lead to increased transmission rates of Covid-19.  Gyms are allowed to operate outdoors, but not hair or nail salons.  As such, the property of Plaintiff and the Class has been taken for a public use and benefit, and compensation must be paid.

When the government takes the property of dozens or even hundreds of homeowners whose homes abut an existing highway in order to expand the highway, compensation is owed to the homeowners; the public at large is benefitted, but only certain members of the public bear the burden, thus entitling

1

them to compensation.  The same is true here.  Plaintiff and the Class own and operate hair and nail salons which have been forced to completely shutter their operations, with absolutely no opportunity to conduct any business whatsoever, in order to benefit the public.  Almost all other businesses have been permitted to continue operations on-site at 20% capacity, operate outdoors, conduct operations remotely, or provide services on a take-out or delivery basis, thus permitting them to earn some kind of livelihood.  Plaintiff and the Class, in stark contrast, have been denied all economically beneficial use of their property, and thus have been subject to a complete taking of their property and business.

Because Plaintiff's fundamental rights guaranteed by the constitutions of the United States and the State of California have been violated, Plaintiff is entitled to compensation.

## NATURE OF THE ACTION

1.    In response to the coronavirus emergency, Defendants have taken Plaintiff's property without just compensation in violation of fundamental rights protected by the United States and California constitutions.

2.    On March 19, 2020, Governor Newsom issued Executive Order N-33-20 (the "Governor's Order") attached hereto as **Exhibit 1**. The Governor's Order has no sunset provision or expiration date.

3.    Several other orders were issued subsequent to March 19, 2020 which adversely affected Plaintiff's business and imposed restrictions on the ability of

2

CLASS ACTION COMPLAINT

Plaintiff and the Class to operate their hair and nail salons.

4.     On December 3, 2020, the State of California issued a Regional Stay at Home Order (*see* **Exhibit 2**).  The Regional Stay Home Order and a supplemental order, signed December 6, 2020, announced that the orders would go into effect at 11:59 PM the day after a region was determined to have less than 15% Intensive Care Unit ("ICU") availability.  The supplemental order clarified retail operations and went into effect immediately.  They prohibit private gatherings of any size, close sector operations except for critical infrastructure and retail, and require 100% masking and physical distancing in all others.  The order was supposed to last only three weeks.

5.     Then, on December 29, 2020, the most recent December 3, 2020 closure order ***was extended indefinitely***.

6.     As a result of the orders, including the most recent December 29, 2020 order, Plaintiff is completely and indefinitely prohibited from engaging in any business operations.

7.     The State's official Covid-19 website provided the following explanation for issuance of the December 3, 2020 Stay at Home Order:

/ / /

/ / /

/ / /

CLASS ACTION COMPLAINT

**Regional Stay Home Order**

*Why is this Regional Stay Home Order being implemented now*?

      We are in the midst of an unprecedented surge in cases and hospitalizations in California and across the country. ***Without immediate action many hospital Intensive Care Units (ICU) will reach capacity before the end of the year. ICU beds are a critical resource for individuals who need the most advanced support and care***. Given the nationwide surge, the ability to add surge ICU capacity is limited by availability of ICU nurses and physicians. ***We need to protect our hospital capacity so those who need care—for such things as cancer treatment, heart attacks, and strokes—can get it.*** By taking this action we are saving lives, protecting our health care delivery system and keeping those at highest risk and essential workers safe.

## PARTIES

      8.    Plaintiff Tatoma, Inc., d/b/a Atelier Aucoin Salon, is a California Corporation with its principal place of business in La Jolla, California. The California Board of Barbering and Cosmetology ("the Board") issued License No. 313411 to Plaintiff on June 30, 2017. Plaintiff operates Atelier Aucoin Salon in San Diego, California.

      9.    Defendant Gavin Newsom is made a party to this action in his official capacity as the Governor of California. The California Constitution vests the "supreme executive power of the State" in the Governor, who "shall see that the law is faithfully executed." CAL. CONST. ART. V, § 1. Governor Newsom issued the Governor's Order on March 19, 2020.

      10.    Defendant Xavier Becerra is made a party to this action in his official

CLASS ACTION COMPLAINT

capacity as the Attorney General of California. Under California law, Becerra is the chief law enforcement officer with supervision over all sheriffs in the State. CAL. CONST. ART. V, § 13.

11.  Defendant Kristy Underwood is made a party to this action in her official capacity as Executive Officer of the California State Board of Barbering and Cosmetology.

## JURISDICTION AND VENUE

12.  This action is brought under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiff's constitutional rights to due process, equal protection, and just compensation for temporary takings under the Fifth and Fourteenth amendments to the U.S. Constitution.

13.  Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343.

14.  This Court has supplemental jurisdiction over the claims asserted under California's Constitution, statutes, and regulations.

15.  The Southern District of California is the appropriate venue for this action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is a District in which Defendants maintain offices, exercise their authority in their official capacities, have enforced, and have threatened to enforce the Orders.

/ / /

/ / /

5

CLASS ACTION COMPLAINT

## FACTUAL ALLEGATIONS

16.     On or about January 31, 2020, the U.S. Secretary of Health and Human Services declared a public health emergency, under section 319 of the Public Health Service Act (42 U.S.C. 247d), in response to COVID-19.

17.     On or about March 4, 2020, California Governor Gavin Newsom proclaimed a State of Emergency as a result of the potential threat of COVID-19.

18.     On or about March 13, 2020, President Donald J. Trump proclaimed a National State of Emergency as a result of the threat of the emergence of a novel coronavirus, SARS-CoV-2, which causes the COVID-19 illness.

19.     On March 19, 2020, Governor Newsom issued Executive Order N-33-20, attached hereto as Exhibit 1, directing all residents to heed the State Public Health Officer's directives.

20.     Several other orders were issued subsequent to March 19, 2020 which adversely affected Plaintiff's business and imposed restrictions on the ability of Plaintiff and the Class to operate their hair and nail salons.

21.     On December 3, 2020, the State of California issued a Regional Stay at Home Order.  The Regional Stay at Home Order and a supplemental order, signed December 6, 2020, announced that the orders would go into effect at 11:59 PM the day after a region was determined to have less than 15% Intensive Care Unit ("ICU") availability.  The supplemental order clarified retail operations and went into effect immediately.  They prohibit private gatherings of any size, close sector

6

CLASS ACTION COMPLAINT

operations except for critical infrastructure and retail, and require 100% masking and physical distancing in all others.

22.    On December 4, 2020, the California State Board of Cosmetology issued a directive in response to the December 3, 2020 Stay at Home Order, clarifying that Plaintiff and all other hair and nail salons were required to close and completely shutter their operations.  The directive stated:

> ***When a Regional Stay at Home Order is triggered because ICU capacity has dropped below 15%, salons, barber shops and personal care services (esthetics, manicuring and electrology) must close***.[1]

23.    The December 4, 2020 order was originally slated to remain effective for three weeks.

24.    However, on December 29, 2020, California extended the closure order indefinitely.  As stated by Dr. Mark Ghaly, Secretary of the California Health and Human Services, Southern California's stay-at-home order will now remain in place for the foreseeable future as the region grapples with a gripped ICU capacity,

25.    The order, which covers an 11-county Southern California area, took effect at 11:59 p.m. Dec. 6, 2020 and was set to expire December 28, 2020. But with the region's intensive-care unit capacity at hospitals still effectively listed at

---

[1] The directive is available at https://www.barbercosmo.ca.gov/licensees/new_stay_at_home.pdf, last visited Jan. 11, 2021 (emphasis in original).

CLASS ACTION COMPLAINT

0%, that order was instead extended.

26.    As a result of the orders, including the most recent December 29, 2020 order and the State Board of Cosmetology's December 4th directive, Plaintiff is completely and indefinitely prohibited from engaging in any business operations.

27.    Plaintiff has ceased licensed operations and has had no income from its Board-licensed activities in the beauty professions since the Defendants issued the Orders.

28.    Significantly, Gavin Newsom's order closing hair and nail salons completely is unique in the United States.  As of December 14, 2020, all other 49 states allowed hair and nail salons to remain open, as indicated in the following chart:



CLASS ACTION COMPLAINT

## ARBITRARY CATEGORIES OF "ESSENTIAL" AND
## "NON-ESSENTIAL" SERVICES

29.    The Governor's Order, by reference, incorporated the U.S. government's "16 critical infrastructure sectors whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof" such that Newsom ordered that "Californians working in these 16 critical infrastructure sectors continue their work because of the importance of these sectors to Californians' health and well-being."[2]

30.    On or about March 22, 2020, Dr. Sonia Angell in her capacity as California Public Health Officer designated a list of "Essential Critical Infrastructure Workers".[3]  The list was updated on April 28, 2020.

31.    The Order allows persons to continue working only if they are deemed "essential workers" in an "essential business." While some of the deemed-essential businesses are clearly critical to human needs despite an emergency (*e.g*., public safety, food supply chain, utilities), others, when viewed in the light of the

---

[2] *See, supra*, n.2.

[3] The list of Essential Critical Infrastructure Workers can be found online at: https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers.pdf. Last visited Jan. 11, 2021.

9

CLASS ACTION COMPLAINT

prohibitions against Plaintiff, are arbitrary as they bear no connection to public health and have been created for the sole purpose of allowing Defendants' politically preferred trades and industries to continue operating while secondary interests are left in economic distress. The State Public Health Officer's Directive[4] (referred to herein as the "List") includes the following as "essential":

    a. "Workers supporting the entertainment industries, studios, and other related establishments, provided they follow COVID-19 public health guidance around physical distancing." Licensees supporting the entertainment industries as beauticians, hair stylists, and manicurists at a film studio are "essential," while Plaintiff's licensed services to clients outside the entertainment industry are not. This distinction bears no connection whatsoever to public health.

    b. "Workers for health manufacturing … and distributors of … cleaning, sanitizing, disinfecting or sterilization supplies, personal hygiene products, and tissue and paper towel products" are deemed "essential." Plaintiff and other licensees provide these services, sell shampoo, as well as other hygiene products. While Plaintiff is essential for selling

_____

[4] As of January 11, 2021, located at:
https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers.pdf.

CLASS ACTION COMPLAINT

of shampoo, it is deemed non-essential when it comes to the licensed services. Plaintiff at least partially falls within the "essential" services exception list, yet Defendants' threat to revoke Plaintiff's licenses for practicing licensed activities underscores the irrational, arbitrary and capricious nature of the Governor's Order and Defendant's enforcement.

c. "Workers performing services in support of the elderly and disabled populations who coordinate a variety of services, including health care appointments and activities of daily living" are deemed essential. Personal grooming services, including those offered by Plaintiff, are central to the daily lives of the elderly and disabled. However, Defendants nevertheless deny Plaintiff and other licensees the ability to perform these services under threat of criminal prosecution and license revocation.

d. Workers in laundromats, laundry services, and dry cleaners come in close, direct contact with the clothing and linens from members of the public, with no temporal limitation. These items which, if a customer is infected with COVID-19, pose as high a risk, if not greater, of infection as Plaintiff's licensed activities.

32.   Accordingly, Governor Newsom's "essential workers" list prohibits all workers in the hair, skin, nail care, and electrolysis industries from engaging in their

11

profession, regardless of the measures taken by these professionals to reduce or eliminate the risk of the virus spreading.  Meanwhile, the List deems the continuity of services provided by espresso bars, recreational cannabis dispensaries, pet grooming, chiropractors, and other professions to be so essential to "public infrastructure" that these activities are permitted to resume under the Governor's Order, despite posing the same or greater risks than Plaintiff's licensed activities.

33.    The State Public Health Officer's directives require, in part, "all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors".[5] The public health directive provides that its directives "shall stay in effect until further notice."[6] The Governor's Order and its public health directives, which was the first such "stay-at-home" directive issued in the country, provides that it "shall stay in effect until further notice." Thus, without giving any benchmarks or standards to determine when the proclaimed emergency is over, the Governor's Order grants State actors the limitless power to create arbitrary standards and capriciously enforce them in perpetuity, or "until further notice."

_____

[5] The State Public Health Directive was included in the text of Executive Order N-33-20.

[6] *Id.*

CLASS ACTION COMPLAINT

34.   The December 29, 2020 Order, which extended the complete, 100% shutdown of the hair and nail salon industry indefinitely, clarified the major, sustained, and forced closure of Plaintiff's business in order to benefit the public. These orders now demonstrate that the government has taken Plaintiff's property for public use and must pay compensation.

35.   Meanwhile, services and industries which are clearly not essential to public health and welfare have been allowed to remain open for business.  After being lobbied by the United Cannabis Business Association,[7] Governor Newsom and Dr. Angell made arbitrary exceptions, amending their original List to declare that cannabis retail stores were "essential" while maintaining that Plaintiff's licensed activities are "non-essential."

36.   None of the powers expressly granted under the California State Emergency Services Act allow Governor Newsom to sequester all Californians within their homes indefinitely, unable to ply their trades or provide for their families legally.[8]

37.   Since the initial outbreak of COVID-19 in the United States in February and March 2020, the Defendants imposed increasingly stringent

---

[7] *See, e.g.*, https://www.wsj.com/articles/california-deems-pot-an-essential-coronavirus-business-11585005903  (last visited on January 11, 2021).

[8] CAL. GOV'T CODE § 8565, *et seq*.

CLASS ACTION COMPLAINT

restrictions — and then banned completely — Plaintiff's licensed activities, while allowing individuals in other classes and groups to perform similar activities that pose equal or greater risks to public health.

## THREATENED LICENSE REVOCATIONS

38.     During all relevant times, California officials have threatened criminal prosecution for violations of the Governor's Orders. Defendants' conduct constitutes a regulatory taking, requiring the State to pay compensation to Plaintiff and the Class.  Defendants' conduct has effectively taken away Plaintiff's lawful right to engage in professional state-licensed activities.  This has forced Plaintiff to lay off employees, forego their property, lose their livelihoods, and suffer financial ruin.  Defendants have singled out Plaintiff and the Class for closure orders, while allowing far less essential businesses whose operation poses a much more substantial threat of Covid-19 spread to remain open.

39.     Defendants' purported justification of the closure orders is to promote the public good and benefit.  Defendants' December 2020 closure orders specifically justified the regulatory taking of Plaintiff's business by stressing the benefits to the public of increasing the number of available ICU beds available to the public.  For example, the State's Covid-19 website states: "To preserve our health care system, the Regional Stay Home Order goes into effect if intensive care

14

unit (ICU) capacity drops below 15% in a region. Counties in the region will be subject to new restrictions."[9]  Because Defendants have taken Plaintiff's property for the benefit of the public, they must pay compensation to Plaintiff and the Class.

40.    As of February 2020, the State Board had issued outstanding licenses to 313,734 stylists and cosmetologists, 34,093 barbers, 90,392 estheticians, 129,802 manicurists, 1,679 electrologists, and 53,694 business establishments.

41.    Throughout the relevant time period, Defendants have threatened to revoke licenses of cosmetology professionals for violation of the closure orders.  At the same time, Defendants have allowed pet groomers to remain open, sending the signal that dog haircuts are more essential than human haircuts.  Defendants have also allowed restaurants, strip clubs, toy stores, clothes stores, souvenir shops, and adult sex shops to remain open while at the same time forcing Plaintiff to completely close, with no opportunity to make any income or livelihood whatsoever.

42.    For example, as of December 17, 2020, adult sex shops in San Diego were still open and allowed to conduct business inside the premises at a supposed capacity of 25%, although enforcement of the 25% capacity limitation was left completely to the discretion of the store.  Moreover, the State did not even impose

---

[9] *See* https://covid19.ca.gov/, last visited Jan. 11, 2021.

CLASS ACTION COMPLAINT

any restrictions on the operating hours of such establishments.  For example, as of Dec. 17, 2020, Roy's Adult Fantasy Outlet, 4650 Border Village Rd., San Ysidro, CA 92173 (in San Diego County) was still being allowed to operate, and was operating, business operations in the interior of its store from 9:00 a.m. to 11:00 p.m. Monday to Saturday, and 9:00 a.m. to 10:00 p.m. on Sundays.  Other adult sex shops in the State of California are operating 24 hours a day.

43.    Defendants' actions have deprived Plaintiff and the Class of all economically beneficial use of their property, for which compensation is required.

## THREATENED AND ACTUAL DISCIPLINARY ACTION

44.    Defendants have threatened Plaintiff and other licensees with expulsion from their profession if they do not keep their businesses closed, while "essential" workers and businesses resume operations.   Individuals requesting guidance or relief are directed to seek assistance from their "industry associations."

45.    On May 1, 2020, the Board issued a notice directing all license-holders to, in part, "abide by the Governor's stay at home order," threatening that businesses that do not follow the Governor's Order will be subject to "disciplinary action against their license" and that "[violations] will not be taken lightly" (the "Board's Directive").  The only legal authority cited in the Board's Directive was the Governor's Order, stating, "[T]he Board fully supports the Governor's stay at home order and we expect our licensees to comply."

46.    This lawsuit seeks compensation for the taking of Plaintiff's property.

CLASS ACTION COMPLAINT

Plaintiff represents licensees who have been devastated by the State of California's arbitrary and capricious closure orders that have forced Plaintiff to shutter its business completely, while other businesses that are far less essential than Plaintiff's business are allowed to remain open.  For example, under the Governor's order, toy stores and strip clubs are allowed to remain open, but hair and nail salons are forced to completely close.

47.    In addition to threatened disciplinary action, various governmental agencies have taken actual enforcement action.

48.    In San Diego County, the government has issued hundreds of cease and desist orders to businesses which are in violation of the limitations imposed by the orders governing the operation of businesses.  In San Diego County, these cease and desist orders have predominantly been issued to restaurants and health clubs which, while allowed to remain open, are not allowed to conduct indoor operations. The typical cease and desist order states that "Failure to comply may result in criminal misdemeanor citations with a $1,000 fine for each violation."[10]

---

[10] *See,e.g.*,
https://www.sandiegocounty.gov/content/dam/sdc/hhsa/programs/phs/Epidemiology/covid19/closure_orders/StudioBarre-CeaseandDesist-11182020.pdf, last visited Jan. 11, 2021.  A list of the cease and desist orders issued by San Diego County can be found at
https://www.sandiegocounty.gov/content/sdc/hhsa/programs/phs/community_epidemiology/dc/2019-nCoV/closure-orders.html.

17

CLASS ACTION COMPLAINT

49.     Plaintiff has asked what it can do to resume its profession safely, only to be rebuffed.

50.     Plaintiff and other licensees are well-versed in the latest practices of health, safety, sanitation, and hygiene required to prevent the spread of contagion. The Board restricts entry to the examination to those applicants who have completed all the required hours for their field of study.  Stylists and cosmetologists are required to complete 1,600 hours of training.  Barbers are required to complete 1,500 hours of training.  Estheticians are required to complete 600 hours of training. Electrologists are required to complete 600 hours of training.   Manicurists are required to complete 350 hours of training.  Most of the required training consists of safety, hygiene, and sanitation protocols.  Licensed training programs include comprehensive health and safety measures.

51.     Besides the vigorous training described above, licensees are also subject to regular inspections and ongoing scrutiny for safety, cleanliness, and sanitation practices.

**DEPRIVATION OF REAL AND PERSONAL PROPERTY**

52.     Plaintiff and the Class hold licenses issued by the Board.  They have been denied use of these licenses and other property, both real and personal, since the Governor's order was issued.  They nevertheless remain liable for licensing fees and other fixed operating costs.

53.     Plaintiff has been denied the use of its real property, licenses, and other

18

personal property by Defendants.  Plaintiff maintains and operates hairdressing and cosmetology suites at its leased premises in San Diego, California.  Plaintiff has been deprived of income and the ability to work in its profession since the Governor's Orders were issued.  Plaintiff nevertheless remains liable for monthly rental payments for leased real property, licensing fees, and other fixed operating costs exceeding thousands of dollars per month.

54.    Instead of promulgating conditions or guidelines for the safe practice of these licensed activities as the Centers for Disease Control and counterparts in neighboring states have, Defendants have categorically labelled Plaintiff's industry "non-essential," thereby conscripting Plaintiff and other licensees to joblessness and taking their property without due process or legal justification.

55.    Plaintiff does not have adverse disciplinary history with the Board.

56.    Plaintiff has not contracted COVID-19.  Plaintiff and its employees and workers are not aware of coming into contact with anyone with COVID-19.

57.    Not one of the licensees or other personnel operating at Plaintiff's facility has contracted COVID-19 nor, to its knowledge, been exposed thereto.

**FEDERAL MONITORING OF CIVIL RIGHTS VIOLATIONS**

58.    On April 27, 2020, Attorney General William Barr sent a memorandum to all U.S. Department of Justice United States Attorneys regarding

19

civil rights violations occurring in various states during the coronavirus crisis.[11] This memorandum is attached hereto as **Exhibit 3** and incorporated herein by this reference.

59.     In his memorandum, Attorney General Barr directs all United States Attorneys to identify state directives that could be violating the Constitutional rights and civil liberties of individual citizens, stating "the Constitution is not suspended in times of crisis." Attorney General Barr wrote:

> "If a state or local ordinance crosses the line from an appropriate exercise of authority to stop the spread of COVID-19 into an overbearing infringement of constitutional and statutory protections, the Department of Justice may have an obligation to address that overreach in federal court."

60.     Defendants have abused their power by seizing on the coronavirus pandemic to expand their authority to lengths unprecedented by any prior crisis in California, including prior natural disasters, wars, and economic crises.  This legal action challenges the very type of overbearing infringement of constitutional and statutory protections identified by Attorney General Barr.

/ / /

---

[11] As of January 11, 2021, accessible at: https://cdn.cnsnews.com/attachment/ag_memo_-_balancing_public_safety_with_the_preservation_of_civil_rights_0.pdf.

CLASS ACTION COMPLAINT

## THE STATE OF CALIFORNIA'S CLOSURE ORDERS CONSTITUTE A REGULATORY TAKING OF PRIVATE PROPERTY FOR PUBLIC BENEFIT

61.    At a press conference on March 19, 2020, Newsom repeatedly said the rationale for the Governor's Order was to "bend the curve."[12] He also said "[t]he point of the stay at home order is to make those numbers moot"[13] and put them "in the dustbin of history."[14] He added that one goal was to slow down transmission enough to reduce the strain it might place on hospital resources.[15] Indeed, the strain on hospital resources was a key factual foundation of the emergency proclamation of March 4, 2020.[16]

62.    At the outset of the COVID-19 crisis, Governor Newsom wrote in a letter to President Trump[17] stating that in eight weeks, by May 13, 2020, approximately 56% percent of Californians — 25.5 million individuals —would be

[12] March 19, 2020 press briefing at 0:30-0:35, 8:10-8:20, 10:00-10:15, 24:20-24:30,33:45-33:55, and 35:17-36:00, available as of January 11, 2021 at: https://www.youtube.com/watch?v=8OeyeK8-S5o.

[13] *Id*. at 35:10-35:20.

[14] *Id*. 33:55-34:05.

[15] *Id*. at 5:42-8:09.

[16] Twelfth paragraph of the Proclamation of a State of Emergency, which as of the date of this filing can be found online at: https://www.gov.ca.gov/wpcontent/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf.

[17] As of January 11, 2021, accessible at: https://www.gov.ca.gov/wp-content/uploads/2020/03/3.18.20-Letter-USNS-Mercy-Hospital-Ship.pdf.

infected by the novel coronavirus.  His letter went on to say that "[i]n some parts of our state, our case rate is doubling every four days."[18] On the basis of these projections, he issued his Governor's Order on March 19, 2020.

63.     As of May 7, 2020, there were 58,815 confirmed cases, which was only 0.2% of Governor Newsom's projection.  By January 3, 2021, the number of confirmed cases in California was 2,397,923, still just 9.4% of the Governor's projection from March 2020.[19]

64.     Newsom expounded on these numbers at his March 19, 2020 press conference.  He explained that a hospitalization rate of 20 percent could mean that California would face a shortfall of 19,543 hospital beds above the state's current capacity of approximately 78,000 beds.[20] He added that California had a surge capacity of 10,207 additional beds that could partially offset this shortfall.[21] Thus, he was predicting a total shortfall of approximately 9,336 beds.[22]

65.     Mark Ghaly, the governor's Secretary of Health and Human Services, explained that the state came up with the 56 percent estimate by "[u]sing the

---

[18] *Id.*

[19] *See* https://news.google.com/covid19/map?hl=en-US&mid=%2Fm%2F01n7q&gl=US&ceid=US%3Aen, last visited Jan. 11, 2021.

[20] March 19, 2020 press briefing, supra, at 5:40-7:32.

[21] *Id.* at 7:20-7:40.

[22] *Id.*

CLASS ACTION COMPLAINT

available literature, advice from the CDC and our understanding and experience in California, we applied a variety of different measures that looked at an attack rate, that looked at the … hospitalization rates that we had available as well as other outcome measures."[23]

66.    The Secretary also stated that "[w]e knew that the attack rate of 56 percent that we chose was somewhat in the middle between the high-end and the low-end of what we'd seen in the literature…."[24]

67.    Newsom admitted that his numbers did not account for any mitigation measures put in place.  Rather, those numbers assumed that "we're just along for the ride[.]"[25]

68.    Defendant Newsom has admitted that the underlying public health benefits are the main — if not sole — reason for the closure orders.  Governor Newsom has also stated that the closure orders have in fact benefitted the public. During a briefing on April 16, 2020, Newsom stated that "[we] have successfully bent and arguably flattened the curve in the state of California."[26]

---

[23] *Id*. at 28:49-31:11.

[24] *Id*.

[25] *Id*. at 24:20-24:40.

[26] April 16, 2020 briefing by the Governor at 37:20, transcript available as of January 11, 2021, at: https://www.rev.com/blog/transcripts/gov-gavin-newsom-california-covid-19-briefing-transcript-april-16.

CLASS ACTION COMPLAINT

69.    The County of San Diego has also stated that the purpose of the regulations is to benefit the public: "The goal is to slow the spread of the virus and to make sure the healthcare system is able to care for all patients."[27]

70.    The closure orders constitute regulatory takings which have benefitted the pubic at large by increasing the number of available ICU beds, increasing the availability of health care resources available to the public, and decreasing the spread of the virus, thus saving lives.

**PLAINTIFF'S PROPERTY WAS TAKEN FOR PUBLIC USE WITHOUT COMPENSATION**

71.    The property of Plaintiff and the Class has been taken by the State of California for public use without just compensation.

72.    Almost all businesses in the State of California have been allowed to remain open during the Covid-19 pandemic.  Hair and nail salons have been singled out for complete closure.  The explicitly stated purpose for the complete closure orders is to maintain the number of ICU beds available to the public.  This is clearly a public benefit, similar to expanding a highway by forcing adjoining landowners to have their homes acquired by the government in order to expand the highway.  Here, while the businesses of Plaintiff and the Class have not been physically taken,

---

[27] https://www.sandiegocounty.gov/content/sdc/hhsa/programs/phs/community_epidemiology/dc/2019-nCoV/health-order.html, last visited Jan. 11, 2021.

CLASS ACTION COMPLAINT

they have been completely shut down by the State, precluding Plaintiff and the Class from earning any income.

73.     Other businesses that are far less essential and where there have been more instances of the spread of Covid-19 from their operations have been allowed to remain open — completely or partially.

74.     Courts have refused to set aside the State's closure orders.   If the orders are lawful, as the Courts have said, then Plaintiff and the Class are entitled to compensation because their property has been taken for the benefit of the public.

## CLASS ACTION ALLEGATIONS

75.     Plaintiff brings this action both on behalf of Plaintiff and as a class action pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), on behalf of the following class:

All residents in the State of California holding barbering or cosmetology licenses which were active as of March 19, 2020 and who have been unable to work at any time from March 19, 2020 to the present due to the Closure Orders issued by the State of California ("Class Period").

76.     This definition specifically excludes the following persons or entities: (a) any of the Defendants named herein; (b) any of the Defendants' parent companies, subsidiaries, and affiliates; (c) any of the Defendants' officers,

25

directors, management, employees, subsidiaries, affiliates or agents; (d) all governmental entities; and (e) the judges and chambers staff in this case, as well as any members of their immediate families. Plaintiff reserves the right to expand, modify, or alter the class definition in response to information learned during discovery.

77.  This action is properly brought as a class action under Federal Rule of Civil Procedure 23(a) for the following reasons:

a.  **Numerosity (Fed. R. Civ. P. 23(a)(1)):** The proposed Class is so numerous and geographically dispersed throughout California that the joinder of all Class Members is impracticable. While Plaintiff does not know the exact number and identity of all Class Members, Plaintiff is informed and believes that there are thousands of Class Members. The State Board of Barbering and Cosmetology represents that it licenses over 560,000 individuals.[28]   The precise number of Class Members can be ascertained through discovery;

b.  **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2) and 23(b)(3)):** There are questions of law and fact common to the

---

[28] *See* https://www.barbercosmo.ca.gov/ ("The Board was established in 1992 (after the Board of Barber Examiners and Board of Cosmetology merged) and today licenses over 50,000 establishments and over 560,000 individuals.").

CLASS ACTION COMPLAINT

proposed class which predominate over any questions that may affect particular Class Members. Such common questions of law and fact include, but are not limited to:

    i.  Whether the Closure Orders and other orders and conduct by Defendants constitutes a regulatory taking of Plaintiff's property;

    ii.  Whether Defendants' conduct represents the taking of private property for public use; and

    iii.  Whether Plaintiff and the other members of the Class were injured by Defendants' conduct and, if so, the determination of the appropriate Class-wide measure of damages and/or compensation;

c. **Typicality (Fed. R. Civ. P. 23(a)(3)):** Plaintiff's claims are typical of the claims of the members of the proposed Class. Plaintiff and the Class have been injured by the same wrongful practices of Defendants. Plaintiff's claims arise from the same practices and conduct that give rise to the claims of the Class and are based on the same legal theories; and

d. **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)):** Plaintiff will fairly and adequately protect the interests of the Class in that Plaintiff has no interests antagonistic to those of the other members

CLASS ACTION COMPLAINT

of the Class, and Plaintiff has retained attorneys experienced in class actions and complex litigation as counsel.

78.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a. Given the size of individual Class Member's claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

b. This action will promote an orderly and expeditious administration and adjudication of the proposed Class claims, economies of time, effort and resources will be fostered and uniformity of decisions will be insured;

c. Without a class action, Class Members will suffer damages, and Defendants' violations of law will proceed without remedy while Defendants reaped and retained the substantial proceeds of their wrongful conduct; and

d. Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

28

CLASS ACTION COMPLAINT

79.     Plaintiff intends to provide notice to the proposed class by communicating the existence of the action in popular trade publications in the industry, utilizing online advertisements, and using professional notice companies to strategically and comprehensively develop additional methods to reach class members.

**FIRST CAUSE OF ACTION**
**VIOLATION OF THE DUE PROCESS CLAUSE OF**
**THE FOURTEENTH AMENDMENT**
**(Against All Defendants)**

80.     Plaintiff incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

81.     The Due Process Clause contains both a substantive and a procedural component.  Substantive due process forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.  Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause.  Procedural due process does not forbid the government from depriving individuals of a protected interest, but rather requires the government to employ adequate procedures that ensure the fairness of any deprivation.

82.     The Orders and Defendants' enforcement thereof violate Plaintiff's substantive due process rights as follows:

29

a. Plaintiff's fundamental property interest in conducting lawful business activities is protected by the Due Process Clause of the Fourteenth Amendment. *Medina v. Rudman*, 545 F.2d 244, 250 (1st Cir. 1976) (included among the substantive rights so protected is the right to pursue one's vocation under a state-granted license) (citing *Paul v. Davis*, 424 U.S. 693 (1976)).

b. Plaintiff has been issued cosmetology licenses by the State of California, and therefore has a right to lawfully pursue that vocation, a substantive due process right impaired by Defendants' actions.

c. Defendants lack any legitimate or compelling interest for depriving Plaintiff of its right to lawfully pursue its vocation.

d. Even if such a legitimate, compelling interest existed, Defendants' Orders are not rationally related or narrowly tailored to further any such interest.

83. The Orders and Defendants' enforcement thereof violate Plaintiff's procedural due process rights as follows:

a. The Governor's Order and list of "Essential" Workers and Businesses are arbitrary and capricious and thus are invalidated by the Fourteenth Amendment's procedural due process protections.

30

CLASS ACTION COMPLAINT

b. Procedural due process, at a minimum, would require Plaintiff having a meaningful opportunity to respond to the Order (or the continuation thereof) and explain how and why it is constitutionally invalid as applied to Plaintiff. However, the State's closure orders have prevented Plaintiff from challenging the application of the Order and the List to them, denying them any process whatsoever before their rights were forcibly taken.

c. Further, this taking lasts indefinitely, with neither the Order nor the List providing for any mechanism or opportunity to review or challenge the need to continue the Order in the light of developing events.

84.   Defendants' actions therefore have deprived Plaintiff of both procedural and substantive Due Process.

85.   Plaintiff has no adequate remedy at law and has suffered serious and irreparable harm to its constitutional rights.

86.   Plaintiff found it necessary to engage the services of private counsel to vindicate its rights under the law.   Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

/ / /

/ / /

/ / /

31

CLASS ACTION COMPLAINT

## SECOND CAUSE OF ACTION
## VIOLATION OF THE EQUAL PROTECTION CLAUSE OF
## THE FOURTEENTH AMENDMENT
### (Against All Defendants)

87.     Plaintiff incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

88.     At its core, the Equal Protection Clause of the 14th Amendment to the U.S. Constitution requires states to govern impartially — not draw arbitrary distinctions between businesses based solely on differences that are irrelevant to a legitimate governmental objective.

89.     Strict scrutiny under the Equal Protection Clause applies where the classification impinges on fundamental rights, including the right to due process and the right to travel (both interstate and intrastate), among others.  Defendants have violated Plaintiff's procedural and substantive due process rights under the Fourteenth Amendment.

90.     Defendants cannot satisfy strict scrutiny, because their arbitrary classifications are not narrowly tailored measures that further compelling government interests.

91.     Defendants have intentionally and arbitrarily categorized California businesses and conduct as either "essential" or "non-essential."  Those businesses classified as "essential," or as participating at least partly in "essential services," are permitted to conduct their business and activities, even when the businesses also

32

CLASS ACTION COMPLAINT

provide "non-essential" goods and services.  Those classified as "non-essential," are required to completely shut down. Entertainment providers are deemed essential, whereas Plaintiff, who provides basic personal grooming services, is not. Defendants have therefore arbitrarily discriminated against Plaintiff in violation of Plaintiff's equal protection rights.

92.    Plaintiff has no adequate remedy at law and has suffered serious and irreparable harm to its constitutional rights.

93.    Plaintiff found it necessary to engage the services of private counsel to vindicate its rights under the law.  Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**THIRD CAUSE OF ACTION**
**VIOLATION OF THE TAKINGS CLAUSE OF**
**THE FIFTH AMENDMENT BY INTERFERENCE**
**WITH LICENSES AND PROPERTY**
**(Against All Defendants)**

94.    Plaintiff incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

95.    Plaintiff complied and continues to comply with the State's requirements to obtain the appropriate licenses and/or permits to conduct its business and at all times relevant to this Complaint, Plaintiff has the right to continue to operate under its licenses, and its related commercial activities were continuous and lawful pursuant to California law, and particularly the regulations promulgated by the Department of Consumer Affairs — Board of Barbering and

33

CLASS ACTION COMPLAINT

Cosmetology.

96.    The California Supreme Court has held the right to engage in a licensed profession is a property right of such high character that revocation of that license should only occur upon clear proof that the licensee has forfeited the same, and only in strict conformity to the statute authorizing its forfeiture. *Cavassa v. Off*, 206 Cal. 307 (1929).  The licenses and Plaintiff's right to operate its business are therefore personal property to which the takings clause applies.

97.    The regulatory actions taken by the Defendants have resulted in Plaintiff being deprived of all economically beneficial or productive use of its property including, without limitation, its licenses, its leased property, and its business property, and further resulted in the involuntary closing of its business, ultimately making Plaintiff suffer a loss, in that it has to pay license fees, rent, property maintenance, and related expenses for property it is barred by law from using.  The California Supreme Court has found that "While the police power is very broad in concept, it is not without restrictions in relation to the taking or damaging of property.  When it passes beyond proper bounds in its invasion of property rights, it in effect comes within the purview of the law of eminent domain and its exercise requires compensation." *House v. Los Angeles County Flood Control Dist.*, 25 Cal. 2d 384 (1944).

98.    Defendants' Orders and the enforcement thereof has caused both a complete and total regulatory taking of Plaintiff's property without just

34

compensation in violation of the Takings Clause of the Fifth Amendment to the U.S. Constitution.  At a minimum, the effect of Defendants' Orders constitutes a "partial" taking under the *Penn-Central* three-factor test.  *See Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).  As a result, Defendants' violation of the Takings Clause of the 5th Amendment has caused proximate and legal harm to Plaintiff.

99.     The taking of Plaintiff's property was for the public benefit and the public has benefitted.

100.   Plaintiff found it necessary to engage the services of private counsel to vindicate its rights under the law.  Plaintiff is therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## FOURTH CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA CONSTITUTION
### RIGHT TO LIBERTY (CAL. CONST. ART. 1, § 1)
#### (Against All Defendants)

101.   Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

102.   Since 1879, the California Constitution has provided intrinsic and unalienable rights and liberties to its citizens.  Chief among those rights and liberties are those found in Article 1 of the California Constitution. Article 1, Section 1 of the California Constitution provides, in pertinent part:

35

> All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

103.   Defendants' Orders have not only interfered with Plaintiff's rights and liberties as set forth under Article 1, Sections 1, 7, and 19 of the California Constitution, but have deprived Plaintiff of the use, enjoyment and ability to operate its business because of the closure orders.

104.   Defendants' Orders have proximately and legally caused unique and tremendous financial harm to Plaintiff's business.

105.   Requiring Plaintiff to abstain from conducting lawful business in the State of California merely because its business has been arbitrarily deemed "nonessential," despite other compliance measures being taken to satisfy the public's important health interests, violates its California Constitutional liberty rights. The burden is on State actors to prove these actions meet strict scrutiny.

106.   Plaintiff has suffered serious and irreparable harm to its constitutional rights.

107.   Plaintiff has found it necessary to engage the services of private counsel to vindicate its rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

///

36

CLASS ACTION COMPLAINT

# FIFTH CAUSE OF ACTION
## VIOLATION OF THE CALIFORNIA CONSTITUTION
## RIGHT TO PROPERTY (CAL. CONST. ART. 1, § 7)
### (Against All Defendants)

108.   Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

109.   Article 1, Section 7 of the California Constitution provides, in pertinent part:

(a) A person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws; provided, that nothing contained herein or elsewhere in this Constitution imposes upon the State of California or any public entity, board, or official any obligations or responsibilities which exceed those imposed by the Equal Protection Clause of the 14th Amendment to the United States Constitution with respect to the use of pupil school assignment or pupil transportation. In enforcing this subdivision or any other provision of this Constitution, no court of this State may impose upon the State of California or any public entity, board, or official any obligation or responsibility with respect to the use of pupil school assignment or pupil transportation, (1) except to remedy a specific violation by such party that would also constitute a violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution, and (2) unless a federal court would be permitted under federal decisional law to impose that obligation or responsibility upon such party to remedy the specific violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution.

110.   Requiring Plaintiff to abstain from conducting lawful business in the State of California, despite the availability of compliance measures available and being taken by so-called "essential businesses" to satisfy the public health interests at stake, violates Plaintiff's California Constitutional liberty rights.

37

CLASS ACTION COMPLAINT

111.   Plaintiff has suffered serious and irreparable harm to its constitutional rights.

112.   Plaintiff has found it necessary to engage the services of private counsel to vindicate its rights under the law.   Plaintiff is therefore entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA CONSTITUTION**
**TAKINGS WITHOUT COMPENSATION (CAL. CONST. ART. 1, § 19)**
**(Against All Defendants)**

113.   Plaintiff incorporates herein by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

114.   Article 1, Section 19 of the California Constitution provides, in pertinent part: Article 1, Section 19:

(a) Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of just compensation.

115.   California courts have routinely held that the California Constitution provides just compensation to property owners when their land is taken for public use, because the law seeks to bar the government from forcing some people alone to

38

CLASS ACTION COMPLAINT

bear public burdens which, in all fairness and justice, should be borne by the public as a whole.

116. The principle underlying just compensation for property taken for public use is to put the owner in as good a position monetarily as he or she would have occupied if his or her property had not been taken.

117. Finally, the constitutional guarantee of just compensation for property taken by the government is not only intended to protect the landowner (or business owner), but it also protects the public by limiting its liability to losses that can fairly be attributed to the taking. *Emeryville Redevelopment v. Harcros Pigments, Inc.*, 101 Cal. App. 4th 1083 (2002).

118. Plaintiff has found it necessary to engage the services of private counsel to vindicate its rights under the law. Plaintiff is therefore entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure Section 1021.5.

### PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

A. Enter an order and judgment requiring Defendants to provide just compensation for the regulatory taking of Plaintiff's private property;

B. Award to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' fees, experts' fees, costs, and expenses; and

CLASS ACTION COMPLAINT

1

C.    For such other relief as the Court may deem just and proper.

2

3

**DEMAND FOR JURY TRIAL**

4

5

Plaintiff hereby demands a trial by jury of all issues that are subject to

6

adjudication by a trier of fact.

7

Dated:  January 19, 2021                Respectfully submitted,

8

9

BOTTINI & BOTTINI, INC.

10

Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)

11

Anne Beste (SBN 326881)

12

_s/ Francis A. Bottini, Jr._

13

Francis A. Bottini, Jr.

14

7817 Ivanhoe Avenue, Suite 102

15

La Jolla, California 92037

16

Telephone:   (858) 914-2001
Facsimile:    (858) 914-2002

17

Email: fbottini@bottinilaw.com

18

achang@bottinilaw.com
abeste@bottinilaw.com

19

20

*Counsel for Plaintiff*

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

# EXHIBIT 1

# EXHIBIT 1

## EXECUTIVE DEPARTMENT
## STATE OF CALIFORNIA

**EXECUTIVE ORDER N-33-20**

**WHEREAS** on March 4, 2020, I proclaimed a State of Emergency to exist in California as a result of the threat of COVID-19; and

**WHEREAS** in a short period of time, COVID-19 has rapidly spread throughout California, necessitating updated and more stringent guidance from federal, state, and local public health officials; and

**WHEREAS** for the preservation of public health and safety throughout the entire State of California, I find it necessary for all Californians to heed the State public health directives from the Department of Public Health.

**NOW, THEREFORE, I, GAVIN NEWSOM,** Governor of the State of California, in accordance with the authority vested in me by the State Constitution and statutes of the State of California, and in particular, Government Code sections 8567, 8627, and 8665 do hereby issue the following Order to become effective immediately:

**IT IS HEREBY ORDERED THAT:**

1) To preserve the public health and safety, and to ensure the healthcare delivery system is capable of serving all, and prioritizing those at the highest risk and vulnerability, all residents are directed to immediately heed the current State public health directives, which I ordered the Department of Public Health to develop for the current statewide status of COVID-19. Those directives are consistent with the March 19, 2020, Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response, found at: https://covid19.ca.gov/. Those directives follow:

ORDER OF THE STATE PUBLIC HEALTH OFFICER
March 19, 2020

To protect public health, I as State Public Health Officer and Director of the California Department of Public Health order all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors, as outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19. In addition, and in consultation with the Director of the Governor's Office of Emergency Services, I may designate additional sectors as critical in order to protect the health and well-being of all Californians.

Pursuant to the authority under the Health and Safety Code 120125, 120140, 131080, 120130(c), 120135, 120145, 120175 and 120150, this order is to go into effect immediately and shall stay in effect until further notice.

The federal government has identified 16 critical infrastructure sectors whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or

destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof. I order that Californians working in these 16 critical infrastructure sectors may continue their work because of the importance of these sectors to Californians' health and well-being.

This Order is being issued to protect the public health of Californians. The California Department of Public Health looks to establish consistency across the state in order to ensure that we mitigate the impact of COVID-19. Our goal is simple, we want to bend the curve, and disrupt the spread of the virus.

The supply chain must continue, and Californians must have access to such necessities as food, prescriptions, and health care. When people need to leave their homes or places of residence, whether to obtain or perform the functions above, or to otherwise facilitate authorized necessary activities, they should at all times practice social distancing.

2) The healthcare delivery system shall prioritize services to serving those who are the sickest and shall prioritize resources, including personal protective equipment, for the providers providing direct care to them.

3) The Office of Emergency Services is directed to take necessary steps to ensure compliance with this Order.

4) This Order shall be enforceable pursuant to California law, including, but not limited to, Government Code section 8665.

**IT IS FURTHER ORDERED** that as soon as hereafter possible, this Order be filed in the Office of the Secretary of State and that widespread publicity and notice be given of this Order.

This Order is not intended to, and does not, create any rights or benefits, substantive or procedural, enforceable at law or in equity, against the State of California, its agencies, departments, entities, officers, employees, or any other person.

**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 19th day of March 2020.

GAVIN NEWSOM
Governor of California

ATTEST:

ALEX PADILLA
Secretary of State

# EXHIBIT 2

EXHIBIT 2



State of California—Health and Human Services Agency

# California Department of Public Health



**SANDRA SHEWRY, MPH,MSW**
*Acting Director*
**ERICA S. PAN, MD,MPH**
*Acting State Health Officer*

**GAVIN NEWSOM**
*Governor*

## Regional Stay At Home Order
## 12/03/2020

Upon assessment of the recent, unprecedented rise in the rate of increase in COVID-19 cases, hospitalizations, and test positivity rates across California, the California Department of Public Health (CDPH) is taking immediate actions to prevent the spread of the virus.

The State, like the nation, continues to record an unprecedented surge in the level of community spread of COVID-19. California implemented an accelerated application of the Blueprint Framework metrics on November 16 and a limited Stay at Home Order issued on November 19. However, in the interim, the number of new cases per day has increased by over 112%, (from 8,743 to 18,588) and the rate of rise of new cases per day continues to increase dramatically. The number of new hospital admissions has increased from 777 on November 15, to 1,651 on December 2, and because of the lag between case identification and hospitalizations, we can only expect these numbers to increase.

Current projections show that without additional intervention to slow the spread of COVID-19, the number of available adult Intensive Care Unit (ICU) beds in the State of California will be at capacity in mid-December.  This is a sign that the rate of rise in cases, if it continues, is at risk of overwhelming the ability of California hospitals to deliver healthcare to its residents suffering from COVID-19 and from other illnesses requiring hospital care. ICU beds are a critical resource for individuals who need the most advanced support and care and the ability to add additional ICU capacity is limited by the lack of available ICU nurses and physicians as a result of the nationwide surge in hospitalizations and ICU admissions.

Because the rate of increases in new cases continues to escalate and threatens to overwhelm the state's hospital system, further aggressive action is necessary to respond to the quickly evolving situation. While vaccines are promising future interventions, they are not available to address the immediate risks to healthcare delivery in the current surge. The immediate aggressive institution of additional non-pharmaceutical public health interventions is critical to avoid further overwhelming hospitals and to prevent the need to ration care.

---



**NOW, THEREFORE, I, as Acting State Public Health Officer of the State of California, order:**

1. CDPH will evaluate public health based on Regions, responsive to hospital capacity for persons resident in those Regions.

2. CDPH will evaluate the adult ICU bed capacity for each Region and identify on covid19.ca.gov any Regions for which that capacity is less than 15%. When that capacity is less than 15%, the following terms (the Terms of this Order) will apply.

   a. All gatherings with members of other households are prohibited in the Region except as expressly permitted herein.

   b. All individuals living in the Region shall stay home or at their place of residence except as necessary to conduct activities associated with the operation, maintenance, or usage of critical infrastructure,[1] as required by law, or as specifically permitted in this order.

   c. Worship and political expression are permitted outdoors, consistent with existing guidance for those activities.

   d. Critical infrastructure sectors may operate and must continue to modify operations pursuant to the applicable sector guidance.

   e. Guidance related to schools remain in effect and unchanged. Accordingly, when this Order takes effect in a Region, schools that have previously reopened for in-person instruction may remain open, and schools may continue to bring students back for in-person instruction under the Elementary School Waiver Process or Cohorting Guidance.

   f. In order to reduce congestion and the resulting increase in risk of transmission of COVID-19 in critical infrastructure retailers, all retailers may operate indoors at no more than 20% capacity and must follow the guidance for retailers. All access to retail must be strictly metered to ensure compliance with the limit on capacity. The sale of food, beverages, and alcohol for in-store consumption is prohibited.

   g. To promote and protect the physical and mental well-being of people in California, outdoor recreation facilities may continue to operate. Those facilities may not sell food or drink for on-site consumption. Overnight stays at

---

[1] See https://covid19.ca.gov/essential-workforce/ for full list of California's Critical Infrastructure workforce.

campgrounds are not permitted.

h. Nothing in this Order prevents any number of persons from the same household from leaving their residence, lodging, or temporary accommodation, as long as they do not engage in any interaction with (or otherwise gather with) any number of persons from any other household, except as specifically permitted herein.

i. Terms (a) and (b) of this section do not apply to persons experiencing homelessness.

3. Except as otherwise required by law, no hotel or lodging entity in California shall accept or honor out of state reservations for non-essential travel, unless the reservation is for at least the minimum time period required for quarantine and the persons identified in the reservation will quarantine in the hotel or lodging entity until after that time period has expired.

4. This order shall take effect on December 5, 2020 at 1259pm PST.

5. For Regions where the adult ICU bed capacity falls below 15% after the effective date of this order, the Terms of this Order shall take effect 24 hours after that assessment.

6. The Terms of this Order shall remain in place for at least three weeks from the date the order takes effect in a Region and shall continue until CDPH's four-week projections of the Region's total available adult ICU bed capacity is greater than or equal to 15%. Four-week adult ICU bed capacity projections will be made approximately twice a week, unless CDPH determines that public health conditions merit an alternate projection schedule.  If after three weeks from the effective date of the Terms of this Order in a Region, CDPH's four-week projections of the Region's total available adult ICU bed capacity is greater than or equal to 15%, the Terms of this Order shall no longer apply to the Region

7. After the termination of the Terms of this Order in a Region, each county within the Region will be assigned to a tier based on the Blueprint for a Safer Economy as set out in my August 28, 2020 Order, and the County is subject to the restrictions of the Blueprint appropriate to that tier.

8. I will continue to monitor the epidemiological data and will modify this Regional Stay-at-Home Order as required by the evolving public health conditions. If I determine that it is necessary to change the Terms of this Order, or otherwise modify the Regional Stay-at-Home Order, these modifications will be posted at covid19.ca.gov.

9.  When operative in a Region, the Terms of this Order supersede any conflicting terms in other CDPH orders, directives, or guidance. Specifically, for those Regions with ICU bed capacity triggering this order, the Terms of this Order shall supersede the State's Blueprint for a Safer Economy and all guidance (other than guidance for critical infrastructure sectors) the operative period. In all Regions that are not subject to the restrictions in this order, the Blueprint for a Safer Economy and all guidance shall remain in effect.

10. This order is issued pursuant to Health and Safety Code sections 120125, 120130(c), 120135, 120140, 120145, 120175,120195 and 131080; EO N-60-20, N-25-20, and other authority provided for under the Emergency Services Act; and other applicable law.


_____

Erica S. Pan, MD, MPH
Acting State Public Health Officer
California Department of Public Health

# EXHIBIT 3

# EXHIBIT 3



# Office of the Attorney General
## Washington, D. C. 20530

April 27, 2020

MEMORANDUM FOR THE ASSISTANT ATTORNEY GENERAL FOR CIVIL RIGHTS AND
ALL UNITED STATES ATTORNEYS

FROM:     THE ATTORNEY GENERAL

SUBJECT:    <u>Balancing Public Safety with the Preservation of Civil Rights</u>

  The current national crisis related to COVID-19 has required the imposition of extraordinary restrictions on all of our daily lives. Millions of Americans across the nation have been ordered to stay in their homes, leaving only for essential and necessary reasons, while countless businesses and other gathering places have been ordered to close their doors indefinitely. These kinds of restrictions have been necessary in order to stop the spread of a deadly disease—but there is no denying that they have imposed tremendous burdens on the daily lives of all Americans.

  In prior Memoranda, I directed our prosecutors to prioritize cases against those seeking to illicitly profit from the pandemic, either by hoarding scarce medical resources to sell them for extortionate prices, or by defrauding people who are already in dire circumstances due to the severe problems the pandemic has caused. We have pursued those efforts vigorously and will continue to do so. Now, I am directing each of our United States Attorneys to also be on the lookout for state and local directives that could be violating the constitutional rights and civil liberties of individual citizens.

  As the Department of Justice explained recently in guidance to states and localities taking steps to battle the pandemic, even in times of emergency, when reasonable and temporary restrictions are placed on rights, the First Amendment and federal statutory law prohibit discrimination against religious institutions and religious believers. The legal restrictions on state and local authority are not limited to discrimination against religious institutions and religious believers. For example, the Constitution also forbids, in certain circumstances, discrimination against disfavored speech and undue interference with the national economy. If a state or local ordinance crosses the line from an appropriate exercise of authority to stop the spread of COVID-19 into an overbearing infringement of constitutional and statutory protections, the Department of Justice may have an obligation to address that overreach in federal court.

  I am therefore directing the Assistant Attorney General for Civil Rights, Eric Dreiband, and Matthew Schneider, the U.S. Attorney for the Eastern District of Michigan, to oversee and coordinate our efforts to monitor state and local policies and, if necessary, take action to correct them. They should work not only with all Department of Justice offices and other federal agencies, but with state and local officials as well.

Memorandum from the Attorney General                                                    Page 2
Subject: Balancing Public Safety with the Preservation of Civil Rights

Many policies that would be unthinkable in regular times have become commonplace in recent weeks, and we do not want to unduly interfere with the important efforts of state and local officials to protect the public.  But the Constitution is not suspended in times of crisis.  We must therefore be vigilant to ensure its protections are preserved, at the same time that the public is protected.

I thank you for your attention to this important initiative and for your service to our country.