1
2
3
4
5
6
7
8

**BOTTINI & BOTTINI, INC.**
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Yury A. Kolesnikov (SBN 271173)
Anne Beste (SBN 326881)
7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:   (858) 914-2001
Facsimile:    (858) 914-2002

*Attorneys for Plaintiffs*

9
10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

11
12
13
14
15
16

17

18

19
20
21
22
23
24
25
26
27
28

TATOMA, INC., a California
Corporation, DBA Atelier Aucoin Salon;
THOMAS L. AUCOIN, a resident of San
Diego County; and SO CAL FITNESS
CLUBS, LLC, a California limited
liability company, on behalf of
themselves and all others similarly
situated,

Plaintiffs,

vs.

GAVIN NEWSOM, in his official
capacity as the Governor of California;
XAVIER BECERRA, in his official
capacity as the Attorney General of
California; KRISTY UNDERWOOD, in
her official capacity as Executive Officer
of the State Board of Barbering and
Cosmetology; KEVIN FAULCONER, in
his official capacity as Mayor of San
Diego; WILMA J. WOOTEN, M.D., in
her official capacity as Medical Officer
for the County of San Diego; HELEN N.
ROBBINS-MEYER, in her official
capacity as the Chief Administrative
Officer for the County of San Diego;

Case No. 21-cv-0098 BEN (JLB)

**FIRST AMENDED CLASS
ACTION COMPLAINT FOR
VIOLATIONS OF:**

1. **14th AMENDMENT DUE
   PROCESS;**

2. **14th AMENDMENT EQUAL
   PROTECTION;**

3. **5th AMENDMENT
   TAKINGS;**

4. **CAL. CONST. ART. 1 § 1
   RIGHT TO LIBERTY;**

5. **CAL. CONST. ART. 1 § 7
   RIGHT TO PROPERTY; and**

6. **CAL. CONST. ART. 1 § 19
   TAKINGS WITHOUT
   COMPENSATION**

**DEMAND FOR JURY TRIAL**

1  DAVID NISLEIT, in his official capacity
   as Chief of Police for the City of San
2  Diego; WILLIAM GORE, in his official
   capacity of Sheriff of the County of San
3  Diego; COUNTY OF SAN DIEGO;
   CITY OF SAN DIEGO; and DOE
4  DEFENDANTS 1–100,
5
                        Defendants.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs Tatoma, Inc., Thomas L. Aucoin, and So Cal Fitness Clubs, LLC ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege the following against Defendants relating to the Defendants' promulgation and enforcement of Covid-19 closure orders that have effectuated a regulatory taking of Plaintiffs' property.  The allegations pertaining to Plaintiffs are based on personal knowledge, and the allegations pertaining to all other matters are based on information and belief, including investigations by Plaintiffs' counsel, including but not limited to news and media reports, governmental and regulatory filings and official orders, analyst reports, governmental reports, and other sources.  Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I. <u>INTRODUCTION</u>

1.   Both the U.S. and California Constitutions provide just compensation to property owners when their land is taken for public use, because the law seeks to bar the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.

2.   Since March 2020, the State of California, the County of San Diego, and the City of San Diego have issued multiple closure orders prohibiting barbering and cosmetology professionals, health clubs, gyms, and spas from operating their businesses.  These businesses have been singled out for closure in order to benefit the public.  They remain almost the only types of businesses that have been ordered to completely shut down, with no opportunity to conduct any operations whatsoever or earn a livelihood, despite the lack of any showing or evidence that the operation of their businesses at the same levels permitted for other types of businesses (*e.g.*, 25% capacity) would lead to increased transmission rates of COVID-19.  As such, the property of Plaintiffs and the Class has been taken for a

FIRST AMENDED CLASS ACTION COMPLAINT

1    public use and benefit, and compensation must be paid.

2        3.      When the government takes the property of dozens or even hundreds

3    of homeowners whose homes abut an existing highway in order to expand the

4    highway, compensation is owed to the homeowners; the public at large is

5    benefitted, but only certain members of the public bear the burden, thus entitling

6    them to compensation.  The same is true here.  Plaintiffs and the Class own or work

7    at businesses, including hair and nail salons, gyms, and health clubs, which have

8    been forced to completely shutter their operations, with absolutely no opportunity to

9    conduct any business whatsoever, in order to benefit the public.  Almost all other

10   businesses have been permitted to continue operations on-site at 25% capacity,

11   operate outdoors, conduct operations remotely, or provide services on a take-out or

12   delivery basis, thus permitting them to earn some kind of livelihood.  Plaintiffs and

13   the Class, in stark contrast, have been denied all economically beneficial use of

14   their property, and thus have been subject to a complete taking of their property and

15   businesses during the relevant time period.

16       4.      Because Plaintiffs' fundamental rights guaranteed by the constitutions

17   of the United States and the State of California have been violated, for the benefit of

18   the public as a whole, Plaintiffs and the Class are entitled to just compensation.

19                    II.    <u>**NATURE OF THE ACTION**</u>

20       5.      In response to the COVID-19 emergency, Defendants have taken

21   Plaintiffs' property for public purpose without just compensation in violation of

22   fundamental rights protected by the United States and California constitutions.

23       6.      On March 19, 2020, Governor Newsom issued Executive Order N-33-

24   20 ("Governor's Order") attached as **Exhibit 1**. The Governor's Order has no

25   sunset provision or expiration date.

26       7.      Several other orders were issued subsequent to March 19, 2020 that

27   adversely affected Plaintiffs' businesses and imposed restrictions on the ability of

28

Plaintiffs and the Class to operate their businesses.

8.     On December 3, 2020, the State of California issued a Regional Stay at Home Order (*see* **Exhibit 2**).   The order and a supplemental order, signed December 6, 2020 (collectively, the "Regional Stay Home Orders"), announced that the orders would go into effect at 11:59 PM the day after a region was determined to have less than 15% Intensive Care Unit ("ICU") availability.   The supplemental order clarified retail operations and went into effect immediately.   The Regional Stay Home Orders prohibit private gatherings of any size, close sector operations except for critical infrastructure and retail, and require 100% masking and physical distancing in all others.   The order was supposed to last only three weeks.

9.     Then, on December 29, 2020, the most recent December 3, 2020 closure order ***was extended indefinitely***.

10.     As a result of the orders, including the most recent December 29, 2020 order, Plaintiffs are completely and indefinitely prohibited from working in their chosen profession or engaging in any business operations.

11.     The State's official COVID-19 website provided the following explanation for issuance of the Regional Stay Home Orders:

**Regional Stay Home Order**

*Why is this Regional Stay Home Order being implemented now*?

We are in the midst of an unprecedented surge in cases and hospitalizations in California and across the country. ***Without immediate action many hospital Intensive Care Units (ICU) will reach capacity before the end of the year. ICU beds are a critical resource for individuals who need the most advanced support and care***. Given the nationwide surge, the ability to add surge ICU capacity is limited by availability of ICU nurses and physicians. ***We need to protect our hospital capacity so those who need care—for such things as cancer treatment, heart attacks, and strokes—can get it.*** By taking this action we are saving lives, protecting our health care delivery system and keeping those at highest risk and essential workers safe.

3

FIRST AMENDED CLASS ACTION COMPLAINT

12.   The City and County of San Diego issued similar closure orders, including on March 13, 2020, July 14, 2020, and December 4, 2020 (attached as **Exhibits 4, 5, and 6**), and Executive Order 2020-2 issued by Defendant Faulconer on March 30, 2020 (attached as **Exhibit 7**).   The State closure orders and County and City of San Diego closure orders are sometimes collectively referred to herein as the "Closure Orders."   The Closure Orders, individually and in combination, have resulted in the complete taking of Plaintiffs' and the Class's property for public benefit for the relevant time period without just compensation.

### III.   PARTIES

13.   Plaintiff Tatoma, Inc., d/b/a Atelier Aucoin Salon, is a California Corporation with its principal place of business in La Jolla, California.   The California Board of Barbering and Cosmetology ("Board of Cosmetology") issued License No. 313411 to Plaintiff Tatoma on June 30, 2017.   Plaintiff Tatoma operates Atelier Aucoin Salon in San Diego, California.

14.   Plaintiff Thomas L. Aucoin is a San Diego County resident and the owner of Tatoma, Inc.   The Board of Cosmetology issued License No. 279279 to Plaintiff Aucoin on July 29, 1993.

15.   Plaintiff So Cal Fitness Clubs, LLC is a California limited liability company.   During the relevant period, Plaintiff So Cal Fitness operated a health club/gym in La Jolla, California called La Jolla Sports Club, located at 7825 Fay Avenue, Suite 160, La Jolla, California 92037.   Plaintiff So Cal Fitness was subject to the Covid-19 closure orders issued by Defendants, which eventually resulted in such a prolonged degree of lost profits and income that Plaintiff So Cal Fitness was forced to cease operations.

16.   Defendant Gavin Newsom is made a party to this action in his official capacity as the Governor of California.   The California Constitution vests the "supreme executive power of the State" in the Governor, who "shall see that the

4

law is faithfully executed."  CAL. CONST. ART. V, § 1.  Governor Newsom issued the Governor's Covid-19 Closure Order on March 19, 2020 and all subsequent related orders issued by the State of California. Newsom was an essential component of the governmental conduct that resulted in a regulatory taking of Plaintiffs' property.

17.   Defendant Xavier Becerra is made a party to this action in his official capacity as the Attorney General of California.  Under California law, Becerra is the chief law enforcement officer with supervision over all sheriffs in the State. CAL. CONST. ART. V, § 13.  Becerra took actions to enforce the Covid-19 Closure Orders and was an essential component of the governmental conduct that resulted in a regulatory taking of Plaintiffs' property.

18.   Defendant Kristy Underwood is made a party to this action in her official capacity as Executive Officer of the California State Board of Barbering and Cosmetology.  Underwood approved all of the Covid-19 Closure Orders applicable to all licensees within her jurisdiction in the State of California and took other action to devise and implement the orders and regulations that effectuated a regulatory taking of Plaintiffs' property.

19.   Defendants Newsom, Becerra, and Underwood are sometimes collectively referred to herein as the "State Official Defendants."

20.   Defendant Kevin Faulconer is made a party to this action in his official capacity as the Mayor of San Diego in the State of California. Faulconer is sued herein in his official capacity under the rule of *Ex Parte Young. See Ex Parte Young*, 209 U.S. 123, 152, 154 (1908). Faulconer issued an executive order on March 12, 2020 which declared a state of emergency, and issued all other related Covid-19 orders on behalf of the City of San Diego during 2020, which orders shut down all "non-essential" businesses.  Faulconer was an essential component of the governmental conduct that resulted in a regulatory taking of Plaintiffs' property.

5

21.     Defendant Wilma J. Wooten M.D. M.P.H. is made a party to this action in her official capacity as the San Diego County Director and Public Health Officer. Wooten signed all of the San Diego County Covid-19 Closure Orders and took other action to devise and implement the orders that effectuated a regulatory taking of Plaintiffs' property. Wooten was an essential component of the governmental conduct that resulted in a regulatory taking of Plaintiffs' property.

22.     Defendant Helen N. Robbins-Meyer is made a party to this action in her official capacity as the Chief Administrative Officer for the County of San Diego.  Robbins-Meyer signed the Covid-19 Closure Orders issued by the County of San Diego and otherwise took action to issue such orders. Robbins-Meyer was an essential component of the governmental conduct that resulted in a regulatory taking of Plaintiffs' property.

23.     Defendant David Nisleit is made a party to this action in his official capacity as the Chief of Police for the City of San Diego.  Under California law, Nisleit has the responsibility to enforce the Mayor's Executive Orders in the City of San Diego, and did so.  Nisleit was an essential component of the governmental conduct that resulted in a regulatory taking of Plaintiffs' property.

24.     Defendant William Gore is made a party to this action in his official capacity as the San Diego County Sheriff.  Under California law, Gore has the responsibility to enforce the San Diego County Order in San Diego County, and did so.  *See* CAL. GOV'T CODE § 26601.  Gore was an essential component of the governmental conduct that resulted in a regulatory taking of Plaintiffs' property.

25.     Defendant County of San Diego is a county in Southern California.  As of the 2010 census, it had a population of 3,095,313, making it California's second-most populous county and the fifth-most populous county in the United States.  The County of San Diego issued certain of the Closure Orders challenged herein and took actions to enforce the orders.

6

26. Defendant City of San Diego is a city in Southern California within the County of San Diego. With an estimated population of 1,423,851 as of July 1, 2019, San Diego is the eighth most populous city in the United States and second most populous in California. The City of San Diego issued certain of the Closure Orders challenged herein and took actions to enforce the orders.

27. Defendants Faulconer, Wooten, Robbins-Meyer, Nisleit, Gore, the County of San Diego, and the City of San Diego are sometimes collectively referred to herein as the "City and County Officials Defendants."

28. As alleged herein, Defendants are responsible for the implementation of various Executive Orders and closure orders that are in direct violation of the U.S. and California Constitutions, including but not limited to 42 U.S.C. § 1983. Accordingly, each Defendant acted under color of state law with respect to all acts or omissions herein alleged.

29. The true names and capacities of Defendants DOES 1-100, inclusive, are currently unknown to Plaintiffs. Accordingly, Plaintiffs sue each and every DOE Defendant by such fictitious names. Each DOE Defendant, individually and collectively, is responsible in some manner for the unlawful acts alleged herein. Plaintiffs will seek leave of this Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when their identities become known.

## IV. <u>JURISDICTION AND VENUE</u>

30. This action is brought under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiffs' constitutional rights to due process, equal protection, and just compensation for temporary takings under the Fifth and Fourteenth Amendments to the U.S. Constitution.

31. Accordingly, this Court has federal question jurisdiction under 28 U.S.C. §§ 1331 and 1343.

32. This Court has supplemental jurisdiction over the claims asserted

7

1    under the California Constitution, statutes, and regulations.

2        33.    The Southern District of California is the appropriate venue for this

3    action pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is a District in which

4    Defendants maintain offices, exercise their authority in their official capacities, and

5    have enforced and have threatened to enforce the Orders.

6                    **V.    FACTUAL ALLEGATIONS**

7        34.    On or about January 31, 2020, the U.S. Secretary of Health and Human

8    Services declared a public health emergency, under section 319 of the Public Health

9    Service Act (42 U.S.C. § 247d), in response to COVID-19.

10       35.    On or about March 4, 2020, California Governor Gavin Newsom

11   proclaimed a State of Emergency as a result of the potential threat of COVID-19.

12       36.    On or about March 13, 2020, President Donald J. Trump proclaimed a

13   National State of Emergency as a result of the threat of the emergence of a novel

14   coronavirus, SARS-CoV-2, which causes the COVID-19 illness.

15       37.    On March 19, 2020, Governor Newsom issued Executive Order N-33-

16   20, attached hereto as **Exhibit 1**, directing all residents to heed the State Public

17   Health Officer's directives.  Governor Newsom's Executive Order N-33-20, and the

18   ensuing orders he issued related to Covid-19, were not legislative acts.   The

19   California Legislature did not issue the orders, nor did it meet to debate the orders

20   before Newsom issued them or to engage in fact-finding sessions regarding the

21   orders.

22       38.    Defendant Wooten issued similar "stay-in-place" and "shut-down"

23   orders for all "Non-Essential" businesses initially on or about March 13, 2020 for

24   the County of San Diego, which have been amended several times subsequently

25   ("County Orders").  A true and correct copy of San Diego County's March 13, 2020

26   order is attached hereto as **Exhibit 4**.  The March 13, 2020 Closure Order signed by

27   Defendant Wooten stated:

28

FIRST AMENDED CLASS ACTION COMPLAINT

This Order is issued in accordance with, and incorporates by reference: 1) the Declaration of Local Health Emergency issued by the Health Officer on February 14, 2020; 2) the Proclamation of Local Emergency issued by the County Director of Emergency Services on February 14, 2020; 3) the action of the County Board of Supervisors to ratify and continue both the local health emergency and local emergency on February 19, 2020; 4) the Proclamation of a State of Emergency issued by Governor of the State of California on March 4, 2020: 5) Executive Order N-25-20 issued by the Governor of the State of California on March 12, 2020 which orders that "All residents are to heed any orders and guidance of state and local health officials, including but not limited to the imposition of social distancing measures, to control COVID-19; and 6) Proclamation 9984 regarding COVID-19 issued by the President of the United States on March 11, 2020.[1]

39.   San Diego County's March 13, 2020 Closure Order also stated: "Violation of this Order is subject to fine, imprisonment, or both.  (California Health and Safety Code section 120295.)."

40.   The March 13, 2020 San Diego County Closure Order also stated:  "To the extent necessary, this Order may be enforced by the Sheriff or chiefs of police pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029."

41.   Since the passage of the County Orders, Defendant Gore has sought to vigorously enforce these orders against Plaintiffs, other San Diegans, and "Non-Essential" businesses. For example, Defendant Gore's sheriffs' department cited individuals for merely parking their cars near a beach and watching the sunset. Defendants have also issued cease-and-desist orders to numerous gyms and health clubs.

42.   Additionally, pursuant to the discretion provided to them by Defendant Newsom, the City and County of San Diego have both implemented and extended several orders preventing Plaintiffs from practicing their profession and operating

---

[1] *See* Exhibit 4.

FIRST AMENDED CLASS ACTION COMPLAINT

their businesses.   These orders were issued subsequent to March 19, 2020 and adversely affected Plaintiffs' businesses and imposed restrictions on the ability of Plaintiffs and the Class to operate their businesses and work in their chosen professions.

43.    For example, on July 14, 2020, the County of San Diego issued a closure order, signed by Defendant Wooten, that classified all hair and nail salons, gyms, and health clubs  in San Diego County as "non-essential" and ordered them to be completely shut down as of July 15, 2020.  *See* **Exhibit 5**.  The Order stated:

> All businesses not meeting the definition of essential business or reopened business in section 22 below are referred to in this Order as "non-essential businesses" and ***shall be and remain closed for the duration of this Order***. All essential businesses and reopened businesses must comply with the requirements of this Order.[2]

44.    Defendant Faulconer, in his official capacity as Mayor of San Diego, issued at least eight Executive Orders which adopted the State and County closure orders within City limits.  For example, on March 30, 2020, Defendant Faulconer signed Executive Order 2020-2 (attached as **Exhibit 7**), which stated:

> "All City residents shall comply with all current direction issued by Executive Order of the Governor of California and by directive of the County Public Health Officer."[3]

45.    Through his numerous Executive Orders, Defendant Faulconer ordered the closure of all hair and nail salons, gyms, spas, and health clubs in the City of San Diego during the relevant time periods.

46.    Defendant David Nisleit, in his official capacity as Chief of Police for the City of San Diego, was responsible for enforcing Defendant Faulconer's Executive Orders related to the Covid-19 closure orders, and did so.

---

[2] *See* Exhibit 5.

[3] *See* Exhibit 7.

10

47.    On July 13, 2020, Defendant Newsom issued an order rolling back the State's reopening plans, and requiring all hair and nail salons, gyms, spas, and health clubs to shut down completely.   The City and County Officials Defendants promptly thereafter issued similar closure orders affecting the same businesses.   All such State, City, and County orders were applicable to all cities and counties relevant to this action.

48.    As noted by an article at the time:

"With coronavirus continuing its surge in California, Gov. Gavin Newsom announced Monday that the state is significantly rolling back its reopening plans and adding counties to his growing 'watch list.'

Newsom ordered all counties across the state to immediately close indoor dining, bars, movie theaters, zoos and museums. In addition, 30 counties on the governor's watch list for troubling coronavirus trends — where 80% of Californians live — must also shutter gyms, hair salons, places of worship, indoor malls and non-essential offices."[4]

49.    On December 3, 2020, the State of California issued a Regional Stay at Home Order.   The Regional Stay at Home Order and a supplemental order, signed December 6, 2020, announced that the orders would go into effect at 11:59 PM the day after a region was determined to have less than 15% ICU availability.   The supplemental order clarified the definition of "retail operations" and other terms and went into effect immediately.   The order prohibited private gatherings of any size, closed sector operations except for critical infrastructure and retail, and required 100% masking and physical distancing in all others.

50.    Plaintiffs Tatoma and Aucoin, and other similarly situated members of the proposed Class, hold business licenses issued by the Board of Cosmetology in

---

[4] See Wes Goldberg, "Gov. Newsom Orders Statewide Closures of Indoor Activities to Fight Coronavirus Surge," THE MERCURY NEWS, July 13, 2020, available at https://www.mercurynews.com/2020/07/13/gov-newsom-announces-closure-of-indoor-reopening-across-california/ (last visited Mar. 23, 2021).

FIRST AMENDED CLASS ACTION COMPLAINT

one or more of seven licensing categories:  Cosmetologists, Barbers, Manicurists, Estheticians, Electrologists, Apprentices, and Establishments.

51.    On December 4, 2020, the Board of Cosmetology issued a directive in response to the December 3, 2020 Stay at Home Order, clarifying that Plaintiffs and all other hair and nail salons were required to close and completely shutter their operations.  The directive stated:

> ***When a Regional Stay at Home Order is triggered because ICU capacity has dropped below 15%, salons, barber shops and personal care services (esthetics, manicuring and electrology) must close***.[5]

52.    On December 4, 2020, the County of San Diego issued a similar closure order, signed by Defendant Wooten, and effective as of December 5, 2020. *See* **Exhibit 6**.  The order stated:

> "All persons are to remain in their homes or at their place of residence, except for employees or customers traveling to and from essential businesses or a State authorized sector as defined in sections 10 and 11, below, or to participate in individual or family outdoor activity as allowed by this Order."

53.    The December 3, 2020 and December 4, 2020 orders were originally slated to remain effective for three weeks.

54.    However, on December 29, 2020, California extended the closure order indefinitely. The City of San Diego (via order from Defendant Faulconer) and County of San Diego (through orders from various county officials, and with the participation of the San Diego County Board of Supervisors, including members Cox, Gaspar, Fletcher, and Desmond) did likewise.  Dr. Mark Ghaly, California's Secretary of Health and Human Services, stated at the time in announcing the continuation of the closure orders that all non-essential businesses (including hair

---

[5] The directive is available at https://www.barbercosmo.ca.gov/licensees/new_stay_at_home.pdf (last visited Jan. 11, 2021) (emphasis in original).

FIRST AMENDED CLASS ACTION COMPLAINT

and nail salons, gyms, and spas) would be closed for the "foreseeable future" due to reduced ICU capacity.

55. The December 3, 2020 State order, which covered an 11-county Southern California area, took effect at 11:59 p.m. December 6, 2020 and was set to expire December 28, 2020. But with the region's intensive-care unit capacity at hospitals still effectively listed at 0%, that order was instead extended indefinitely by both the State and the City and County of San Diego.

56. As a result of the orders, including the December 29, 2020 order and the Board of Cosmetology's December 4, 2020 directive, Plaintiffs were completely and indefinitely prohibited from engaging in any business operations in their chosen profession.

57. In response to the orders, and under threat of being fined and/or imprisoned, Plaintiffs were forced to cease licensed operations and had no income from their licensed activities in their chosen professions during the time the Defendants' Orders were in effect.

58. Significantly, Defendants' orders completely closing all hair and nail salons were unique in the United States.  In other states, these businesses were allowed to stay open and operate.  As an example, as of December 14, 2020, all other 49 states allowed hair and nail salons to remain open, as indicated in the following chart:

[the remainder of this page is intentionally left blank]

First Amended Class Action Complaint



## ARBITRARY CATEGORIES OF "ESSENTIAL" AND "NON-ESSENTIAL" SERVICES

59.    The Governor's Order, by reference, incorporated the U.S. government's "16 critical infrastructure sectors whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof" such that Newsom ordered that "Californians working in these 16 critical infrastructure sectors continue their work because of the importance of these sectors to Californians' health and well-being."[6]

---

[6] *See, supra*, n.2.

FIRST AMENDED CLASS ACTION COMPLAINT

60.    On or about March 22, 2020, Dr. Sonia Angell in her capacity as California Public Health Officer designated a list of "Essential Critical Infrastructure Workers".[7]  The list was updated on April 28, 2020.

61.    The Order allows persons to continue working only if they are deemed "essential workers" in an "essential business." While some of the deemed-essential businesses are clearly critical to human needs despite an emergency (*e.g.*, public safety, food supply chain, utilities), others, when viewed in the light of the prohibitions against Plaintiffs, are arbitrary as they bear no connection to public health and have been created for the sole purpose of allowing Defendants' politically preferred trades and industries to continue operating while secondary interests are left in economic distress. The State Public Health Officer's Directive[8] (referred to herein as the "List") includes the following as "essential":

a.    "Workers supporting the entertainment industries, studios, and other related establishments, provided they follow COVID-19 public health guidance around physical distancing." Licensees supporting the entertainment industries as beauticians, hair stylists, and manicurists at a film studio are "essential," while Plaintiffs' licensed services to clients outside the entertainment industry are not. This distinction bears no connection whatsoever to public health.

b.    "Workers for health manufacturing … and distributors of … cleaning, sanitizing, disinfecting or sterilization supplies, personal hygiene products, and tissue and paper towel products" are deemed "essential." Plaintiffs Tatoma and Aucoin and other cosmetology licensees provide these services, sell

_____

[7] The list of Essential Critical Infrastructure Workers can be found online at: https://covid19.ca.gov/img/EssentialCriticalInfrastructureWorkers.pdf. Last visited Jan. 11, 2021.

[8] As of January 11, 2021, located at: https://covid19.ca.gov/img/Essential CriticalInfrastructureWorkers.pdf.

FIRST AMENDED CLASS ACTION COMPLAINT

shampoo, as well as other hygiene products. While Plaintiffs' business is deemed "essential" for selling of shampoo, it is deemed non-essential when it comes to the licensed services. Plaintiffs at least partially fall within the "essential" services exception list, yet Defendants' threat to revoke Plaintiffs' licenses for practicing licensed activities underscores the irrational, arbitrary and capricious nature of the Governor's Order and Defendants' enforcement.

c.    "Workers performing services in support of the elderly and disabled populations who coordinate a variety of services, including health care appointments and activities of daily living" are deemed essential. Personal grooming services, including those offered by Plaintiffs, are central to the daily lives of the elderly and disabled.  So are gyms and health clubs.  However, Defendants nevertheless deny Plaintiffs and other licensees the ability to perform these services under threat of criminal prosecution and license revocation.

d.    Workers in laundromats, laundry services, and dry cleaners come in close, direct contact with the clothing and linens from members of the public, with no temporal limitation. These are items which, if a customer is infected with COVID-19, pose as high a risk, if not greater, of infection as Plaintiffs' licensed activities.

62.    Accordingly, Governor Newsom's "essential workers" list, which was adopted and enforced by both the City and County of San Diego through Defendants' official acts, prohibits all workers in the hair, skin, nail care, and electrolysis industries, as well as workers in gyms and spas from engaging in their profession, regardless of the measures taken by these professionals to reduce or eliminate the risk of the virus spreading.  Meanwhile, the List deems the continuity of services provided by espresso bars, recreational cannabis dispensaries, pet grooming, chiropractors, and other professions to be so essential to "public infrastructure" that these activities are permitted to resume under the Governor's

FIRST AMENDED CLASS ACTION COMPLAINT

1    Order, despite posing the same or greater risks than Plaintiffs' licensed activities.

2    63.    The State Public Health Officer's directives require, in part, "all

3    individuals living in the State of California to stay home or at their place of

4    residence except as needed to maintain continuity of operations of the federal

5    critical infrastructure sectors".[9] The public health directive provides that its

6    directives "shall stay in effect until further notice."[10] The Governor's Order and its

7    public health directives, which was the first such "stay-at-home" directive issued in

8    the country, provides that it "shall stay in effect until further notice." Thus, without

9    giving any benchmarks or standards to determine when the proclaimed emergency

10   is over, the Governor's Order grants State actors the limitless power to create

11   arbitrary standards and capriciously enforce them in perpetuity, or "until further

12   notice."

13   64.    The December 29, 2020 Order, which extended the complete, 100%

14   shutdown of the hair and nail salon industry, as well as all gyms, health clubs, and

15   spas indefinitely, clarified the major, sustained, and forced closure of Plaintiffs'

16   business in order to benefit the public.  These orders now demonstrate that the

17   government has taken Plaintiffs' property for public use and must pay

18   compensation.

19   65.    Meanwhile, services and industries which are clearly not essential to

20   public health and welfare have been allowed to remain open for business.  After

21   being lobbied by the United Cannabis Business Association,[11] Governor Newsom

22   and Dr. Angell made arbitrary exceptions, amending their original List to declare

23

24        [9] The State Public Health Directive was included in the text of Executive
     Order N-33-20.

25        [10] *Id*.

26        [11] *See, e.g.*, https://www.wsj.com/articles/california-deems-pot-an-essential-

27   coronavirus-business-11585005903  (last visited on January 11, 2021).

28

FIRST AMENDED CLASS ACTION COMPLAINT

that cannabis retail stores were "essential" while maintaining that Plaintiffs' licensed activities are "non-essential."

66.    None of the powers expressly granted under the California State Emergency Services Act allow Governor Newsom or the City and County Officials to sequester all Californians within their homes indefinitely, unable to ply their trades or provide for their families legally.[12]

67.    Since the initial outbreak of COVID-19 in the United States in February and March 2020, Defendants imposed increasingly stringent restrictions — and then banned completely — Plaintiffs' licensed activities, without providing any just compensation, while allowing individuals in other classes and groups to perform similar activities that pose equal or greater risks to public health.

## THREATENED LICENSE REVOCATIONS AND CRIMINAL PROSECUTION

68.    During all relevant times, California officials have threatened criminal prosecution for violations of the Closure Orders. At the State level, Defendant Becerra is responsible for enforcing the closure orders.  At the City and County of San Diego, Defendants Nisleit and Gore, respectively, were responsible for enforcing the closure orders, and did so.  Defendants' conduct constitutes a regulatory taking, requiring Defendants to pay just compensation to Plaintiffs and the Class.  Defendants' conduct has effectively taken away Plaintiffs lawful right to engage in professional state-licensed activities and/or their professions of choice. This has forced Plaintiffs to lay off employees, forego their property, lose their livelihoods, and suffer financial ruin.  Defendants have singled out Plaintiffs and the Class for closure orders, while allowing far less essential businesses whose operation poses a much more substantial threat of COVID-19 spread to remain

---

[12] CAL. GOV'T CODE § 8565, *et seq*.

18

open.

69.     Defendants' purported justification of the closure orders is to promote the public good and benefit.  Defendants' closure orders specifically justified the regulatory taking of Plaintiffs' businesses by stressing the benefits to the public of increasing the number of available ICU beds available to the public.  For example, the State's COVID-19 website states: "To preserve our health care system, the Regional Stay Home Order goes into effect if intensive care unit (ICU) capacity drops below 15% in a region. Counties in the region will be subject to new restrictions."[13]  Because Defendants have taken Plaintiffs' property for the benefit of the public, they must pay compensation to Plaintiffs and the Class.

70.     As of February 2020, the Board of Cosmetology had issued outstanding licenses to 313,734 stylists and cosmetologists, 34,093 barbers, 90,392 estheticians, 129,802 manicurists, 1,679 electrologists, and 53,694 business establishments.

71.     Throughout the relevant time period, Defendants have threatened to revoke licenses of cosmetology professionals for violation of the closure orders.  At the same time, Defendants have allowed pet groomers to remain open, sending the signal that dog haircuts are more essential than human haircuts.  Defendants have also allowed restaurants, strip clubs, toy stores, clothes stores, souvenir shops, and adult sex shops to remain open while at the same time forcing Plaintiffs to completely close, with no opportunity to make any income or livelihood whatsoever.

72.     For example, as of December 17, 2020, adult sex shops in San Diego were still open and allowed to conduct business inside the premises at a supposed capacity of 25%, although enforcement of the 25% capacity limitation was left

_____

[13] *See* https://covid19.ca.gov/, last visited Jan. 11, 2021.

FIRST AMENDED CLASS ACTION COMPLAINT

completely to the discretion of the store.  Moreover, the State did not even impose any restrictions on the operating hours of such establishments.  For example, as of Dec. 17, 2020, Roy's Adult Fantasy Outlet, 4650 Border Village Rd., San Ysidro, CA 92173 (in San Diego County) was still being allowed to operate, and was operating, business operations in the interior of its store from 9:00 a.m. to 11:00 p.m. Monday to Saturday, and 9:00 a.m. to 10:00 p.m. on Sundays.  Other adult sex shops in the State of California are operating 24 hours a day.

73.     Defendants' actions have deprived Plaintiffs and the Class of all economically beneficial use of their property, for which compensation is required.

**THREATENED AND ACTUAL DISCIPLINARY ACTION**

74.     Defendants have threatened Plaintiffs and other licensees with expulsion from their profession if they do not keep their businesses closed, while "essential" workers and businesses resume operations.   Individuals requesting guidance or relief are directed to seek assistance from their "industry associations."

75.     On May 1, 2020, the Board of Cosmetology issued a notice directing all license-holders to, in part, "abide by the Governor's stay at home order," threatening that businesses that do not follow the Governor's Order will be subject to "disciplinary action against their license" and that "[violations] will not be taken lightly" (the "Board's Directive").  The only legal authority cited in the Board's Directive was the Governor's Order, stating, "[T]he Board fully supports the Governor's stay at home order and we expect our licensees to comply."

76.     This lawsuit seeks compensation for the taking of Plaintiffs' property. Plaintiffs represent persons and businesses who have been devastated by the State of California's arbitrary and capricious closure orders that have forced Plaintiffs to shutter their business completely, while other businesses that are far less essential than Plaintiffs' businesses are allowed to remain open.  For example, under the Governor's order, toy stores and strip clubs are allowed to remain open, but hair

FIRST AMENDED CLASS ACTION COMPLAINT

and nail salons are forced to completely close.

77.    In addition to threatened disciplinary action, various governmental agencies have taken actual enforcement action.

78.    In San Diego County, Defendant William Gore, in his official capacity as Sheriff, is responsible for enforcing the Closure Orders, and has done so.  The government has issued hundreds of cease-and-desist orders to businesses which are in violation of the limitations imposed by the orders governing the operation of businesses.    In San Diego County, these cease-and-desist orders have predominantly been issued to restaurants which, while allowed to remain open, are not allowed to conduct indoor operations.  The typical cease-and-desist order states that "Failure to comply may result in criminal misdemeanor citations with a $1,000 fine for each violation."[14]

79.    Plaintiffs have asked what they can do to resume their professions safely, only to be rebuffed.

80.    Plaintiffs Tatoma and Aucoin and similar businesses licensed by the Board of Cosmetology are well-versed in the latest practices of health, safety, sanitation, and hygiene required to prevent the spread of contagion.  Notably, the Board of Cosmetology restricts entry to the examination to those applicants who have completed all the required hours for their field of study.   Stylists and cosmetologists are required to complete 1,600 hours of training.   Barbers are required to complete 1,500 hours of training.  Estheticians are required to complete 600 hours of training. Electrologists are required to complete 600 hours of training.

---

[14] *See, e.g.*, https://www.sandiegocounty.gov/content/dam/sdc/hhsa/programs/phs/Epidemiology/covid19/closure_orders/StudioBarre-CeaseandDesist-11182020.pdf (last visited Jan. 11, 2021).  A list of the cease-and-desist orders issued by San Diego County can be found at https://www.sandiegocounty.gov/content/sdc/hhsa/programs/phs/community_epidemiology/dc/2019-nCoV/closure-orders.html.

First Amended Class Action Complaint

Manicurists are required to complete 350 hours of training.  Most of the required training consists of safety, hygiene, and sanitation protocols.  Licensed training programs include comprehensive health and safety measures.

81.    Besides the vigorous training described above, licensees are also subject to regular inspections and ongoing scrutiny for safety, cleanliness, and sanitation practices.

82.    With respect to the other Plaintiffs, Defendants have allowed other businesses to open with the proviso that the businesses observe certain safety precautions.  Plaintiffs are able to observe these safety precautions, yet were wrongfully denied the ability to open by Defendants.

### DEPRIVATION OF REAL AND PERSONAL PROPERTY

83.    Plaintiffs and the Class have been denied use of their licenses, businesses, and other property, both real and personal, since the Governor's order was issued.  They nevertheless remain liable for licensing fees, rent, and other fixed operating costs.

84.    Instead of promulgating conditions or guidelines for the safe operations of the businesses of Plaintiffs and the Class, as the Centers for Disease Control and Prevention and counterparts in neighboring states have done, Defendants have categorically labelled Plaintiffs' industries and businesses as "non-essential," thereby conscripting Plaintiffs and the Class to joblessness and taking their property without due process or legal justification.

### FEDERAL MONITORING OF CIVIL RIGHTS VIOLATIONS

85.    On April 27, 2020, Attorney General William Barr sent a memorandum to all U.S. Department of Justice United States Attorneys regarding civil rights violations occurring in various states during the coronavirus crisis.[15]

---

[15] As of January 11, 2021, accessible at: https://cdn.cnsnews.com/attachment/ag_memo_-_balancing_public_safety_with_the_preservation_of_civil_rights_0.pdf.

First Amended Class Action Complaint

This memorandum is attached hereto as **Exhibit 3** and incorporated herein by this reference.

86.     In his memorandum, Attorney General Barr directs all United States Attorneys to identify state directives that could be violating the Constitutional rights and civil liberties of individual citizens, stating "the Constitution is not suspended in times of crisis." Attorney General Barr wrote:

> "If a state or local ordinance crosses the line from an appropriate exercise of authority to stop the spread of COVID-19 into an overbearing infringement of constitutional and statutory protections, the Department of Justice may have an obligation to address that overreach in federal court."

87.     Defendants have abused their power by seizing on the coronavirus pandemic to expand their authority to lengths unprecedented by any prior crisis in California, including prior natural disasters, wars, and economic crises.  This legal action challenges the very type of overbearing infringement of constitutional and statutory protections identified by Attorney General Barr.

## THE CLOSURE ORDERS CONSTITUTE A REGULATORY TAKING OF PRIVATE PROPERTY FOR PUBLIC BENEFIT

88.     At a press conference on March 19, 2020, Newsom repeatedly said the rationale for the Governor's Order was to "bend the curve."[16] He also said "[t]he point of the stay at home order is to make those numbers moot"[17] and put them "in the dustbin of history."[18] He added that one goal was to slow down transmission enough to reduce the strain it might place on hospital resources.[19] Indeed, the strain

---

[16] March 19, 2020 press briefing at 0:30-0:35, 8:10-8:20, 10:00-10:15, 24:20-24:30,33:45-33:55, and 35:17-36:00, available as of January 11, 2021 at: https://www.youtube.com/watch?v=8OeyeK8-S5o.

[17] *Id*. at 35:10-35:20.

[18] *Id*. 33:55-34:05.

[19] *Id*. at 5:42-8:09.

FIRST AMENDED CLASS ACTION COMPLAINT

on hospital resources was a key factual foundation of the emergency proclamation of March 4, 2020.[20]

89.    At the outset of the COVID-19 crisis, Governor Newsom wrote a letter to President Trump,[21] stating that in eight weeks, by May 13, 2020, approximately 56% percent of Californians — 25.5 million individuals — would be infected by the novel coronavirus.  His letter went on to say that "[i]n some parts of our state, our case rate is doubling every four days."[22] On the basis of these projections, he issued his Governor's Order on March 19, 2020.

90.    As of May 7, 2020, there were 58,815 confirmed cases, which was only 0.2% of Governor Newsom's projection.  By January 3, 2021, the number of confirmed cases in California was 2,397,923, still just 9.4% of the Governor's projection from March 2020.[23]

91.    Newsom expounded on these numbers at his March 19, 2020 press conference.  He explained that a hospitalization rate of 20 percent could mean that California would face a shortfall of 19,543 hospital beds above the state's current capacity of approximately 78,000 beds.[24] He added that California had a surge capacity of 10,207 additional beds that could partially offset this shortfall.[25] Thus,

---

[20] Twelfth paragraph of the Proclamation of a State of Emergency, which as of the date of this filing can be found online at: https://www.gov.ca.gov/wpcontent/uploads/2020/03/3.4.20-Coronavirus-SOE-Proclamation.pdf.

[21] As of January 11, 2021, accessible at: https://www.gov.ca.gov/wp-content/uploads/2020/03/3.18.20-Letter-USNS-Mercy-Hospital-Ship.pdf.

[22] *Id.*

[23] *See* https://news.google.com/covid19/map?hl=en-US&mid=%2Fm%2F01n7q&gl=US&ceid=US%3Aen, last visited Jan. 11, 2021.

[24] March 19, 2020 press briefing, supra, at 5:40-7:32.

[25] *Id.* at 7:20-7:40.

24

he was predicting a total shortfall of approximately 9,336 beds.[26]

92.  Mark Ghaly, the Governor's Secretary of Health and Human Services, explained that the state came up with the 56 percent estimate by "[u]sing the available literature, advice from the CDC and our understanding and experience in California, we applied a variety of different measures that looked at an attack rate, that looked at the … hospitalization rates that we had available as well as other outcome measures."[27]

93.  The Secretary also stated that "[w]e knew that the attack rate of 56 percent that we chose was somewhat in the middle between the high-end and the low-end of what we'd seen in the literature…."[28]

94.  Newsom admitted that his numbers did not account for any mitigation measures put in place.  Rather, those numbers assumed that "we're just along for the ride[.]"[29]

95.  Defendant Newsom has admitted that the underlying public health benefits are the main — if not sole — reason for the closure orders.  Governor Newsom has also stated that the closure orders have in fact benefitted the public.  During a briefing on April 16, 2020, Newsom stated that "[we] have successfully bent and arguably flattened the curve in the state of California."[30]

96.  The County of San Diego has also stated that the purpose of the regulations is to benefit the public: "The goal is to slow the spread of the virus and

---

[26] *Id*.

[27] *Id*. at 28:49-31:11.

[28] *Id*.

[29] *Id*. at 24:20-24:40.

[30] April 16, 2020 briefing by the Governor at 37:20, transcript available as of January 11, 2021, at: https://www.rev.com/blog/transcripts/gov-gavin-newsom-california-covid-19-briefing-transcript-april-16.

First Amended Class Action Complaint

to make sure the healthcare system is able to care for all patients."[31]

97.     The closure orders constitute regulatory takings which have benefitted the public at large by increasing the availability of health care resources available to the public, decreasing the spread of the virus, and increasing the number of available ICU beds, thus saving lives.

**PLAINTIFFS' PROPERTY WAS TAKEN FOR PUBLIC USE WITHOUT JUST COMPENSATION**

98.     The property of Plaintiffs and the Class has been taken by the State of California for public use without just compensation.

99.     Almost all businesses in the State of California have been allowed to remain open during the COVID-19 pandemic, in one form or another.  Hair and nail salons, gyms, health clubs, and spas, on the other hand, have been singled out for complete closure.  The explicitly stated purpose for the complete closure orders is to stop the spread of the virus and decrease the number of individuals requiring hospitalization, thus maintaining the number of ICU beds available to the public.  This is clearly a public benefit, similar to expanding a highway by forcing adjoining landowners to have their homes acquired by the government in order to expand the highway.  Here, while the businesses of Plaintiffs and the Class have not been physically taken, they have been completely shut down by the State during the relevant time periods, precluding Plaintiffs and the Class from earning any income and practicing their chosen profession.

100.    Other businesses that are far less essential and where there have been more instances of the spread of COVID-19 from their operations have been allowed to remain open — completely or partially.

_____

[31] https://www.sandiegocounty.gov/content/sdc/hhsa/programs/phs/community_epidemiology/dc/2019-nCoV/health-order.html, last visited Jan. 11, 2021.

FIRST AMENDED CLASS ACTION COMPLAINT

101.   Courts have refused to set aside the State's closure orders.   If the orders are lawful, as the courts have said, then Plaintiffs and the Class are entitled to compensation because their property has been taken for the benefit of the public.

## V.   CLASS ACTION ALLEGATIONS

102.   Plaintiffs bring this action both on behalf of Plaintiffs and as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of the following class:

> All persons in the State of California who, as of March 19, 2020, were engaged in the professions of  barbering or cosmetology or operating or working at a gym, fitness club, hair or nail salon, or spa and who have been unable to work or operate their business at any time from March 19, 2020 to the present due to the Closure Orders ("Class Period").

103.   This definition specifically excludes the following persons or entities: (a) any of Defendants named herein or any of their officers and employees; (b) all governmental entities; and (b) the judges and chambers staff in this case, as well as any members of their immediate families. Plaintiffs reserve the right to expand, modify, or alter the class definition in response to information learned during discovery.

104.   This action is properly brought as a class action under Federal Rule of Civil Procedure 23(a) for the following reasons:

a.   **Numerosity** (Fed. R. Civ. P. 23(a)(1)):  The proposed Class is so numerous and geographically dispersed throughout California that the joinder of all Class Members is impracticable.  While Plaintiffs do not know the exact number and identity of all Class Members, Plaintiffs are informed and believe that there are thousands of Class Members.  The State Board of Barbering and Cosmetology

First Amended Class Action Complaint

represents that it licenses over 560,000 individuals.[32]   In addition, there are thousands of gyms, health clubs, and spas in California.   The precise number of Class Members can be ascertained through discovery;

   b. **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2) and (b)(3)):  There are questions of law and fact common to the proposed Class which predominate over any questions that may affect particular Class Members.  Such common questions of law and fact include, but are not limited to:

    i. Whether the Closure Orders and other orders and conduct by Defendants constitute a regulatory taking of Plaintiffs' property;

    ii. Whether Defendants' conduct represents the taking of private property for public use; and

    iii. Whether Plaintiffs and the other members of the Class were injured by Defendants' conduct and, if so, the determination of the appropriate Class-wide measure of damages and/or compensation;

   c. **Typicality** (Fed. R. Civ. P. 23(a)(3)):  Plaintiffs' claims are typical of the claims of the members of the proposed Class.  Plaintiffs and the Class have been injured by the same wrongful practices of Defendants.  Plaintiffs' claims arise from the same practices and conduct that give rise to the claims of the Class and are based on the same legal theories; and

   d. **Adequacy of Representation** (Fed. R. Civ. P. 23(a)(4)): Plaintiffs will fairly and adequately protect the interests of the Class in that Plaintiffs have no interests antagonistic to those of the other members of the Class, and Plaintiffs have retained attorneys experienced in class actions and complex litigation as counsel.

---

[32] *See* https://www.barbercosmo.ca.gov/ ("The Board was established in 1992 (after the Board of Barber Examiners and Board of Cosmetology merged) and today licenses over 50,000 establishments and over 560,000 individuals.").

FIRST AMENDED CLASS ACTION COMPLAINT

105.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

a.   Given the size of individual Class Member's claims and the expense of litigating those claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

b.   This action will promote an orderly and expeditious administration and adjudication of the proposed Class claims, economies of time, effort, and resources will be fostered, and uniformity of decisions will be ensured;

c.   Without a class action, Class Members will suffer damages, and Defendants' violations of law will proceed without remedy while the public reaped and retained the substantial benefits achieved from the complete closure of Plaintiffs' and other Class Members' businesses during the relevant time period; and

d.   Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

106.   Plaintiffs intend to provide notice to the proposed class by communicating the existence of the action in popular trade publications in the industry, utilizing online advertisements, and using professional notice companies to strategically and comprehensively develop additional methods to reach Class members.

## VI.   <u>CAUSES OF ACTION</u>

### <u>FIRST CAUSE OF ACTION</u>
### VIOLATION OF THE DUE PROCESS CLAUSE OF
### THE FOURTEENTH AMENDMENT
### (Against All Defendants)

107.   Plaintiffs incorporate by reference each and every allegation set forth

29

1  in all preceding paragraphs as if fully set forth herein.

2      108.   The Due Process Clause contains both a substantive and a procedural

3  component.   Substantive due process forbids the government to infringe certain

4  "fundamental" liberty interests at all, no matter what process is provided, unless the

5  infringement is narrowly tailored to serve a compelling state interest.   Procedural

6  due process imposes constraints on governmental decisions which deprive

7  individuals of "liberty" or "property" interests within the meaning of the Due

8  Process Clause.   Procedural due process does not forbid the government from

9  depriving individuals of a protected interest, but rather requires the government to

10  employ adequate procedures that ensure the fairness of any deprivation.

11      109.   The Orders and Defendants' enforcement thereof violate Plaintiffs'

12  and the Class's substantive due process rights as follows:

13          a.      Plaintiffs' and the Class's fundamental property interest in

14  conducting lawful business activities is protected by the Due Process Clause of the

15  Fourteenth Amendment.   *Medina v. Rudman*, 545 F.2d 244, 250 (1st Cir. 1976)

16  (included among the substantive rights so protected is the right to pursue one's

17  vocation under a state-granted license) (citing *Paul v. Davis*, 424 U.S. 693 (1976)).

18          b.      Plaintiffs and the Class have been issued business licenses by

19  the State of California, and therefore have a right to lawfully pursue their vocations,

20  a substantive due process right impaired by Defendants' actions.

21          c.      Defendants lack any legitimate or compelling interest for

22  depriving Plaintiffs and the Class of their right to lawfully pursue their vocations.

23          d.      Even if such a legitimate, compelling interest existed,

24  Defendants' Orders are not rationally related or narrowly tailored to further any

25  such interest.

26      110.   The Orders and Defendants' enforcement thereof violate Plaintiffs'

27  and the Class's procedural due process rights as follows:

28

FIRST AMENDED CLASS ACTION COMPLAINT

a.     The Orders and lists of "Essential" Workers and Businesses are arbitrary and capricious and thus are invalidated by the Fourteenth Amendment's procedural due process protections.

b.     Procedural due process, at a minimum, would require Plaintiffs and the Class to be provided with a meaningful opportunity to respond to the Orders (or the continuation thereof) and explain how and why they are constitutionally invalid as applied to Plaintiffs and the Class.  However, the Closure Orders have prevented Plaintiffs from challenging the application of the Orders and the List to them, denying them any process whatsoever before their rights were forcibly taken.

c.     Further, this taking lasts indefinitely, with neither the Orders nor the List providing for any mechanism or opportunity to review or challenge the need to continue the Orders in the light of developing events.

111.   Defendants' actions therefore have deprived Plaintiffs and the Class of both procedural and substantive Due Process.

112.   Plaintiffs and the Class have no adequate remedy at law and have suffered serious and irreparable harm to their constitutional rights.

113.   Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION
### VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT
(Against All Defendants)

114.   Plaintiffs incorporate by reference each and every allegation set forth in all preceding paragraphs as if fully set forth herein.

115.   At its core, the Equal Protection Clause of the 14th Amendment to the U.S. Constitution requires states to govern impartially — not draw arbitrary distinctions between businesses based solely on differences that are irrelevant to a

31

1   legitimate governmental objective.

2   116.   Strict scrutiny under the Equal Protection Clause applies where the

3   classification impinges on fundamental rights, including the right to due process

4   and the right to travel (both interstate and intrastate), among others.  Defendants

5   have violated Plaintiffs' and the Class's procedural and substantive due process

6   rights under the Fourteenth Amendment.

7   117.   Defendants cannot satisfy strict scrutiny, because their arbitrary

8   classifications are not narrowly tailored measures that further compelling

9   government interests.

10   118.   Defendants have intentionally and arbitrarily categorized California

11   businesses and conduct as either "essential" or "non-essential."  Those businesses

12   classified as "essential," or as participating at least partly in "essential services," are

13   permitted to conduct their business and activities, even when the businesses also

14   provide "non-essential" goods and services.  Those classified as "non-essential,"

15   including Plaintiffs' and the Class's businesses, are required to completely shut

16   down. Defendants have therefore arbitrarily discriminated against Plaintiffs and the

17   Class in violation of their equal protection rights.

18   119.   Plaintiffs and the Class have no adequate remedy at law and have

19   suffered serious and irreparable harm to their constitutional rights.

20   120.   Plaintiffs found it necessary to engage the services of private counsel

21   to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award

22   of attorneys' fees pursuant to 42 U.S.C. § 1988.

23   **THIRD CAUSE OF ACTION**
**VIOLATION OF THE TAKINGS CLAUSE OF**
24   **THE FIFTH AMENDMENT BY INTERFERENCE**
**WITH LICENSES AND PROPERTY**
25   **(Against the City and County Officials Defendants and Doe Defendants 1-100)**
26

27   121.   Plaintiffs incorporate by reference each and every allegation set forth

28   in all preceding paragraphs as if fully set forth herein.

32

122.   Plaintiffs complied and continue to comply with the State's requirements to obtain the appropriate licenses and/or permits to conduct their business; they had the right, at all relevant times, to continue to operate under their licenses and/or work in their chosen professions; and their related commercial activities were continuous and lawful pursuant to California law.

123.   The California Supreme Court has held that the right to engage in a licensed profession is a property right of such high character that revocation of that license should only occur upon clear proof that the licensee has forfeited the same, and only in strict conformity to the statute authorizing its forfeiture. *Cavassa v. Off*, 206 Cal. 307 (1929).   The licenses and Plaintiffs' and the Class's right to operate their businesses are therefore personal property to which the Takings Clause applies.

124.   The regulatory actions taken by Defendants have resulted in Plaintiffs and the Class being deprived of all economically beneficial or productive use of their property including, without limitation, their licenses, their leased property, and their business property, and further resulted in the involuntary closing of their businesses, ultimately making Plaintiffs and the Class suffer a loss, in that they have to pay license fees, rent, property maintenance, and related expenses for property they are barred by law from using.   The California Supreme Court has found that "[w]hile the police power is very broad in concept, it is not without restrictions in relation to the taking or damaging of property.   When it passes beyond proper bounds in its invasion of property rights, it in effect comes within the purview of the law of eminent domain and its exercise requires compensation." *House v. L.A. Cnty. Flood Control Dist.*, 25 Cal. 2d 384 (1944).

125.   Defendants' Orders and the enforcement thereof have caused both a complete and total regulatory taking of Plaintiffs' and the Class's property without just compensation in violation of the Takings Clause of the Fifth Amendment to the

U.S. Constitution.  At a minimum, the effect of Defendants' Orders constitutes a "partial" taking under the *Penn Central* three-factor test.  *See Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).  As a result, Defendants' violation of the Takings Clause of the 5th Amendment has caused proximate and legal harm to Plaintiffs and the Class.

126.   The taking of Plaintiffs' and the Class's property was for the public benefit and the public has benefitted.

127.   Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA CONSTITUTION**
**RIGHT TO LIBERTY (CAL. CONST. ART. 1, § 1)**
**(Against All Defendants)**

128.   Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

129.   Since 1879, the California Constitution has provided intrinsic and unalienable rights and liberties to its citizens.  Chief among those rights and liberties are those found in Article 1 of the California Constitution. Article 1, Section 1 of the California Constitution provides, in pertinent part:

> All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

130.   Defendants' Orders have not only interfered with Plaintiffs' and the Class's rights and liberties as set forth under Article 1, Sections 1, 7, and 19 of the California Constitution, but have deprived Plaintiffs and the Class of the use, enjoyment, and ability to operate their businesses because of the closure orders.

131.   Defendants' Orders have proximately and legally caused unique and

34

FIRST AMENDED CLASS ACTION COMPLAINT

1    tremendous financial harm to Plaintiffs' and the Class's businesses.

2    132.   Requiring Plaintiffs and the Class to abstain from conducting lawful

3    business in the State of California merely because their business has been arbitrarily

4    deemed "non-essential," despite other compliance measures being taken to satisfy

5    the public's important health interests, violates their California Constitutional

6    liberty rights. The burden is on Defendants to prove these actions meet strict

7    scrutiny.

8    133.   Plaintiffs and the Class have suffered serious and irreparable harm to

9    their constitutional rights.

10   134.   Plaintiffs have found it necessary to engage the services of private

11   counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an

12   award of attorneys' fees and costs pursuant to California Code of Civil Procedure §

13   1021.5.

## FIFTH CAUSE OF ACTION
### VIOLATION OF THE CALIFORNIA CONSTITUTION
### RIGHT TO PROPERTY (CAL. CONST. ART. 1, § 7)
### (Against All Defendants)

17   135.   Plaintiffs incorporate herein by reference each and every allegation

18   contained in the preceding paragraphs as though fully set forth herein.

19   136.   Article 1, Section 7 of the California Constitution provides, in

20   pertinent part:

21      (a) A person may not be deprived of life, liberty, or property
22   without due process of law or denied equal protection of the laws;
23   provided, that nothing contained herein or elsewhere in this
     Constitution imposes upon the State of California or any public entity,
24   board, or official any obligations or responsibilities which exceed
     those imposed by the Equal Protection Clause of the 14th Amendment
25   to the United States Constitution with respect to the use of pupil school
     assignment or pupil transportation. In enforcing this subdivision or any
26   other provision of this Constitution, no court of this State may impose
     upon the State of California or any public entity, board, or official any
27   obligation or responsibility with respect to the use of pupil school

28

35

assignment or pupil transportation, (1) except to remedy a specific violation by such party that would also constitute a violation of the Equal Protection Clause of the 14th Amendment to the United States Constitution, and (2) unless a federal court would be permitted under federal decisional law to impose that obligation or responsibility upon such party to remedy the specific violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution.

137.   Requiring Plaintiffs and the Class to abstain from conducting lawful business in the State of California, despite the availability of compliance measures available and being taken by so-called "essential businesses" to satisfy the public health interests at stake, violates Plaintiffs' and the Class's California Constitutional liberty rights.

138.   Plaintiffs and the Class have suffered serious and irreparable harm to their constitutional rights.

139.   Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE CALIFORNIA CONSTITUTION**
**TAKINGS WITHOUT COMPENSATION (CAL. CONST. ART. 1, § 19)**
**(Against the City and County Officials Defendants and Doe Defendants 1-100)**

140.   Plaintiffs incorporate herein by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

141.   Article 1, Section 19 of the California Constitution provides, in pertinent part: Article 1, Section 19:

(a) Private property may be taken or damaged for a public use and only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner. The Legislature may provide for possession by the condemnor following commencement of eminent domain proceedings upon deposit in court and prompt release to the owner of money determined by the court to be the probable amount of

36

just compensation.

142.   California courts have routinely held that the California Constitution provides just compensation to property owners when their land is taken for public use, because the law seeks to bar the government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.  As alleged in this complaint, Plaintiffs' and the Class's property was taken for public use and Plaintiffs and the Class have not received compensation for the taking of their property.

143.   The principle underlying just compensation for property taken for public use is to put the owner in as good a position monetarily as he, she, or it would have occupied if his, her, or its property had not been taken.

144.   Finally, the constitutional guarantee of just compensation for property taken by the government is not only intended to protect the landowner (or business owner), but it also protects the public by limiting its liability to losses that can fairly be attributed to the taking.  *Emeryville Redevelopment v. Harcros Pigments, Inc.*, 101 Cal. App. 4th 1083 (2002).

145.   Plaintiffs have found it necessary to engage the services of private counsel to vindicate their rights under the law.  Plaintiffs are therefore entitled to an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5.

## VII.  PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court:

A.   Enter an order and judgment requiring the City and County Officials Defendants and Doe Defendants 1-100 to provide just compensation for the regulatory taking of Plaintiffs' and the Class's private property;

B.   Issue injunctive relief enjoining Defendants from taking Plaintiffs' and the Class's property in the future without providing just compensation;

First Amended Class Action Complaint

C.     Award to Plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' fees, experts' fees, costs, and expenses; and

D.     For such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all issues that are subject to adjudication by a trier of fact.

DATED:  April 7, 2021                     Respectfully submitted,

BOTTINI & BOTTINI, INC.
Francis A. Bottini, Jr. (SBN 175783)
Albert Y. Chang (SBN 296065)
Yury A. Kolesnikov (SBN 271173)
Anne Beste (SBN 326881)


_____ *s/ Francis A. Bottini, Jr.* _____
Francis A. Bottini, Jr.


7817 Ivanhoe Avenue, Suite 102
La Jolla, California 92037
Telephone:  (858) 914-2001
Facsimile:   (858) 914-2002
E-mail:   fbottini@bottinilaw.com
            achang@bottinilaw.com
            ykolesnikov@bottinilaw.com
            abeste@bottinilaw.com


*Attorneys for Plaintiffs*

FIRST AMENDED CLASS ACTION COMPLAINT

## TABLE OF CONTENTS OF EXHIBITS TO THE
## FIRST AMENDED COMPLAINT

| Exhibit Nos. | Exhibit Description | Page Nos. |
|---|---|---|
| Exhibit 1 | Executive Order N-33-20 issued by Governor Newsom on March 19, 2020 | 040 - 042 |
| Exhibit 2 | Regional Stay at Home Order issued by the State of California on December 3, 2020 | 043 - 047 |
| Exhibit 3 | Attorney General William Barr's Memorandum to U.S. Department of Justice United States Attorneys dated April 27, 2020 | 048 - 050 |
| Exhibit 4 | County of San Diego Closure Order dated March 13, 2020 | 051 - 064 |
| Exhibit 5 | County of San Diego Closure Order dated July 14, 2020 | 065 - 076 |
| Exhibit 6 | County of San Diego Closure Order dated December 4, 2020 | 077 - 086 |
| Exhibit 7 | Executive Order 2020-2 issued by the Mayor of San Diego on March 30, 2020 | 087 - 091 |

TABLE OF CONTENTS OF EXHIBITS                    21cv0098

# EXHIBIT 1

# EXHIBIT 1

Exhibit 1
040

### EXECUTIVE DEPARTMENT
### STATE OF CALIFORNIA

#### EXECUTIVE ORDER N-33-20

**WHEREAS** on March 4, 2020, I proclaimed a State of Emergency to exist in California as a result of the threat of COVID-19; and

**WHEREAS** in a short period of time, COVID-19 has rapidly spread throughout California, necessitating updated and more stringent guidance from federal, state, and local public health officials; and

**WHEREAS** for the preservation of public health and safety throughout the entire State of California, I find it necessary for all Californians to heed the State public health directives from the Department of Public Health.

**NOW, THEREFORE, I, GAVIN NEWSOM,** Governor of the State of California, in accordance with the authority vested in me by the State Constitution and statutes of the State of California, and in particular, Government Code sections 8567, 8627, and 8665 do hereby issue the following Order to become effective immediately:

#### IT IS HEREBY ORDERED THAT:

1) To preserve the public health and safety, and to ensure the healthcare delivery system is capable of serving all, and prioritizing those at the highest risk and vulnerability, all residents are directed to immediately heed the current State public health directives, which I ordered the Department of Public Health to develop for the current statewide status of COVID-19. Those directives are consistent with the March 19, 2020, Memorandum on Identification of Essential Critical Infrastructure Workers During COVID-19 Response, found at: https://covid19.ca.gov/. Those directives follow:

ORDER OF THE STATE PUBLIC HEALTH OFFICER
March 19, 2020

To protect public health, I as State Public Health Officer and Director of the California Department of Public Health order all individuals living in the State of California to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors, as outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19. In addition, and in consultation with the Director of the Governor's Office of Emergency Services, I may designate additional sectors as critical in order to protect the health and well-being of all Californians.

Pursuant to the authority under the Health and Safety Code 120125, 120140, 131080, 120130(c), 120135, 120145, 120175 and 120150, this order is to go into effect immediately and shall stay in effect until further notice.

The federal government has identified 16 critical infrastructure sectors whose assets, systems, and networks, whether physical or virtual, are considered so vital to the United States that their incapacitation or

Exhibit 1
041

destruction would have a debilitating effect on security, economic security, public health or safety, or any combination thereof. I order that Californians working in these 16 critical infrastructure sectors may continue their work because of the importance of these sectors to Californians' health and well-being.

This Order is being issued to protect the public health of Californians. The California Department of Public Health looks to establish consistency across the state in order to ensure that we mitigate the impact of COVID-19. Our goal is simple, we want to bend the curve, and disrupt the spread of the virus.

The supply chain must continue, and Californians must have access to such necessities as food, prescriptions, and health care. When people need to leave their homes or places of residence, whether to obtain or perform the functions above, or to otherwise facilitate authorized necessary activities, they should at all times practice social distancing.

2) The healthcare delivery system shall prioritize services to serving those who are the sickest and shall prioritize resources, including personal protective equipment, for the providers providing direct care to them.

3) The Office of Emergency Services is directed to take necessary steps to ensure compliance with this Order.

4) This Order shall be enforceable pursuant to California law, including, but not limited to, Government Code section 8665.

**IT IS FURTHER ORDERED** that as soon as hereafter possible, this Order be filed in the Office of the Secretary of State and that widespread publicity and notice be given of this Order.

This Order is not intended to, and does not, create any rights or benefits, substantive or procedural, enforceable at law or in equity, against the State of California, its agencies, departments, entities, officers, employees, or any other person.

**IN WITNESS WHEREOF** I have hereunto set my hand and caused the Great Seal of the State of California to be affixed this 19th day of March 2020.

_____

GAVIN NEWSOM
Governor of California

ATTEST:

_____

ALEX PADILLA
Secretary of State

**E**xhibit 1
042

# EXHIBIT 2

# EXHIBIT 2

Exhibit 2
043



State of California—Health and Human Services Agency

# California Department of Public Health



**SANDRA SHEWRY, MPH,MSW**
*Acting Director*
**ERICA S. PAN, MD,MPH**
*Acting State Health  Officer*

**GAVIN NEWSOM**
*Governor*

## Regional Stay At Home Order
## 12/03/2020

Upon assessment of the recent, unprecedented rise in the rate of increase in COVID-19 cases, hospitalizations, and test positivity rates across California, the California Department of Public Health (CDPH) is taking immediate actions to prevent the spread of the virus.

The State, like the nation, continues to record an unprecedented surge in the level of community spread of COVID-19. California implemented an accelerated application of the Blueprint Framework metrics on November 16 and a limited Stay at Home Order issued on November 19. However, in the interim, the number of new cases per day has increased by over 112%, (from 8,743 to 18,588) and the rate of rise of new cases per day continues to increase dramatically. The number of new hospital admissions has increased from 777 on November 15, to 1,651 on December 2, and because of the lag between case identification and hospitalizations, we can only expect these numbers to increase.

Current projections show that without additional intervention to slow the spread of COVID-19, the number of available adult Intensive Care Unit (ICU) beds in the State of California will be at capacity in mid-December.  This is a sign that the rate of rise in cases, if it continues, is at risk of overwhelming the ability of California hospitals to deliver healthcare to its residents suffering from COVID-19 and from other illnesses requiring hospital care. ICU beds are a critical resource for individuals who need the most advanced support and care and the ability to add additional ICU capacity is limited by the lack of available ICU nurses and physicians as a result of the nationwide surge in hospitalizations and ICU admissions.

Because the rate of increases in new cases continues to escalate and threatens to overwhelm the state's hospital system, further aggressive action is necessary to respond to the quickly evolving situation. While vaccines are promising future interventions, they are not available to address the immediate risks to healthcare delivery in the current surge. The immediate aggressive institution of additional non-pharmaceutical public health interventions is critical to avoid further overwhelming hospitals and to prevent the need to ration care.

Exhibit 2
044



**NOW, THEREFORE, I, as Acting State Public Health Officer of the State of California, order:**

1. CDPH will evaluate public health based on Regions, responsive to hospital capacity for persons resident in those Regions.

2. CDPH will evaluate the adult ICU bed capacity for each Region and identify on covid19.ca.gov any Regions for which that capacity is less than 15%. When that capacity is less than 15%, the following terms (the Terms of this Order) will apply.

   a. All gatherings with members of other households are prohibited in the Region except as expressly permitted herein.

   b. All individuals living in the Region shall stay home or at their place of residence except as necessary to conduct activities associated with the operation, maintenance, or usage of critical infrastructure,[1] as required by law, or as specifically permitted in this order.

   c. Worship and political expression are permitted outdoors, consistent with existing guidance for those activities.

   d. Critical infrastructure sectors may operate and must continue to modify operations pursuant to the applicable sector guidance.

   e. Guidance related to schools remain in effect and unchanged. Accordingly, when this Order takes effect in a Region, schools that have previously reopened for in-person instruction may remain open, and schools may continue to bring students back for in-person instruction under the Elementary School Waiver Process or Cohorting Guidance.

   f. In order to reduce congestion and the resulting increase in risk of transmission of COVID-19 in critical infrastructure retailers, all retailers may operate indoors at no more than 20% capacity and must follow the guidance for retailers. All access to retail must be strictly metered to ensure compliance with the limit on capacity. The sale of food, beverages, and alcohol for in-store consumption is prohibited.

   g. To promote and protect the physical and mental well-being of people in California, outdoor recreation facilities may continue to operate. Those facilities may not sell food or drink for on-site consumption. Overnight stays at

---

[1] See https://covid19.ca.gov/essential-workforce/ for full list of California's Critical Infrastructure workforce.

Exhibit 2
045

campgrounds are not permitted.

   h.  Nothing in this Order prevents any number of persons from the same household from leaving their residence, lodging, or temporary accommodation, as long as they do not engage in any interaction with (or otherwise gather with) any number of persons from any other household, except as specifically permitted herein.

   i.  Terms (a) and (b) of this section do not apply to persons experiencing homelessness.

3. Except as otherwise required by law, no hotel or lodging entity in California shall accept or honor out of state reservations for non-essential travel, unless the reservation is for at least the minimum time period required for quarantine and the persons identified in the reservation will quarantine in the hotel or lodging entity until after that time period has expired.

4. This order shall take effect on December 5, 2020 at 1259pm PST.

5. For Regions where the adult ICU bed capacity falls below 15% after the effective date of this order, the Terms of this Order shall take effect 24 hours after that assessment.

6. The Terms of this Order shall remain in place for at least three weeks from the date the order takes effect in a Region and shall continue until CDPH's four-week projections of the Region's total available adult ICU bed capacity is greater than or equal to 15%. Four-week adult ICU bed capacity projections will be made approximately twice a week, unless CDPH determines that public health conditions merit an alternate projection schedule.  If after three weeks from the effective date of the Terms of this Order in a Region, CDPH's four-week projections of the Region's total available adult ICU bed capacity is greater than or equal to 15%, the Terms of this Order shall no longer apply to the Region

7. After the termination of the Terms of this Order in a Region, each county within the Region will be assigned to a tier based on the Blueprint for a Safer Economy as set out in my August 28, 2020 Order, and the County is subject to the restrictions of the Blueprint appropriate to that tier.

8. I will continue to monitor the epidemiological data and will modify this Regional Stay-at-Home Order as required by the evolving public health conditions. If I determine that it is necessary to change the Terms of this Order, or otherwise modify the Regional Stay-at-Home Order, these modifications will be posted at covid19.ca.gov.

**Exhibit 2**
**046**

9. When operative in a Region, the Terms of this Order supersede any conflicting terms in other CDPH orders, directives, or guidance. Specifically, for those Regions with ICU bed capacity triggering this order, the Terms of this Order shall supersede the State's Blueprint for a Safer Economy and all guidance (other than guidance for critical infrastructure sectors) during the operative period. In all Regions that are not subject to the restrictions in this order, the Blueprint for a Safer Economy and all guidance shall remain in effect.

10. This order is issued pursuant to Health and Safety Code sections 120125, 120130(c), 120135, 120140, 120145, 120175,120195 and 131080; EO N-60-20, N-25-20, and other authority provided for under the Emergency Services Act; and other applicable law.


_____
Erica S. Pan, MD, MPH
Acting State Public Health Officer
California Department of Public Health

Exhibit 2
047

# EXHIBIT 3

# EXHIBIT 3

Exhibit 3
048



# Office of the Attorney General
## Washington, D. C. 20530

April 27, 2020

MEMORANDUM FOR THE ASSISTANT ATTORNEY GENERAL FOR CIVIL RIGHTS AND
ALL UNITED STATES ATTORNEYS

FROM:             THE ATTORNEY GENERAL

SUBJECT:          <u>Balancing Public Safety with the Preservation of Civil Rights</u>

    The current national crisis related to COVID-19 has required the imposition of extraordinary restrictions on all of our daily lives. Millions of Americans across the nation have been ordered to stay in their homes, leaving only for essential and necessary reasons, while countless businesses and other gathering places have been ordered to close their doors indefinitely. These kinds of restrictions have been necessary in order to stop the spread of a deadly disease— but there is no denying that they have imposed tremendous burdens on the daily lives of all Americans.

    In prior Memoranda, I directed our prosecutors to prioritize cases against those seeking to illicitly profit from the pandemic, either by hoarding scarce medical resources to sell them for extortionate prices, or by defrauding people who are already in dire circumstances due to the severe problems the pandemic has caused. We have pursued those efforts vigorously and will continue to do so. Now, I am directing each of our United States Attorneys to also be on the lookout for state and local directives that could be violating the constitutional rights and civil liberties of individual citizens.

    As the Department of Justice explained recently in guidance to states and localities taking steps to battle the pandemic, even in times of emergency, when reasonable and temporary restrictions are placed on rights, the First Amendment and federal statutory law prohibit discrimination against religious institutions and religious believers. The legal restrictions on state and local authority are not limited to discrimination against religious institutions and religious believers. For example, the Constitution also forbids, in certain circumstances, discrimination against disfavored speech and undue interference with the national economy. If a state or local ordinance crosses the line from an appropriate exercise of authority to stop the spread of COVID-19 into an overbearing infringement of constitutional and statutory protections, the Department of Justice may have an obligation to address that overreach in federal court.

    I am therefore directing the Assistant Attorney General for Civil Rights, Eric Dreiband, and Matthew Schneider, the U.S. Attorney for the Eastern District of Michigan, to oversee and coordinate our efforts to monitor state and local policies and, if necessary, take action to correct them. They should work not only with all Department of Justice offices and other federal agencies, but with state and local officials as well.

Exhibit 3
049

Memorandum from the Attorney General                                              Page 2
Subject: Balancing Public Safety with the Preservation of Civil Rights

     Many policies that would be unthinkable in regular times have become commonplace in recent weeks, and we do not want to unduly interfere with the important efforts of state and local officials to protect the public.  But the Constitution is not suspended in times of crisis.  We must therefore be vigilant to ensure its protections are preserved, at the same time that the public is protected.

     I thank you for your attention to this important initiative and for your service to our country.

Exhibit 3
050

# EXHIBIT 4

# EXHIBIT 4

Exhibit 4
051

SUPERSEDED



# County of San Diego

**NICK MACCHIONE, FACHE**
AGENCY DIRECTOR

**HEALTH AND HUMAN SERVICES AGENCY**
PUBLIC HEALTH SERVICES
3851 ROSECRANS STREET, MAIL STOP P-578
SAN DIEGO, CA 92110-3134
(619) 531-5800 • FAX (619) 542-4186

**WILMA J. WOOTEN, M.D.**
PUBLIC HEALTH OFFICER

## ORDER OF THE HEALTH OFFICER

Pursuant to California Health and Safety Code sections 101040, 120175, and 120175.5 (b) the Health Officer of the County of San Diego (Health Officer) **ORDERS AS FOLLOWS**:

1. Effective 12:00 a.m. on Friday, March 13, 2020, and continuing until 11:59 p.m. on March 31, 2020, the following will be in effect for San Diego County (county):

   **All public or private "large gatherings," as defined in section 11 below, are prohibited.**

2. Effective 12:00 a.m. on Friday, March 13, 2020, and continuing until 11:59 p.m. on March 31, 2020, the following will be in effect for the county:

   **"Non-essential personnel," as defined in section 11 below, are prohibited from entry into any hospital or long term care facility serving seniors. All essential personnel who show any potential signs or symptoms of COVID-19 shall be strictly prohibited from entry to hospitals or long term care facilities.**

3. This Order is issued as a result of the World Health Organization's declaration of a worldwide pandemic of COVID-19 disease, also known as "novel coronavirus," which has infected at least 120,000 individuals worldwide in 115 countries and is implicated in over 4,000 worldwide deaths.

4. This Order is issued based on the increasing transmission of COVID-19 in California and the significant risk of widespread introduction and transmission of COVID-19 into the county.

5. This Order is issued based on scientific evidence regarding the most effective approaches to slow the transmission of communicable diseases generally and COVID-19 specifically, as well as best practices as currently known and available to protect vulnerable members of the public from avoidable risk of serious illness or death resulting from exposure to COVID-19. The age, condition, and health of a significant portion of the population of the county places it at risk for serious health complications, including death, from COVID-19. Although most individuals who contract COVID-19 do not become seriously ill, persons with mild symptoms and asymptomatic persons with COVID-19 may place other

Exhibit 4
052

SUPERSEDED

vulnerable members of the public—such as older adults, and those with underlying health conditions—at significant risk.

6. This Order will reduce the likelihood that many individuals will be exposed to COVID-19 at a single event, and will thereby slow the spread of COVID-19 in the county. By reducing the spread of COVID-19, this Order will help preserve critical and limited healthcare capacity in the county.

7. This Order is issued in accordance with, and incorporates by reference: 1) the Declaration of Local Health Emergency issued by the Health Officer on February 14, 2020; 2) the Proclamation of Local Emergency issued by the County Director of Emergency Services on February 14, 2020; 3) the action of the County Board of Supervisors to ratify and continue both the local health emergency and local emergency on February 19, 2020; 4) the Proclamation of a State of Emergency issued by Governor of the State of California on March 4, 2020: 5) Executive Order N-25-20 issued by the Governor of the State of California on March 12, 2020 which orders that "All residents are to heed any orders and guidance of state and local health officials, including but not limited to the imposition of social distancing measures, to control COVID-19; and 6) Proclamation 9984 regarding COVID-19 issued by the President of the United States on March 11, 2020.

8. This Order is issued to prevent circumstances often present in large gatherings that may exacerbate the spread of COVID-19, such as: 1) the increased likelihood that large gatherings will attract people from a broad geographic area; 2) the prolonged time period in which large numbers of people are in close proximity; 3) the difficulty in tracing exposure when large numbers of people attend a single event; and 4) the inability to ensure that attendees follow adequate hygienic practices.

9. This Order comes after the release of substantial guidance from the Health Officer, the California Department of Public Health, the Centers for Disease Control and Prevention (CDC), and other public health officials throughout the United States and around the world. On March 11, 2020, the California Department of Public Health recommended the cancellation or postponement of large gatherings of 250 people or more.

10. This Order comes after the CDC issued: "Interim Additional Guidance for Infection Prevention and Control for Patients with Suspected or Confirmed COVID-19 in Nursing Homes."

11. For the purposes of this Order:
    a. "Gathering" is any event or convening that brings together people in a single room or single space at the same time, such as an auditorium, stadium, arena, theater, large conference room, meeting hall, cafeteria, or any other indoor or outdoor space.
    b. "Large gathering" is a gathering with 250 or more people.
    c. "Long term care facility" is a facility serving adults that require assistance with activities of daily living and that is licensed by the California Department of Community Care and Licensing.

Exhibit 4
053

SUPERSEDED

    d. "Non-essential personnel" are employees, contractors, or members of the public who do not perform treatment, maintenance, support, or administrative tasks deemed essential to the healthcare mission of the long term care facility or hospital. Non-essential personnel does not include first responders, nor State, federal, or local officials, investigators, or medical personnel carrying out lawful duties.

    e. This Order does <u>not</u> prohibit:

        i. Normal operations at airports, shopping malls, or other spaces where 250 or more persons may be in transit. It also does not include typical office environments, retail stores, or grocery stores where large numbers of people are present but are able to practice social distancing of six (6) feet from one another.

        ii. Gatherings of people in multiple, separate enclosed spaces in a single building such as a multiplex movie theater or school, so long as 250 or more people are not present in any single confined space at the same time.

        iii. Any gatherings of 250 or more people where all persons have the ability to keep a social distance of six (6) feet from one another.

        iv. Emergency shelters, homeless shelters, or other similar essential gatherings that are for the protection of public health and safety and where appropriate precautions are taken that follow federal, State, and local public health guidance regarding COVID-19.

        v. Entry of visitors at long term care facilities on a case by case basis, and upon the approval of the facility's director, or designee, for extraordinary circumstances such as to allow family and friends to visit a resident in an end of life situation, and where appropriate precautions by the facility that follow federal, State, and local public health guidance regarding COVID-19 are followed.

        vi. Entry of visitors, such as close family members at a hospital, and under the direction of the hospital administrator, or designee, so long as the hospital follows federal, State, and local guidance regarding COVID-19.

    f. Gatherings of less than 250 people are strongly encouraged to keep a social distance of six (6) feet from one another in conformance with California Department of Public Health guidelines.

12. Schools, colleges, and care facilities serving seniors and children are strongly encouraged to follow the guidance issued by the California Department of Public Health, as may amended, and available at:
<https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/Guidance.aspx>.

13. Pursuant to Health and Safety Code section 120175.5 (b) all governmental entities in the county shall take necessary measures within the governmental entity's control to ensure compliance with this Order and to disseminate this Order to venues or locations within the entity's jurisdiction where a large gathering may occur.

14. Violation of this Order is subject to fine, imprisonment, or both. (California Health and Safety Code section 120295.)

Exhibit 4
054

SUPERSEDED

15. To the extent necessary, this Order may be enforced by the Sheriff or chiefs of police pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029.

**IS SO ORDERED:**

Date: March 12, 2020

Wilma J. Wooten, M.D., M.P.H.
Public Health Officer
County of San Diego

Pursuant to Government Code section 8634, and San Diego County Code Section 31.103, this Order shall be promulgated as a regulation for the protection of life and property.

Date:  March 12, 2020

Helen Robbins-Meyer
Chief Administrative Officer
Director of Emergency Services
County of San Diego

Exhibit 4
055

SUPERSEDED



# County of San Diego

**NICK MACCHIONE, FACHE**
AGENCY DIRECTOR

**HEALTH AND HUMAN SERVICES AGENCY**
PUBLIC HEALTH SERVICES
3851 ROSECRANS STREET, MAIL STOP P-578
SAN DIEGO, CA 92110-3134
(619) 531-5800 • FAX (619) 542-4186

**WILMA J. WOOTEN, M.D.**
PUBLIC HEALTH OFFICER

## *AMENDED*
## ORDER OF THE HEALTH OFFICER
## AND EMERGENCY REGULATIONS

Pursuant to California Health and Safety Code sections 101040, 120175, and 120175.5 (b) the Health Officer of the County of San Diego (Health Officer) amends the Health Officer Order dated March 12, 2020 as of 12:00 a.m. on Tuesday March 17, 2020. The Health Officer **ORDERS AS FOLLOWS**:

Effective 12:00 a.m. on Tuesday, March 17, 2020, and continuing until 11:59 p.m. on March 31, 2020, the following will be in effect for San Diego County (county):

1. All public or private "gatherings," as defined in section 20 below, are prohibited. All non-essential gatherings of any size are strongly discouraged.

2. All bars, adult entertainment establishments, and other business establishments that serve alcohol and do not serve food, shall close.

3. All restaurants and other business establishments that serve food shall close all on-site dining. All food served shall be by delivery, or through pick-up or drive thru. Social distancing shall be required for persons picking up food on site.

4. All businesses shall enact social distancing, increased sanitation standards, and shall make every effort to use telecommuting for its workforce. All businesses shall suspend any policy or procedure requiring doctor verification for sick or other leave approval.

5. All public or private schools, colleges, and universities shall not hold classes or other school activities where students gather on the school campus. Parents of school-aged minor children shall take steps to ensure said children are not participating in activities prohibited by the Order and that social distancing requirements are practiced.

6. A strong recommendation is made that all persons who are 65 years old or older, have a chronic underlying condition, or have a compromised immune system self-quarantine themselves at home.

Exhibit 4
056

SUPERSEDED

7. "Non-essential personnel," as defined in section 20 below, are prohibited from entry into any hospital or long-term care facility. All essential personnel who show any potential signs or symptoms of COVID-19 shall be strictly prohibited from entry into hospitals or long-term care facilities.

8. Hospitals and healthcare providers shall take measures to preserve resources including delaying non-emergent or elective surgeries or procedures where feasible.

9. Hospitals, healthcare providers, and commercial testing laboratories shall report all COVID-19 test results to the Public Health Officer immediately after such results are received.

10. All persons arriving in the county, from locations as found on the Centers for Disease Control and Prevention (CDC) Warning Level 3 Travel Advisory shall be subject to 14-day home quarantine, self-monitoring. This includes originating or connecting flights through these countries and includes South Korea, Japan, Italy, China and Iran, and any other country that is subsequently added to that list, which is available at: (https://wwwnc.cdc.gov/travel/notices).

11. A strong recommendation is made for persons exhibiting mild to moderate symptoms of COVID-19 to self-isolate themselves in their place of residence unless seeking medical treatment.

12. This Order is issued as a result of the World Health Organization's declaration of a worldwide pandemic of COVID-19 disease, also known as "novel coronavirus," which has infected at least 179,165 individuals worldwide in 155 countries and is implicated in over 7,000 worldwide deaths.

13. This Order is issued based on the increasing transmission of COVID-19 in California and the significant risk of widespread introduction and transmission of COVID-19 into the county.

14. This Order is issued based on scientific evidence regarding the most effective approaches to slow the transmission of communicable diseases generally and COVID-19 specifically, as well as best practices as currently known and available to protect vulnerable members of the public from avoidable risk of serious illness or death resulting from exposure to COVID-19. The age, condition, and health of a significant portion of the population of the county places it at risk for serious health complications, including death, from COVID-19. Although most individuals who contract COVID-19 do not become seriously ill, persons with mild symptoms and asymptomatic persons with COVID-19 may place other vulnerable members of the public—such as older adults, and those with underlying health conditions—at significant risk.

15. This Order will reduce the likelihood that many individuals will be exposed to COVID-19, and will thereby slow the spread of COVID-19 in the county. By reducing the spread of

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS   **Exhibit 4**
057

SUPERSEDED

COVID-19, this Order will help preserve critical and limited healthcare capacity in the county.

16. This Order is issued in accordance with, and incorporates by reference: 1) the Declaration of Local Health Emergency issued by the Health Officer on February 14, 2020; 2) the Proclamation of Local Emergency issued by the County Director of Emergency Services on February 14, 2020; 3) the action of the County Board of Supervisors to ratify and continue both the local health emergency and local emergency on February 19, 2020; 4) the Proclamation of a State of Emergency issued by Governor of the State of California on March 4, 2020: 5) Executive Order N-25-20 issued by the Governor of the State of California on March 12, 2020 which orders that "All residents are to heed any orders and guidance of state and local health officials, including but not limited to the imposition of social distancing measures, to control COVID-19; and 6) Proclamation 9984 regarding COVID-19 issued by the President of the United States on March 11, 2020; and the Health Officer Order dated on March 12, 2020.

17. This Order is issued to prevent circumstances often present in gatherings that may exacerbate the spread of COVID-19, such as: 1) the increased likelihood that gatherings will attract people from a broad geographic area; 2) the prolonged time period in which large numbers of people are in close proximity; 3) the difficulty in tracing exposure when large numbers of people attend a single event; and 4) the inability to ensure that attendees follow adequate hygienic practices.

18. This Order comes after the release of substantial guidance from the Health Officer, the California Department of Public Health, the CDC, and other public health officials throughout the United States and around the world. On March 11, 2020, the California Department of Public Health recommended the cancellation or postponement of large gatherings.

19. This Order comes after the CDC issued: "Interim Additional Guidance for Infection Prevention and Control for Patients with Suspected or Confirmed COVID-19 in Nursing Homes."

20. For the purposes of this Order:
    a. "Gathering" is any event or convening that brings together 50 or more people in a single room or single space at the same time, such as an auditorium, stadium, arena, theater, church, casino, large conference room, meeting hall, cafeteria, or any other indoor or outdoor space.
    b. "Long term care facility" is a facility serving adults that require assistance with activities of daily living, including a skilled nursing facility, and that is licensed by the California Department of Community Care and Licensing, or the California Department of Public Health.
    c. "Non-essential personnel" for purposes of section 7 above are employees, contractors, or members of the public who do not perform treatment, maintenance, support, or administrative tasks deemed essential to the healthcare mission of the

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS   **Exhibit 4**
**058**

SUPERSEDED

long-term care facility or hospital.  Non-essential personnel do not include first responders, nor State, federal, or local officials, investigators, or medical personnel carrying out lawful duties.  Entry of visitors at hospitals and long-term care facilities are allowed upon the approval of the facility's director, or designee, for the purpose of allowing family and friends to visit a resident in an end of life situation, or to allow parents or guardians to visit a child who is a patient, and where appropriate precautions by the facility that follow federal, State, and local public health guidance regarding COVID-19 are followed.

d. "Social Distancing" is maintaining a six-foot separation from all persons except for family members.

e. This Order does not prohibit:

    i. Operations at airports, public transportation or other spaces where 50 or more persons may be in transit but able to practice social distancing. It also does not include essential businesses where many people are present but are able to practice social distancing.

    ii. Emergency shelters, homeless shelters, or other similar essential gatherings that are for the protection of public health and safety and where appropriate precautions are taken that follow federal, State, and local public health guidance regarding COVID-19.

21. Gatherings of less than 50 people are strongly encouraged to maintain social distancing pursuant to Department of Public Health guidelines.

22. Pursuant to Health and Safety Code section 120175.5 (b) all governmental entities in the county shall take necessary measures within the governmental entity's control to ensure compliance with this Order and to disseminate this Order to venues or locations within the entity's jurisdiction where a large gathering may occur.

23. Violation of this Order is subject to fine, imprisonment, or both. (California Health and Safety Code section 120295.)

24. To the extent necessary, this Order may be enforced by the Sheriff or chiefs of police pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029.

25. This Order shall be reevaluated and extended if appropriate on or before March 31, 2020.

**IS SO ORDERED:**

Date: March 16, 2020

Wilma J. Wooten, M.D., M.P.H.
Public Health Officer
County of San Diego

Page 4 of 5
ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

**Exhibit 4**
**059**

SUPERSEDED

---

## EMERGENCY REGULATIONS

As Director of Emergency Services for the County of San Diego, I am authorized to promulgate regulations for the protection of life and property pursuant to Government Code Section 8634 and San Diego County Code section 31.103. The following shall be in effect for the duration of the Amended Health Officer Order issued above which is incorporated in its entirety by reference:

> The Amended Health Officer Order shall be promulgated as a regulation for the protection of life and property.

Any person who violates or who refuses or willfully neglects to obey this regulation is subject to fine, imprisonment, or both. (Government Code section 8665.)

Date: March 16, 2020

Helen Robbins-Meyer
Chief Administrative Officer
Director of Emergency Services
County of San Diego

Exhibit 4
060

SUPERSEDED



# County of San Diego

**NICK MACCHIONE, FACHE**
AGENCY DIRECTOR

**HEALTH AND HUMAN SERVICES AGENCY**
PUBLIC HEALTH SERVICES
3851 ROSECRANS STREET, MAIL STOP P-578
SAN DIEGO, CA 92110-3134
(619) 531-5800 • FAX (619) 542-4186

**WILMA J. WOOTEN, M.D.**
PUBLIC HEALTH OFFICER

## ADDENDUM TO AMENDED ORDER OF THE HEALTH OFFICER
## AND EMERGENCY REGULATIONS

The Health Officer Order dated March 16, 2020, and effective as of 12:00 a.m. on Tuesday, March 17, 2020, is modified nunc pro tunc through this Addendum to clarify the conditions of hospital and long-term care facility visitor admissions.

Section 20 (c) of the Amended Health Officer Order shall read:

> "Non-essential personnel" for purposes of section 7 above are employees, contractors, or members of the public who do not perform treatment, maintenance, support, or administrative tasks deemed essential to the healthcare mission of the long-term care facility or hospital. Non-essential personnel do not include first responders, nor State, federal, or local officials, investigators, or medical personnel carrying out lawful duties. Entry of visitors to hospitals and long-term care facilities are allowed upon the approval of the facility's director, or designee, for the purpose of allowing family and friends to visit a resident such as in an end of life situation, to allow parents or guardians to visit a child who is a patient, or any other circumstances deemed appropriate by the facility director, or designee, and where appropriate precautions by the facility that follow federal, State, and local public health guidance regarding COVID-19 are followed.

This shall be effective as of the date and time stated in the Amended Health Officer Order.

**IS SO ORDERED:**

Date: March 17, 2020

Wilma J. Wooten, M.D., M.P.H.
Public Health Officer
County of San Diego

This Addendum shall be promulgated as a regulation for the protection of life and property.

Date:  March 17, 2020

Helen Robbins-Meyer
Chief Administrative Officer
Director of Emergency Services
County of San Diego

Exhibit 4
061



# County of San Diego

**NICK MACCHIONE, FACHE**
AGENCY DIRECTOR

**HEALTH AND HUMAN SERVICES AGENCY**
PUBLIC HEALTH SERVICES
3851 ROSECRANS STREET, MAIL STOP P-578
SAN DIEGO, CA 92110-3134
(619) 531-5800 • FAX (619) 542-4186

**WILMA J. WOOTEN, M.D.**
PUBLIC HEALTH OFFICER

## ADDENDUM 2
## TO AMENDED ORDER OF THE HEALTH OFFICER
## AND EMERGENCY REGULATIONS

The Health Officer Order dated March 16, 2020, and effective as of 12:00 a.m. on Tuesday, March 17, 2020, is amended through this Addendum 2 effective as of 12:00 a.m. on Thursday, March 18, 2020.

Section 2 of the Amended Health Officer Order shall be amended as follows:

"All bars, adult entertainment establishments, and other business establishments that serve alcohol and do not serve food, shall close. All gyms and fitness centers shall close."

Section 5 of the Amended Health Officer Order shall be amended as follows:

"All public or private schools, colleges, and universities shall not hold classes or other school activities where students gather on the school campus. Parents of school-aged minor children shall take steps to ensure said children are not participating in activities prohibited by the Order and that social distancing requirements are practiced.

To the extent possible, daycare and childcare facilities shall operate under the following conditions: a) childcare must be carried out in stable groups of 10 or fewer ("stable means that the same 10 or fewer children are in the same group each day); b) children shall not change from one group to another; c) if more than one group of children is cared for at one facility, each group shall be in a separate room; d) groups shall not mix with each other. Childcare providers shall remain solely with one group of children."

For the purpose of prohibiting all public "gatherings," Section 20 (a) of the Amended Health Officer Order shall read:

"Gathering" is any event or convening that brings together 10 or more people in a single room or single space at the same time, such as an auditorium, stadium, arena, theater, church, casino, conference room, meeting hall, cafeteria, or any other indoor or outdoor space.

Exhibit 4
062

SUPERSEDED

For the purpose of stating exemptions, section 20(e)(i) of the Amended Health Officer Order is amended to read that the Order does not prohibit:

> "Operations at airports, public transportation or other spaces where 10 or more persons may be in transit but able to practice social distancing. It also does not include essential businesses where many people are present but are able to practice social distancing. Nor does it include businesses where 10 or more employees are working in the same room and practicing social distancing."

Section 21 of the Amended Health Officer Order is amended as follows:

> "Gatherings of less than 10 people are strongly encouraged to maintain social distancing pursuant to Department of Public Health guidelines."

**IT IS SO ORDERED:**

Date: March 18, 2020

Wilma J. Wooten, M.D., M.P.H.
Public Health Officer
County of San Diego

This Addendum shall be promulgated as a regulation for the protection of life and property.

Date:  March 18, 2020

Helen Robbins-Meyer
Chief Administrative Officer
Director of Emergency Services
County of San Diego

ADDENDUM 2 TO ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

Exhibit 4
063

SUPERSEDED



# County of San Diego

**NICK MACCHIONE, FACHE**
AGENCY DIRECTOR

**HEALTH AND HUMAN SERVICES AGENCY**
PUBLIC HEALTH SERVICES
3851 ROSECRANS STREET, MAIL STOP P-578
SAN DIEGO, CA 92110-3134
(619) 531-5800 • FAX (619) 542-4186

**WILMA J. WOOTEN, M.D.**
PUBLIC HEALTH OFFICER

## ADDENDUM 3
## TO AMENDED ORDER OF THE HEALTH OFFICER
## AND EMERGENCY REGULATIONS

The Amended Health Officer Order dated March 16, 2020, and effective as of 12:00 a.m. on Tuesday, March 17, 2020, is amended through this Addendum 3 effective as of 12:00 a.m. on Tuesday, March 24, 2020.

Section 2 of the Amended Health Officer Order shall be amended as follows:

> "All bars, adult entertainment establishments, and other business establishments that serve alcohol and do not serve food, shall close.  All gyms and fitness centers shall close. Government entities shall enforce social distancing requirements at all beaches and parks; if a government entity is unable to enforce social distancing at a beach or park, it shall be closed to the public."

**IT IS SO ORDERED:**

Date: March 23, 2020

Wilma J. Wooten, M.D., M.P.H.
Public Health Officer
County of San Diego

This Addendum shall be promulgated as a regulation for the protection of life and property.

Date: March 23, 2020

Helen Robbins-Meyer
Chief Administrative Officer
Director of Emergency Services
County of San Diego

Exhibit 4
064

# EXHIBIT 5

# EXHIBIT 5

Exhibit 5
065



# County of San Diego

**HEALTH AND HUMAN SERVICES AGENCY**
PUBLIC HEALTH SERVICES

## ORDER OF THE HEALTH OFFICER
## AND EMERGENCY REGULATIONS
(Effective July 15, 2020)

Pursuant to California Health and Safety Code sections 101040, 120175, and 120175.5 (b) the Health Officer of the County of San Diego (Health Officer) **ORDERS AS FOLLOWS**:

Effective 12:00 a.m. on Tuesday, July 15, 2020 and continuing until further notice, the following will be in effect for San Diego County (county):

1. All persons are to remain in their homes or at their place of residence, except for employees or customers traveling to and from essential businesses, reopened businesses, or essential activities as defined in section 22, below, or to participate in individual or family outdoor activity as allowed by this Order.

2. All public or private "gatherings," as defined in section 22 below, are prohibited.

3. All businesses not meeting the definition of essential business or reopened business in section 22 below are referred to in this Order as "non-essential businesses" and shall be and remain closed for the duration of this Order. All essential businesses and reopened businesses must comply with the requirements of this Order. Notwithstanding the foregoing, any business may remain open if its employees and owners can provide its services from home, including by telecommuting, without direct contact with the public.

4. All public, charter and private schools may hold classes or school business operations on the school campus, provided the school complies with the measures contained in the State COVID-19 Industry Guidance: Schools and School-Based Programs issued by the CDPH (including the face covering requirements contained therein), also incorporating where feasible the guidelines provided in Stronger Together: A Guidebook for the Safe Reopening

Exhibit 5
066

**SUPERSEDED**

of California's Public Schools issued by the California Department of Education. Each school shall complete and post a document detailing the actions the school is taking to comply with the CDPH Industry Guidance measures after considering the CDE Guidelines noted above. Colleges and Universities shall not hold classes or other school activities where students gather on the school campus, except for research-related activities in colleges and universities and where necessary to train students who will serve as essential workers.

5. Child daycare and child care providers shall operate in compliance with the measures set forth in State COVID-19 Updated Guidance: Child Care Programs and Providers and shall prepare and post a Safe Reopening Plan pursuant to section 11, below.

6. "Non-essential personnel," as defined in section 22 below, are prohibited from entry into any hospital or long-term care facility. All essential personnel who are COVID-19 positive or show any potential signs or symptoms of COVID-19 are strictly prohibited from entry into hospitals or long-term care facilities. Notwithstanding the foregoing, individuals requiring medical care for COVID-19 or related conditions may be admitted to hospitals or other medical facilities if the hospital or medical facility is appropriate for treating COVID-19 and has adequate precautions in place to protect its patients, medical personnel and staff.

7. Hospitals and healthcare providers, including dentists shall:
   a. Take measures to preserve and prioritize resources; and,
   b. May authorize and perform non-emergent or elective surgeries or procedures based on their determination of clinical need and supply capacity, and where consistent with State guidance.
   c. Nothing in this Order shall prevent physicians and other healthcare providers from conducting routine preventive care provided it conforms to any applicable State guidance.
   d. Nothing in this Order shall prevent dentists or dental hygienists from conducting routine preventive care provided it conforms to any applicable State guidance.

8. Hospitals, healthcare providers, and commercial testing laboratories shall report all COVID-19 test results to the Public Health Officer immediately after such results are received.

9. All persons two years of age or older who are present in the county shall have possession of a face covering when they leave their home or place of residence and shall wear the face covering as described and required in California Department of Public Health Face Covering

Page 2 of 11
ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

Exhibit 5
067

**SUPERSEDED**

Guidance      issued      on      June      18,      2020,      (available      at: https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/Guidance-for-Face-Coverings_06-18-2020.pdf).

10. All essential businesses that allow members of the public to enter a facility must prepare and post a "Social Distancing and Sanitation Protocol" on the form available at: https://www.sandiegocounty .gov/content/dam/sdc/hhsa/programs/phs/Epidemiology/covid19/SOCIAL_DISTANCING_AND_SANITATION_PROTOCOL_04022020_V1.pdf ), or on a form required by another governmental entity requiring substantially similar information, for each of their facilities open to the public in the county. The Social Distancing and Sanitation Protocol must be posted at or near the entrance of the relevant facility, and shall be easily viewable by the public and employees. A copy of the Social Distancing and Sanitation Protocol must also be provided to each employee performing work at the facility. All essential businesses shall implement the Social Distancing and Sanitation Protocol and provide evidence of its implementation to any authority enforcing this Order upon demand. The Social Distancing and Sanitation Protocol must ensure all required measures are implemented and must identify and require measures necessary to implement social distancing are implemented at each facility that will ensure social distancing and sanitation at that particular facility. If the measures identified and implemented are not effective in maintaining proper social distancing and sanitation, the business shall promptly modify its Social Distancing and Sanitation Protocols to ensure proper social distancing and sanitation. Any business that fails to successfully implement social distancing and sanitation may be required to close.

11. All reopened businesses, with the exception of restaurants, bars, wineries, distilleries and breweries   which do not limit services to take-out or delivery, must prepare and post a "Safe Reopening      Plan"      on      the      form      available at:https://www.sandiegocounty.gov/content/dam/sdc/hhsa/programs/phs/Epidemiology/covid19/Community_Sector_Support/BusinessesandEmployers/SafeReopeningPlanTemplate.pdf for each of their facilities in the county. Restaurants bars, wineries, distilleries and breweries which do not limit services to take-out or delivery, must prepare and post a "COVID-19 Restaurant Operating Protocol" on the form available at https://www.sandiegocounty.gov/content/dam/sdc/deh/fhd/food/pdf/covid19sdrestaurantoperatingprotocol_en.pdf for each restaurant in the county. The Safe Reopening Plan or COVID-19 Restaurant Operating Protocol must be posted at or near the entrance of the relevant facility, and shall be easily viewable by the public and employees. A copy of the Safe Reopening Plan or COVID-19 Restaurant Operating Protocol must also be provided to each employee

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

Exhibit 5
068

SUPERSEDED

performing work at the facility. All reopened businesses shall implement the Safe Reopening Plan or COVID-19 Restaurant Operating Protocol and provide evidence of its implementation to any authority enforcing this Order upon demand. The Safe Reopening Plan or COVID-19 Restaurant Operating Protocol must ensure all required measures are implemented. If the measures identified and implemented are not effective in maintaining proper social distancing and sanitation, the business shall promptly modify its Safe Reopening Plan or COVID-19 Restaurant Operating Protocol to ensure proper social distancing and sanitation. Any business that fails to comply with its Safe Reopening Plan or COVID-19 Restaurant Operating Protocol shall immediately close.

12. When the State of California has issued an industry guidance, or any subsequent amendments thereto, with mandatory and/or suggested measures to be implemented by a particular type of business or industry, a reopened business must include in its Safe Reopening Plan all of the industry guidance mandatory measures, including, but not limited to, all of the requirements and guidance set forth in the Statewide Public Health Officer Order, issued by the California Department of Health Services on July13, 2020, all portions of which are operative in San Diego County effective immediately, and available at {https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/SHO%20Order%20Dimming%20Entire%20State%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.pdf}. The reopened business shall include all suggested measures necessary to maintain proper sanitation, employee screening, social distancing and facial coverings. Any mandatory measures required by this Order must also be included in the Safe Reopening Plan.

13. All brewpubs, breweries, bars and pubs shall close unless they comply with section 14c, below, in which case they shall comply with all other requirements in this section and section 14 below. All other restaurants, bars, wineries, distilleries and breweries shall close indoor service in conformance with the requirements set forth in the Statewide Public Health Officer Order, issued by the California Department of Health Services on July13, 2020, all portions of which are operative in San Diego County effective immediately, and available at {https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/SHO%20Order%20Dimming%20Entire%20State%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.pdf}, and shall be closed from 10:00 p.m. until 5:00 a.m. every day. Guests already in the facility at 10:00 p.m. may remain in the facility until 11:00 p.m. Only staff needed to close, open or clean shall be in the facility between the hours of 11:00 p.m. and 5:00 a.m.

14. All restaurants, bars, wineries and breweries shall also be required to ensure their customers

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

Exhibit 5
069

SUPERSEDED

comply with all of the following measures and shall immediately close if they are not able to do so:

    a. No food or beverages shall be served to or consumed by a customer who is not seated at a table designated by the restaurant for dining.

    b. The bar area of a restaurant may be used only for table service of meals.

    c. Alcoholic drinks shall only be served as part of a meal and must be sold and served in the same transaction as the meal. All meals shall be served by a food operator permitted by the San Diego County Department of Environmental Health. This restriction shall not be applicable to outdoor service of wine at a winery or spirits at a distillery.

    d. Customers shall not stand in the restaurant, bar, winery, distillery or brewery except in the reception area while waiting for a table or to pick up take-out food. If customers cannot be socially distanced in the reception area they shall wait in their cars or outside of the restaurant in a line with six feet between each customer.

    e. Discontinue open seating. All members of the party must be present before seating and the host must bring the entire party to the table at one time. The customers allowed at a table are limited to members of a single household or customers who have asked to be seated together at the time a table is requested.

    f. Discontinue seating customers and/or groups at bar counters, sushi preparation bars, etc. where they cannot maintain at least six feet of distance from employee work areas/stations. Install physical barriers or partitions in areas where maintaining a physical distance of six feet is difficult.

    g. Customers are not required to wear face coverings while at a table with members of the same household. Customers at a table with non-household members are not required to wear face coverings when eating and drinking. Customers are required to wear face coverings at all other times in conformance with paragraph 9, above.

    h. Tables designated for dining shall be six feet apart, or separated by barriers or partitions that extend above the heads of customers while seated. Customer shall not be allowed to bring additional chairs to the table that interfere with the six foot separation.

    i. Self-serve food or drink options, such as buffets, salad bars, and drink stations are not allowed.

    j. Shared entertainment items such as board games, arcade games and vending machines are prohibited and customers shall not have access to game and entertainment areas such as pool tables or darts.

    k. Dance floors shall be closed and live performances such as musical or dance acts shall be discontinued.

    l. Any customer that refuses to comply with this section shall be subject to enforcement per Health and Safety Code section 120295.

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

Exhibit 5
070

**SUPERSEDED**

15. Places of Worship – Religious services and cultural ceremonial activities (including wedding ceremonies but not receptions) may be conducted in conformance with the State Guidance pursuant to sections 11 and 12, above. Given the high risk of this activity, vulnerable members of the population (over 65 years old, compromised immune system or underlying condition) are strongly encouraged to participate through streaming or some other form of remote technology. Outdoor services and cultural ceremonial activities may be conducted provided all persons practice social distancing as defined in section 22c, below.

16. Each essential business and reopened business shall:

   a. Require all employees/on-site contractors (hereinafter referred to as employees) to have possession of face coverings and wear them as described in section 9 above when in the business facility; and,

   b. Shall conduct temperature screening of all employees and prohibit entry to the workplace of employees with a temperature of 100 degrees or more, employees exhibiting COVID-19 symptoms as described by the Centers for Disease Control and Prevention, or employees who have recently been exposed to a person who has tested positive for COVID-19 (either directly or through a breach of Personal Protective Equipment in the case of healthcare workers/first responders).

17. Outdoor Recreation

   a. Each public park and recreation area or facility, shall operate in compliance with the measures set forth in the State COVID-19 Industry Guidance: Campgrounds, RV Parks and Outdoor Recreation. The operator of the park shall prepare a Safe Reopening Plan pursuant to section 11, above, indicating how the park or recreation facility will implement the required measures. Any park or recreation area/facility at which the Protocol requirements cannot be effectively implemented may be required to close.

   b. Outdoor recreation instruction and day camps that comply with the State COVID-19 Industry Guidance: Day Camps, may be conducted in park and recreation areas/facilities.

   c. Swimming pools owned or operated by a Homeowners' Association, Condominium or Apartment complex may be open provided the owner or operator completes and posts a Safe Reopening Plan that shows conformance with the requirements of this Order and with the swimming pool/aquatic venues requirements of the State COVID-19 Industry Guidance on Fitness Facilities.

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

Exhibit 5
071

**SUPERSEDED**

18. All essential businesses and reopened businesses that remain in operation in accordance with the Order shall make every effort to use telecommuting for their workforces.

19. A strong recommendation is made that all persons who are 65 years old or older, have a chronic underlying condition, or have a compromised immune system self-quarantine themselves at home or other suitable location.

20. All persons arriving in the county from international locations identified on the Centers for Disease Control and Prevention (CDC) Warning Level 2 or 3 Travel Advisory (available at: https://wwwnc.cdc.gov/travel/notices) shall be subject to 14-day home or other suitable location quarantine and self-monitoring.

21. Persons who have been diagnosed with COVID-19, or who are likely to have COVID-19, shall comply with the Order of the Health Officer titled: "Isolation of All Persons with or Likely to have COVID-19", or as subsequently amended. Persons who have a close contact with a person who either has COVID-19, or is likely to have COVID-19, shall comply with the Order of the Health Officer titled: "Quarantine of Persons Exposed to COVID-19," or as subsequently amended. Both orders are available at: https://www.sandiegocounty.gov/content/sdc/hhsa/programs/phs/community_epidemiology/d c/2019-nCoV/health-order.html. If a more specific isolation or quarantine order is issued to a person, that order shall be followed.

22. For purposes of this Order:
    a. "Essential business" is any business or activity (or a business/activity that employs/utilizes workers) designated by the State Public Health Officer as "Essential Critical Infrastructure Workers" set forth in: https://covid19.ca.gov/img/Essential CriticalInfrastructureWorkers.pdf) as that list may be updated from time-to-time, and referenced in Executive Order N-33-20 issued by the Governor of the State of California. For the purposes of this Order, the following businesses in the Food and Agriculture Sector are considered "groceries" or "other retail that sells food and beverages": grocery stores, corner stores and convenience stores, liquor stores that sell food, farmer's markets, food banks, farm and produce stands, supermarkets, big box stores that sell groceries and essentials, or similar business that sell food so long as the store has a current permit related to the sale of food and/or beverages from the San Diego County Department of Environmental Health.
    b. "Gathering" is any event or convening that brings together more than one person in a single room or single indoor or outdoor space at the same time. A gathering does not

Page 7 of 11

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

Exhibit 5
072

SUPERSEDED

include:

    i.  A gathering consisting only of members of a single family or household.

    ii.  Operations at airports, public transportation or other spaces where persons in transit are able to practice social distancing.

    iii.  Operations at essential businesses as defined in section 22a above and reopened businesses as defined in 22f below and where the other requirements set forth in this Order are followed.

c.  "Long term care facility" is a facility serving adults that require assistance with activities of daily living, including a skilled nursing facility, and that is licensed by the California Department of Community Care and Licensing, or the California Department of Public Health.

d.  "Non-essential personnel" are employees, contractors, or members of the public who do not perform treatment, maintenance, support, or administrative tasks deemed essential to the healthcare mission of the long-term care facility or hospital.  Non-essential personnel do not include first responders, nor State, federal, or local officials, investigators, or medical personnel carrying out lawful duties.  Non-essential personnel do not include visitors to hospitals and long-term care facilities who are granted entry by the facility's director, or designee, because they are family or friends who are visiting a resident in an end of life or similar situation, are parents or guardians visiting a child who is a patient, or because of any other circumstances deemed appropriate by the facility director, or designee, and where appropriate precautions by the facility that follow federal, State, and local public health guidance regarding COVID-19 are followed.

e.  "Social distancing" is maintaining a six-foot separation from all persons except for household members, first responders and medical providers or employees conducting temperature screenings.

f.  "Reopened business" is a business that is not an essential business as stated in section 22a above, and has reopened in conformance with the State of California's Resilience Roadmap (available at: https://covid19.ca.gov/roadmap-counties/) and the Statewide Public Health Officer Order, issued by the California Department of Health Services on July13, 2020, all portions of which are operative in San Diego County effective immediately, and available at {https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/SHO%20Order%20Dimming%20Entire%20State%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.pdf}.  A reopened business may open when the State has posted the applicable COVID-19 INDUSTRY GUIDANCE, the Public Health Officer has posted an acknowledgement of the

Page 8 of 11

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

Exhibit 5
073

SUPERSEDED

reopened status on the County of San Diego Coronavirus website and the business has complied with the requirements of this Order.

23. Hotels and lodging establishments may be open for all guests, including tourists and leisure guests, provided they comply with the State COVID-19 Industry Guidance: Hotels, Lodging and Short Term Rentals and complete and post a Safe Reopening Plan pursuant to section 11, above.

24. This Order is issued as a result of the World Health Organization's declaration of a worldwide pandemic of COVID-19 disease, also known as "novel coronavirus."

25. This Order is issued based on scientific evidence regarding the most effective approaches to slow the transmission of communicable diseases generally and COVID-19 specifically, as well as best practices as currently known and available to protect vulnerable members of the public from avoidable risk of serious illness or death resulting from exposure to COVID-19. The age, condition, and health of a significant portion of the population of the county places it at risk for serious health complications, including death, from COVID-19. Although most individuals who contract COVID-19 do not become seriously ill, persons with mild symptoms and asymptomatic persons with COVID-19 may place other vulnerable members of the public— such as older adults, and those with underlying health conditions—at significant risk.

26. The actions required by this Order are necessary to reduce the number of individuals who will be exposed to COVID-19, and will thereby slow the spread of COVID-19 in the county. By reducing the spread of COVID-19, this Order will help preserve critical and limited healthcare capacity in the county and will save lives.

27. This Order is issued in accordance with, and incorporates by reference: a) the Declaration of Local Health Emergency issued by the Health Officer on February 14, 2020; b) the Proclamation of Local Emergency issued by the County Director of Emergency Services on February 14, 2020; c) the action of the County Board of Supervisors to ratify and continue both the local health emergency and local emergency on February 19, 2020; d) the Proclamation of a State of Emergency issued by the Governor of the State of California on March 4, 2020; e) Executive Order N-25-20 issued by the Governor of the State of California on March 12, 2020 which orders that "All residents are to heed any orders and guidance of state and local health officials, including but not limited to the imposition of social distancing measures, to control COVID-19"; f) Proclamation 9984 regarding COVID-19 issued by the President of the United States on March 11, 2020; g) Executive Order N-33-20 issued by the

Page 9 of 11

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

Exhibit 5
074

**SUPERSEDED**

Governor of the State of California on March 19, 2020; h) the "Interim Additional Guidance for Infection Prevention and Control for Patients with Suspected or Confirmed COVID-19 in Nursing Homes" issued by the CDC; i) COVID-19 guidance issued by the California Department of Public Health on including, but not limited to the Face Coverings Guidance issued on April 1, 2020; and j) the State of California's "Resilience Roadmap."

28. This Order is issued to prevent circumstances often present in gatherings that may exacerbate the spread of COVID-19, such as: 1) the increased likelihood that gatherings will attract people from a broad geographic area; 2) the prolonged time period in which large numbers of people are in close proximity; 3) the difficulty in tracing exposure when large numbers of people attend a single event or are at a single location; and 4) the inability to ensure that such persons follow adequate hygienic practices.

29. This Order is issued to provide additional opportunities for recreational activities while also requiring additional protections from the spread of COVID-19 to the public who are taking advantage of these opportunities for recreational activities.   And providing additional protections for employees of essential businesses or reopened business and their customers/clients by increasing facial covering requirements and health checks and temperature screening.

30. This Order is issued to protect the public health as businesses are allowed to reopen by requiring businesses to implement procedures necessary to ensure their employees and customers comply with social distancing, sanitation and screening practices.

31. This Order comes after the release of substantial guidance from the Health Officer, the California Department of Public Health, the CDC, and other public health officials throughout the United States and around the world.

32. The statement of facts and circumstances set forth as justification for each Guidance issued by the California Department of Health Services that is referenced in this Order are hereby accepted and incorporated by reference into this Order.

33. Pursuant to Health and Safety Code section 120175.5 (b) all governmental entities in the county shall take necessary measures within the governmental entity's control to ensure compliance with this Order and to disseminate this Order to venues or locations within the entity's jurisdiction where gatherings may occur.

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

Exhibit 5
075

**SUPERSEDED**

34. Violation of this Order is subject to fine, imprisonment, or both. (California Health and Safety Code section 120295.)

35. To the extent necessary, this Order may be enforced by the Sheriff or chiefs of police pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029.

36. Once this Order takes effect it shall supersede the Order of the Health Officer and Emergency Regulations dated July 6, 2020.

**IT IS SO ORDERED:**

Date: July 14 2020

Wilma J. Wooten, M.D., M.P.H.
Public Health Officer
County of San Diego

---

## EMERGENCY REGULATIONS

As Director of Emergency Services for the County of San Diego, I am authorized to promulgate regulations for the protection of life and property pursuant to Government Code Section 8634 and San Diego County Code section 31.103. The following shall be in effect for the duration of the Health Officer Order issued above which is incorporated in its entirety by reference:

The Health Officer Order shall be promulgated as a regulation for the protection of life and property.

Any person who violates or who refuses or willfully neglects to obey this regulation is subject to fine, imprisonment, or both. (Government Code section 8665.)

Date: July 14, 2020

Helen Robbins-Meyer
Chief Administrative Officer
Director of Emergency Services
County of San Diego

Exhibit 5
076

# EXHIBIT 6

# EXHIBIT 6

Exhibit 6
077

SUPERSEDED



# County of San Diego

**HEALTH AND HUMAN SERVICES AGENCY**
PUBLIC HEALTH SERVICES

## ORDER OF THE HEALTH OFFICER
## AND EMERGENCY REGULATIONS
(Effective December 6, 2020 at 11:59 p.m.)

Pursuant to California Health and Safety Code sections 101040, 120175, and 120175.5 (b) the Health Officer of the County of San Diego (Health Officer) **ORDERS AS FOLLOWS**:

Effective 11:59 p.m. on Sunday, December 6, 2020, and continuing until further notice, the following will be in effect for San Diego County (county):

1. All persons are to remain in their homes or at their place of residence, except for employees or customers traveling to and from essential businesses or a State authorized sector as defined in sections 10 and 11, below, or to participate in individual or family outdoor activity as allowed by this Order.

2. All "gatherings," as defined in the California Department of Public Health Guidance for Private Gatherings found at https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/CDPH-Guidance-for-the-Prevention-of-COVID-19-Transmission-for-Gatherings-10-09.aspx, with members of other households are prohibited unless expressly permitted in the Regional Stay At Home Order issued by the California Public Health Officer on December 3, 2020 and found at:    https://www.gov.ca.gov/wp-content/uploads/2020/12/12.3.20-Stay-at-Home-Order-ICU-Scenario.pdf.

3. SCHOOLS
    a. All public, charter, and private schools  may  hold classes and other school activities only under circumstances permitted by the State and in compliance with the COVID-19 Industry Guidance: Schools and School - Based Programs, and as may be updated or superseded by further State guidance. Institutions of higher education may hold classes or other school activities only under circumstances permitted by the State and in compliance with the COVID – 19 Industry Guidance: Institutions of Higher Education and as may be updated or superseded by further State guidance.  A written,

Exhibit 6
078

SUPERSEDED

worksite-specific COVID-19 prevention plan as stated in their applicable state guidance may be used by schools and institutions of higher education in lieu of a Social Distancing and Sanitation Protocol or Safe Reopening Plan.

b. All school districts, charter schools, and private schools serving grades TK – 12 inclusive, shall report the following to the San Diego County Office of Education (SDCOE) on or before the second and fourth Monday of each month, in a format designated by SDCOE:

    i. Number of students participating in full-time in-person learning, by school site and school district, if applicable.

    ii. Number of students participating in hybrid learning (a mix of in-person and distance learning) by school site and school district, if applicable.

    iii. Number of students participating in distance learning by school site and school district, if applicable.

    iv. Number of school employees who work onsite at a school, by school site and school district, if applicable.

    v. The name, email, mailing address, and phone number of the person responsible for responding to complaints regarding COVID-19 prevention, by school site and school district, if applicable.

SDCOE shall report this information to the County of San Diego by the end of business on the following day (Tuesday) and shall post this information on its publicly facing website.

c. All school districts, charter schools, and private schools serving grades TK – 12 inclusive, as required in the most recent *COVID -19 Industry Guidance: Schools and School-Based Programs*, shall notify local health officials immediately of any positive case of COVID-19, and exposed staff and families, as relevant, while maintaining confidentiality as required by state and federal laws.

4. Child daycare and child care providers shall operate in compliance with the measures set forth in State COVID-19 Updated Guidance: Child Care Programs and Providers and shall prepare and post a Safe Reopening Plan pursuant to section 11c, below.

5. "Non-essential personnel," as defined in section 15a below, are prohibited from entry into any hospital or long-term care facility. All essential personnel who are COVID-19 positive or show any potential signs or symptoms of COVID-19 are strictly prohibited from entry into hospitals or long-term care facilities. Notwithstanding the foregoing, individuals requiring medical care for COVID-19 or related conditions may be admitted to hospitals or other

SUPERSEDED

medical facilities if the hospital or medical facility is appropriate for treating COVID-19 and has adequate precautions in place to protect its patients, medical personnel and staff.

6. Hospitals and healthcare providers, including dentists shall:
   a. Take measures to preserve and prioritize resources; and,
   b. May authorize and perform non-emergent or elective surgeries or procedures based on their determination of clinical need and supply capacity, and where consistent with State guidance.
   c. Nothing in this Order shall prevent physicians and other healthcare providers from conducting routine preventive care provided it conforms to any applicable State guidance.
   d. Nothing in this Order shall prevent dentists or dental hygienists from conducting routine preventive care provided it conforms to any applicable State guidance.

7. Hospitals, healthcare providers, pharmacies,  commercial testing laboratories, and any other setting conducting testing shall report all positive and non-positive (i.e., negative, indeterminate, and specimen unsatisfactory) test results from nucleic acid amplification tests, antibody tests, and antigen diagnostic tests for SARS-CoV-2 to the Public Health Officer immediately after such results are received.

8. Face coverings shall be worn as described and required in California Department of Public Health Face Covering Guidance issued on November 16, 2020, (available at: https://www.cdph.ca.gov/Programs/CID/DCDC/Pages/COVID-19/guidance-for-face-coverings.aspx ).

9. All businesses not meeting the definition of essential business or State authorized sector in section 10 and 11 below are referred to in this Order as "non-essential businesses" and shall be and remain closed for the duration of this Order. All essential businesses and businesses and entities in State authorized sectors must comply with the requirements of this Order. Notwithstanding the foregoing, any business may remain open if its employees and owners can provide its services from home, including by telecommuting, without direct contact with the public.

10. ESSENTIAL BUSINESSES
    a. "Essential business" is any business or activity (or a business/activity that employs/utilizes workers) designated by the State Public Health Officer as "Essential Critical Infrastructure Workers" set forth in: https://covid19.ca.gov/img/Essential

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

Exhibit 6
080

SUPERSEDED

CriticalInfrastructureWorkers.pdf) as that list may be updated from time-to-time, and referenced in Executive Order N-33-20 issued by the Governor of the State of California.

b. All essential businesses that allow members of the public to enter a facility must prepare and post a "Social Distancing and Sanitation Protocol" on the form available at: https://www.sandiegocounty .gov/content/dam/sdc/hhsa/programs/phs/Epidemiology/covid19/SOCIAL_DISTAN CING_AND_SANITATION_PROTOCOL_04022020_V1.pdf), or on a form required by another governmental entity requiring substantially similar information, for each of their facilities open to the public in the county. The Social Distancing and Sanitation Protocol must be posted at or near the entrance of the relevant facility, and shall be easily viewable by the public and employees.  A copy of the Social Distancing and Sanitation Protocol must also be provided to each employee performing work at the facility.  All essential businesses shall implement the Social Distancing and Sanitation Protocol and provide evidence of its implementation to any authority enforcing this Order upon demand.  The Social Distancing and Sanitation Protocol must describe all measures required in section c below. Any business that fails to prepare and successfully implement a Social Distancing and Sanitation Protocol shall immediately close.

c. When the State of California has issued an industry guidance, or any subsequent amendments thereto, with mandatory or suggested restrictions and/or measures to be implemented by a particular sector of essential business, every essential business in that sector must comply with the guidance and shall include in its Social Distancing and Sanitation Protocol (prepared pursuant to section b, above)  all of the measures listed  in the industry guidance. Any mandatory measures required by this Order must also be included in a Social Distancing and Sanitation Protocol.

11. STATE AUTHORIZED SECTORS

a. A "State authorized sector" is a type of business or activity that is not an essential business as defined in section 10a above, and is operating in conformance with the State of California's Regional Stay At Home Order  issued by the State Public Health Officer on December 3, 2020, all portions of which are operative  in San Diego County effective immediately, and available at: https://www.gov.ca.gov/wp-content/uploads/2020/12/12.3.20-Stay-at-Home-Order-ICU-Scenario.pdf.

b. All State authorized sectors, must prepare and post a "Safe Reopening Plan" on the form available at: https://www.sandiegocounty.gov/content/dam/sdc/hhsa/programs

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

Exhibit 6
081

SUPERSEDED

/phs/Epidemiology/covid19/Community_Sector_Support/BusinessesandEmployers/ SafeReopeningPlanTemplate.pdf for each of their facilities in the county.

c. The Safe Reopening Plan must be posted at or near the entrance of the relevant facility, and shall be easily viewable by the public and employees.  A copy of the Safe Reopening Plan must also be provided to each employee performing work at the facility.  All businesses or entities in a State authorized sector shall implement the Safe Reopening Plan and provide evidence of its implementation to any authority enforcing this Order upon demand.  The Safe Reopening Plan must describe all measures required in section e, below.   Any business that fails to prepare and comply with its Safe Reopening Plan or COVID-19 Restaurant Operating Protocol shall immediately close.

d. When the State of California has issued an industry guidance, or any subsequent amendments thereto, with mandatory or suggested restrictions and/or measures to be implemented by a particular State authorized sector, every business or entity in that sector must comply with the guidance and shall include in its Safe Reopening Plan (prepared pursuant to section c, above) all of the measures listed in the industry guidance.  Any mandatory measures required by this Order must also be included in a Social Distancing and Sanitation Protocol.

12. Each essential business, and business or entity in a State authorized sector, shall take all of the following actions if an employer becomes aware that an employee is diagnosed with COVID-19:

a. Promptly notify the County Department of Public Health that there is an employee that is laboratory-confirmed diagnosed with COVID-19, together with the name, date of birth, and contact information of the employee.

b. Cooperate with the County Department of Public Health's COVID-19 response team to identify and provide contact information for any persons exposed by the employee at the workplace.

c. Provide notice of the exposure to any employees, and contractors (who regularly work at the workplace), who may have been exposed to COVID-19, as stated in the State's COVID-19 Employer Playbook for a Safe Reopening, available at {https://files.covid19.ca.gov/pdf/employer-playbook-for-safe-reopening--en.pdf}.

13. OUTDOOR RECREATION

a. Each public park and recreation area or facility, shall operate in compliance with the measures set forth in the State COVID-19 Industry Guidance: Campgrounds, RV Parks and Outdoor Recreation.   The operator of the park shall prepare a Safe

Exhibit 6
082

SUPERSEDED

Reopening Plan pursuant to section 11, above, indicating how the park or recreation facility will implement the required measures. Any park or recreation area/facility at which the Protocol requirements cannot be effectively implemented may be required to close.

b. Outdoor recreation instruction and day camps that comply with the State COVID-19 Industry Guidance: Day Camps, may be conducted in park and recreation areas/facilities.

c. Recreational boating may occur in compliance with applicable State guidance: https://files.covid19.ca.gov/pdf/guidance-campgrounds.pdf.

d. Businesses or entities operating pursuant to this section 13 shall comply with additional restrictions listed in Section 2 (g) of the Regional Stay At Home Order and shall close all playgrounds and indoor facilities.

14. Persons who have been diagnosed with COVID-19, or who are likely to have COVID-19, shall comply with the Order of the Health Officer titled: "Isolation of All Persons with or Likely to have COVID-19", or as subsequently amended. Persons who have a close contact with a person who either has COVID-19, or is likely to have COVID-19, shall comply with the Order of the Health Officer titled: "Quarantine of Persons Exposed to COVID-19," or as subsequently amended. Both orders are available at: https://www.sandiegocounty.gov/content/sdc/hhsa/programs/phs/community_epidemiology/dc/2019-nCoV/health-order.html. If a more specific isolation or quarantine order is issued to a person, that order shall be followed.

15. For purposes of this Order:

a. "Non-essential personnel" are employees, contractors, or members of the public who do not perform treatment, maintenance, support, or administrative tasks deemed essential to the healthcare mission of the long-term care facility or hospital. Non-essential personnel do not include first responders, nor State, federal, or local officials, investigators, or medical personnel carrying out lawful duties. Non-essential personnel do not include visitors to hospitals and long-term care facilities who are granted entry by the facility's director, or designee, because they are family or friends who are visiting a resident in an end of life or similar situation, are parents or guardians visiting a child who is a patient, or because of any other circumstances deemed appropriate by the facility director, or designee, and where appropriate precautions by the facility that follow federal, State, and local public health guidance regarding COVID-19 are followed.

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

Exhibit 6
083

SUPERSEDED

   b.  "Social distancing" is maintaining a six-foot separation from all persons except for household members, first responders and medical providers or employees conducting temperature screenings.

16. This Order is issued as a result of the World Health Organization's declaration of a worldwide pandemic of COVID-19 disease, also known as "novel coronavirus."

17. This Order is issued based on scientific evidence regarding the most effective approaches to slow the transmission of communicable diseases generally and COVID-19 specifically, as well as best practices as currently known and available to protect vulnerable members of the public from avoidable risk of serious illness or death resulting from exposure to COVID-19. The age, condition, and health of a significant portion of the population of the county places it at risk for serious health complications, including death, from COVID-19. Although most individuals who contract COVID-19 do not become seriously ill, persons with mild symptoms and asymptomatic persons with COVID-19 may place other vulnerable members of the public— such as older adults, and those with underlying health conditions—at significant risk.

18. The actions required by this Order are necessary to reduce the number of individuals who will be exposed to COVID-19, and will thereby slow the spread of COVID-19 in the county. By reducing the spread of COVID-19, this Order will help preserve critical and limited healthcare capacity in the county and will save lives.

19. This Order is issued in accordance with, and incorporates by reference: a) the Declaration of Local Health Emergency issued by the Health Officer on February 14, 2020; b) the Proclamation of Local Emergency issued by the County Director of Emergency Services on February 14, 2020; c) the action of the County Board of Supervisors to ratify and continue both the local health emergency and local emergency on February 19, 2020; d) the Proclamation of a State of Emergency issued by the Governor of the State of California on March 4, 2020; e) Executive Order N-25-20 issued by the Governor of the State of California on March 12, 2020 which orders that "All residents are to heed any orders and guidance of state and local health officials, including but not limited to the imposition of social distancing measures, to control COVID-19"; f) Proclamation 9984 regarding COVID-19 issued by the President of the United States on March 11, 2020; g) Executive Order N-33-20 issued by the Governor of the State of California on March 19, 2020; h) the "Interim Additional Guidance for Infection Prevention and Control for Patients with Suspected or Confirmed COVID-19 in Nursing Homes" issued by the CDC; i) COVID-19 guidance issued by the California Department of Public Health on including, but not limited to the Face Coverings Guidance

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

Exhibit 6
084

SUPERSEDED

issued on November 16, 2020; j) the State of California's "Resilience Roadmap;" k) the State of California's Plan for Reducing COVID-19 and Adjusting Permitted Sector Activities to Keep Californians Healthy and Safe; l) the California Statewide Public Health Officer Order dated August 28, 2020; and m) the Regional Stay At Home Order issued by the California Public Health Officer on December 3, 2020.

20. This Order is issued to prevent circumstances often present in gatherings that may exacerbate the spread of COVID-19, such as: 1) the increased likelihood that gatherings will attract people from a broad geographic area; 2) the prolonged time period in which large numbers of people are in close proximity; 3) the difficulty in tracing exposure when large numbers of people attend a single event or are at a single location; and 4) the inability to ensure that such persons follow adequate hygienic practices.

21. This Order is issued to provide additional opportunities for recreational activities while also requiring additional protections from the spread of COVID-19 to the public who are taking advantage of these opportunities for recreational activities. And providing additional protections for employees of essential businesses or businesses or entities in State authorized sectors and their customers/clients.

22. This Order is issued to protect the public health as businesses are allowed to reopen by requiring businesses to implement procedures necessary to ensure their employees and customers comply with social distancing, sanitation and screening practices.

23. This Order comes after the release of substantial guidance from the Health Officer, the California Department of Public Health, the CDC, and other public health officials throughout the United States and around the world.

24. The statement of facts and circumstances set forth as justification for each Guidance issued by the California Department of Health Services that is referenced in this Order are hereby accepted and incorporated by reference into this Order.

25. Pursuant to Health and Safety Code section 120175.5 (b) all governmental entities in the county shall take necessary measures within the governmental entity's control to ensure compliance with this Order and to disseminate this Order to venues or locations within the entity's jurisdiction where gatherings may occur.

ORDER OF THE HEALTH OFFICER AND EMERGENCY REGULATIONS

Exhibit 6
085

SUPERSEDED

26. Violation of this Order is subject to fine, imprisonment, or both. (California Health and Safety Code section 120295.)

27. To the extent necessary, this Order may be enforced by the Sheriff or chiefs of police pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029.

28. Once this Order takes effect it shall supersede the Order of the Health Officer and Emergency Regulations dated November 20, 2020.

**IT IS SO ORDERED:**

Date: December 5, 2020

Wilma J. Wooten, M.D., M.P.H.
Public Health Officer
County of San Diego

---

## EMERGENCY REGULATIONS

As Director of Emergency Services for the County of San Diego, I am authorized to promulgate regulations for the protection of life and property pursuant to Government Code Section 8634 and San Diego County Code section 31.103.  The following shall be in effect for the duration of the Health Officer Order issued above which is incorporated in its entirety by reference:

The Health Officer Order shall be promulgated as a regulation for the protection of life and property.

Any person who violates or who refuses or willfully neglects to obey this regulation is subject to fine, imprisonment, or both.  (Government Code section 8665.)

Date: December 5, 2020

Helen Robbins-Meyer
Chief Administrative Officer
Director of Emergency Services
County of San Diego

**THIS ORDER AND EMERGENCY REGULATIONS DOES NOT SUPERSEDE MORE RESTRICTIVE STATE ORDERS OR GUIDANCE.   ALL PERSONS MUST REFERENCE BOTH THIS DOCUMENT AND APPLICABLE STATE ORDERS AND GUIDANCE.   TO THE EXTENT THERE IS ANY INCONSISTENCY THE MORE RESTRICTIVE MEASURE APPLIES.**

Exhibit 6
086

# EXHIBIT 7

# EXHIBIT 7

Exhibit 7
087



City of San Diego
EXECUTIVE ORDER NO. 2020-2
By the Mayor

On March 12, 2020, I issued a proclamation of local emergency in preparation and response to the spread of the COVID-19 virus in our community, which our City Council ratified on March 17, 2020.  The local emergency will continue until its termination by the Council.

On March 16, 2020, I executed Executive Order No. 2020-1, directing measures to be taken across the City to protect members of the public and City employees from an undue risk of contracting the COVID-19 virus. That Executive Order, initially intended to expire March 31, 2020, is extended until April 30, 2020, as it is imperative that the City of San Diego, continue to implement locally all guidance and directives currently available from federal, state, and local public health officials to stem the spread of the virus and protect public safety and welfare. The measures outlined in this order fall within City jurisdiction and pertain to matters reasonably related to the protection of life and property.

In Executive Order N-28-20, issued March 16, 2020, the Governor waived the time limitation set forth in Penal Code section 396, subdivision (f), concerning protections against residential eviction through May 31, 2020. On March 25, 2020, the City Council adopted an ordinance strengthening protections for residential and commercial tenants during this local declared emergency and imposed limitations on evictions for nonpayment of rent arising out of a documented, substantial decrease in income or substantial out-of-pocket medical expenses caused by COVID-19 or by any local, state, or federal government response. The City also took action to provide relief for small businesses that have been financially impacted by complying with public health orders that promote sanitation and social distancing to prevent the spread of the virus through the creation of a Small Business Relief Fund.

In Executive Order N-33-20, issued March 19, 2020, the Governor directed all California residents to stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors, under the Order of the State Public Health Officer issued on March 19, 2020. The County Public Health Officer issued orders directing the public to take certain actions to protect the public health from COVID-19 on March 12, 2020, amended several times and in effect until March 31, 2020, unless extended. This Order further directs local governments to enforce social distancing at all parks and beaches, and reinforces the City's commitment to promote social distancing, self-quarantine, and self-isolation necessary to protect public health.

By virtue of authority vested in me as Mayor of the City of San Diego pursuant to the provisions of the City Charter, San Diego Municipal Code section 51.0105, and California Government Code section 8634 to promulgate, issue, and enforce rules, regulations, and orders, I hereby

Exhibit 7
088



City of San Diego
EXECUTIVE ORDER NO. 2020-2
By the Mayor

declare the following orders to be necessary for the protection of life and property and I hereby order, effective immediately until April 30, 2020, that:

1.  All of the requirements contained in Executive Order No. 2020-1, dated March 16, 2020, except those superseded here or by order of the Governor or Public Health Official are still in effect and are hereby extended until April 30, 2020.

2. All City residents shall comply with all current direction issued by Executive Order of the Governor of California and by directive of the County Public Health Officer.

3. In accordance with California Government Code sections 3100 and 3101, all City employees are declared to be Disaster Service Workers (DSW), subject to disaster service activities as may be assigned to them by their superiors or by law. "Disaster Service" means all activities authorized by and carried on under the California Emergency Services Act, including approved and documented training necessary or proper to engage in such activities. Each DSW in any classification, without regard to a formal designation or assignment, is considered to be acting within the scope of disaster service activities while assisting any unit of the City of San Diego Emergency Operations Center (EOC), performing any act contributing to the protection of life or property, or mitigating the effects of an emergency or potential emergency. As part of this Order, Department Directors will take all necessary steps to ensure compliance with State of California DSW guidelines, San Diego Municipal Code sections 51.0101 through 51.0108 related to Public Emergency Procedures, and other applicable provisions.

4. Trucks and other vehicles engaged in the delivery of medical supplies to any health care operations in the City, or engaged in the delivery of grocery items to grocery stores, when such items are made available for sale to the public, are hereby exempt from having to comply with any City rules and regulations that limit the hours for such deliveries.

5. All City landlords shall comply with the provisions of the emergency ordinance adopted by the City Council on March 25, 2020 adopting a temporary moratorium on evictions of residential and commercial tenants in the City of San Diego if the tenant demonstrates an inability to pay rent due to substantial economic hardship caused by COVID-19.

6. All City parks, beaches, trails, boardwalks, and bays shall remain closed to the public to further limit public gatherings and slow the spread of COVID-19. This order ensures compliance with the Governor's Executive Order N-33-20 and the County of San Diego's Public Health

Exhibit 7
089



City of San Diego
EXECUTIVE ORDER NO. 2020-2
By the Mayor

Order, and it is consistent with their intent of discouraging gatherings of any size by requiring residents to remain home.

7. The City of San Diego Library Department shall make all 3D printers available to produce any parts or equipment requested by the health care community, specifically hospital facilities, in response to COVID-19.  Additionally, the City shall offer up all available City property (vacant and surplus) to the State for surge capacity.

8. The City established a Small Business Relief Fund to help businesses continue their operations and aid employee retention. The Small Business Relief Fund will reallocate existing City funds to provide grants and forgivable and low-interest loans to businesses of 100 employees or less that have seen their operations impacted by COVID-19.

9. The City will work with City lessees, with particular attention to businesses of 100 employees or less, on flexible lease payment arrangements.

10.  All Building Permit Applications will remain open for an extended period of 180 days, consistent with the Building Official's determination that the COVID-19 emergency constitutes circumstances beyond the control of the applicants. The time to utilize a building permit shall be extended 180 days, consistent with the Building Official's determination that the COVID-19 emergency constitutes circumstances beyond the control of the permit holder, which prevented completion of the work.

11. All fees associated with Business Tax Certificates (BTC), and any business-related fees, permits, and assessments, will be deferred for up to 120 days. A one-year forgiveness period in BTC penalties and surcharges will also apply for businesses in need of reestablishing their accounts.

12. The City will suspend until further notice the discontinuation or shut off of water service for residents and businesses for non-payment of water and sewer bills and the imposition of late payment penalties or fees for delinquent water and/or sewer bills. The City will develop a program for payment deferrals.

Any violation of the above prohibitions may be referred for prosecution to the fullest extent of the law. Each individual officer should use their discretion in enforcing this order and always keep the intent of the order in mind.

Exhibit 7
090



City of San Diego
EXECUTIVE ORDER NO. 2020-2
By the Mayor

Dated: March 30, 2020

_____

**Mayor Kevin L. Faulconer**

Exhibit 7
091