UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATOMA, INC., a California Corporation, DBA Atelier Aucoin Salon et al., <br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of California, et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 3:21-cv-098-BEN-JLB<br><br>**ORDER Granting Defendants' Motions to Dismiss**<br><br>**[ECF Nos. 16, 31, 34]** |

"[B]inding authority is very powerful medicine." *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001). While it was not the case when the Complaint was filed, there is now binding authority that Plaintiffs' constitutional claims are dead. Because a lower court may not disregard binding authority even if it would decide the issue differently, the case is dismissed. *Id*. at 1175 ("A district court bound by circuit authority . . . has no choice but to follow it, even if convinced that such authority was wrongly decided.").

# I. BACKGROUND

## A. The Plaintiffs

Plaintiff Tatoma Inc. is a hair salon in La Jolla, California. Plaintiff Thomas L. Aucoin is the owner of Tatoma. Plaintiff So Cal Fitness Clubs, LLC is a fitness center in La Jolla, California. Each business has been subject to the myriad COVID-19 related health and shutdown orders issued by the Defendants during the years 2020 and 2021.

## B. The Defendants

The Defendants are state, county, and city officials who played a part in either issuing or enforcing the health and shutdown orders.[1]

## C. The COVID-19 Related Orders[2]

In early 2020, Governor of California Gavin Newsom proclaimed a State of Emergency due to a health crisis caused by the spread of SARS-CoV-2, the virus that causes COVID-19. Coinciding with the State of Emergency proclamation, California's Public Health Officer issued a directive severely restricting public activities throughout the state. This directive included the mandatory closure of several categories of businesses, including hair salons and fitness centers. Governor Newsom then issued an order directing all California residents to heed the State Public Health Officer's directive

---

[1] Specifically named are: (1) Gavin Newsom in his official capacity as the Governor of California; (2) Xavier Becerra in his official capacity as the Attorney General of California ; (3) Kristy Underwood, in her official capacity as the Executive Officer of the State Board of Barbering and Cosmetology; (4) Kevin Faulconer in his official capacity as Mayor of San Diego; (5) Wilma J. Wooten, M.D., in her official capacity as Medical Officer for the County of San Diego; (6) Helen N. Robbins-Meyer, in her official capacity as Chief Administrative Officer for the County of San Diego; (7) David Nisleit, in his official capacity as Chief of Police for the City of San Diego; and (8) William Gore in his official capacity as San Diego Sheriff. Several of these individuals have been replaced in office. Under Rule 25(d) of the Federal Rules of Civil Procedure, the new officeholders may be automatically substituted as defendants.

[2] For a more complete history of one California county's COVID-19 stay home orders, see *McDougall v. Cty. of Ventura*, 23 F.4th 1095 (9th Cir. 2022).

to stay home, except those working at jobs deemed essential. Private and public enterprises were ordered to close unless deemed to be essential industries.

After a few months of being closed, hair salons and fitness centers were permitted to re-open. RJN, ECF No. 6-2, Ex. 6. A couple of months after that, a resurgence of COVID-19 cases led to government orders for hair salons and fitness centers to operate outdoors only. RJN, ECF No. 6-2. Ex. 7. In December 2020, San Diego County non-essential indoor business operations were once again ordered closed in accordance with statewide Regional Stay-at-Home Orders. In January 2021, the December Regional Stay-at-Home Order was lifted and hair salons and fitness centers were permitted to reopen under the conditions set forth in the Governor's newly designed "Blueprint to a Safer Economy" plan which was linked to county-wide COVID-19 cases and hospitalizations. RJN, ECF No. 6-12, Ex. 14. This lawsuit followed.

## II. Motions to Dismiss

The legal standards to be applied to a motion to dismiss under Rule 12(b)(6) are well known and need no elaboration here. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010); *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The reason for dismissal here is the lack of a cognizable legal theory and the absence of plausible facts alleged under a cognizable legal theory.

## III. Discussion

Plaintiffs set out three federal constitutional claims and three state law claims for relief. One or more Defendants move to dismiss each of the six claims. Because the federal constitutional claims are being dismissed, as discussed below, the Court declines to exercise jurisdiction over the pendant state law claims.

### A. First Claim for Relief: 14th Amendment Due Process

Plaintiffs assert the State, County, and City Defendants have violated federal constitutional rights arising under both substantive due process and procedural due process theories.

### 1. **<u>Substantive Due Process</u>**

Plaintiffs allege a fundamental property interest in conducting a lawful business. Plaintiffs allege Defendants lack a compelling interest for depriving Plaintiffs of their right to pursue work. Plaintiffs further allege that even if Defendants possessed a legitimate or compelling interest, that the orders are not rationally related nor narrowly tailored to achieve such interests. Plaintiffs had a solid argument at one time. Indeed, this Court had recognized that citizens enjoy a constitutional right to work for a living under the Due Process Clause based on manifold statements made in Supreme Court decisions. *See Bols v. Newsom*, 515 F. Supp. 3d 1120, 1126-28 (S.D. Cal. 2021) ("'It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure.' *Truax v. Raich*, 239 U.S. 33, 41 (1915); *see also Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).").

However, the United States Court of Appeals for the Ninth Circuit has arrived at a contrary conclusion. It has decided that the right to pursue a common calling is not a fundamental constitutional right. *See Slidewaters LLC v. Wash. State Dep't of Labor & Indus.*, 4 F.4th 747, 758 (9th Cir. 2021) ("The right to pursue a common calling is not considered a fundamental right.") (citations omitted). Along the same lines, it is now clear that Tatoma has no constitutional right to use its property as a hair salon and So Cal Fitness Clubs has no constitutional right to use its real estate as a fitness center. *Id.* ("The right to use property as one wishes is also not a fundamental right.") (citation omitted). Surprisingly, neither the right to earn a living, nor the right to use real property to run a business to make a living, are protected by the United States Constitution. Instead, both rights have been held to be merely economic in nature. *Id.* Because the rights are not fundamental, the proper test for judging the constitutionality of the orders regulating economic activity is the deferential standard of whether the legislation bears a rational relationship to a legitimate state interest. *Id.* Because *Slidewaters* is binding authority, Plaintiffs cannot make out a cognizable Due Process claim.

Of course, not every sentence that is found in an appellate decision is binding authority. Sometimes there are statements "made casually and without analysis, uttered in passing . . . done as a prelude to another legal issue that commanded the panel's full attention" that may be considered non-controlling dicta. *California Trucking Assn. v. Bonta*, 996 F.3d 644, 662 (9th Cir. 2021).[3] But that is not the situation in *Slidewaters*. The decision there arose from a similar case involving a state-ordered shutdown of plaintiff's water park business in order to reduce the spread of Covid-19. The plaintiff made a similar claim that state executive branch orders impinged on a constitutional Due Process right to earn a living and use one's property to earn that living. The constitutional issue in *Slidewaters* was front and center and arose in the same Covid-19 context as the case here. Consequently, no matter how much this Court may disagree, it cannot be disregarded as non-binding dicta.

So, this Court must take its medicine. *Hart*, 266 F.3d at 1171. Plaintiffs substantive Due Process claim is not cognizable and is dismissed without leave to amend. *See also BK Salons, Ltd. Liab. Co. v. Newsom*, 2021 U.S. Dist. LEXIS 147226, at *11, 2021 WL 3418724 (E.D. Cal. Aug. 4, 2021) ("Indeed, the Ninth Circuit has recently confirmed that this is not a fundamental right.") (citing *Slidewaters*). Even if Plaintiffs were to amend their complaint to allege a non-constitutional economic interest, based on *Slidewaters*, Plaintiffs' claims would be viewed under a rational basis standard. Under this standard, Plaintiffs must show that the Defendants' actions are "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1058 (9th Cir. 2012) (*quoting Kawaoka v. City of Arroyo Grande*, 17 F.3d 1227, 1234 (9th Cir. 1994)). However, preventing the spread of Covid-19 is a legitimate state interest. *See Roman*

---

[3] On the other hand, even dicta, if well-reasoned, may be binding in the Ninth Circuit. *United States v. McAdory*, 935 F.3d. 838, 843 (9th Cir. 2019) ("In other words, 'well-reasoned dicta is the law of the circuit.'").

*Cath Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2021) ("Stemming the spread of COVID-19 is unquestionably a compelling interest . . ."). Here, like the defendants in *Slidewaters*, the government officials issued a series of orders throughout the ongoing COVID-19 pandemic based on the changing landscape of infection rates, hospitalization rates, and their interpretations of general scientific understanding of how transmission of the disease worked. States (and local governments) are given "great leeway in adopting summary procedures to protect public health and safety." *Mackey v. Montrym*, 443 U.S. 1, 17 (1979). This is true "even in the absence of an emergency in the usual sense." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 882 F.2d 1398, 1406 (9th Cir. 1989) (quoting *Mackey*), *overruled on other grounds by Armendariz v. Penman*, 75 F.3d 1311 (9th Cir. 1996) (*en banc*). *Slidewaters* assessed the State of Washington's plan for responding to COVID-19 – a plan that grouped businesses into categories based on their types of activities – and decided that it was a rational approach, "particularly in dealing with an emergency that calls for prompt action." 4 F.4th at 758-59.

The same applies here. "The state is not required to draw a perfect line in determining which individual businesses can safely open and which cannot. *Cf. Vance v. Bradley*, 440 U.S. 93, 108–09 (1979) (under rational-basis review, classifications that are under-or over-inclusive do not create constitutional violations)." *Id.* As this Court has observed elsewhere, if "a person has no fundamental right to work, then there is little left for a court to do. . . . With the Constitution out of the way . . . one need only ask whether the government *could* have a legitimate reason for ordering hair dressers and nail salonists to close their businesses." *Bols v. Newsom*, 515 F. Supp. 3d at 1128. Therefore, Plaintiffs' substantive Due Process claim is dismissed without leave to amend.

## 2. Procedural Due Process

Plaintiffs also assert a claim that Defendants violated their rights to procedural due process. Plaintiffs allege the Defendants did not provide a meaningful opportunity to respond to the health and shutdown orders and there was no mechanism for challenging application of the orders. Yet, procedural due process requirements are not implicated

when "government decisions [ ] affect large areas and are not directed at one or a few individuals . . . general notice as provided by law is sufficient." *Halverson v. Skagit County*, 42 F.3d 1257, 1261 (9th Cir. 1994), *as amended on denial of reh'g* (Feb. 9, 1995); *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1061 (9th Cir. 2012) (same). The health and shutdown orders emanated from the Governor, county officials, and city officials affecting large areas and populations within their respective jurisdictions. They are the sort of actions that are legislative in nature. Such actions do not require the usual trappings of procedural due process as in notice and an opportunity to be heard.[4] *Cf. Londoner v. Denver,* 210 U.S. 373 (1908) (finding procedural due process violated where law affected a relatively small number of persons).

The overwhelming consensus of district court cases within California have found no procedural due process violation in similar circumstances. *BK Salons*, 2021 U.S. Dist. LEXIS 147226, at *18, 2021 WL 3418724 (E.D. Cal. Aug. 5, 2021) (hair salon) ("In sum, because the challenged Orders are clearly governmental decisions of general applicability that do not target individual salon owners, Plaintiff was not entitled under Halverson to individualized notice or the right to be heard."); *Bella 'N Harmony, Inc. v. Newsom*, 2021 U.S. Dist. LEXIS 134317, at *31, 2021 WL 3686758 (C.D. Cal. July 13, 2021) (hair salon) (dismissing procedural due process claim about COVID-19 shutdown orders and finding amendment futile); *Pcg-Sp Venture I LLC v. Newsom*, 2020 WL 4344631, *8, 2020 U.S. Dist. LEXIS 137155 (C.D. Cal. June 23, 2020) (hotel); *Six v. Newsom*, 462 F. Supp. 3d 1060, 1073 (C.D. Cal. 2020) (cancelled wedding); *Excel Fitness Fair Oaks, LLC v. Newsom*, 2021 U.S. Dist. LEXIS 39061, at *17, 2021 WL 795670 (E.D. Cal. Mar. 1, 2021) (fitness center) ("The challenged Orders are clearly

---

[4] When a government action is adjudicative, rather than legislative in nature, due process requires "notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

decisions of general applicability that do not target individual gym owners or facilities" and "Plaintiffs were not entitled to individualized notice or the right to be heard."); *Best Supplement Guide, LLC v. Newsom*, __ F. Supp. 3d. __, 2020 U.S. Dist. LEXIS 90608, at *15 (E.D. Cal. May 22, 2020) (fitness centers) ("Plaintiffs do not allege the current gym closures are targeted at individual gym owners or particular facilities. Rather, the State and County orders prohibit the operation of all gyms and workout facilities within their respective jurisdictions."); *Culinary Studios, Inc. v. Newsom*, 517 F. Supp. 3d 1042, 1068 (E.D. Cal. 2021) (indoor dining) ("Plaintiffs have not stated a valid procedural due process claim."); *see also Xponential Fitness v. Arizona*, 2020 U.S. Dist. LEXIS 123379, at *18, 2020 WL 3971908 (D. Ariz. July 14, 2020) (fitness center). Accordingly, the Complaint does not state a cognizable claim upon which relief can be granted and amendment appears to be futile. Therefore, the procedural due process claim is dismissed without leave to amend.

### B. Second Claim for Relief: Equal Protection

Plaintiffs next constitutional claim asserts Defendants have violated their right to equal protection under the law because the health and shutdown orders arbitrarily treat essential and non-essential businesses differently. Since *Slidewaters* makes clear that the right to earn a living or use one's real property to run a business is not a fundamental right, it cannot be said that the orders jeopardize the exercise of a fundamental right. As a result, it also cannot be plausibly said that the orders are not rationally related to the goals of protecting the public's health during the pandemic. Under rational basis review, equal protection is satisfied "so long as there is a plausible policy reason for the classification, the legislative facts on which the classification is apparently based may have been considered to be true by the governmental decisionmaker, and the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992) (citations omitted). Much like the judicial review for a due process claim, this is a very deferential standard. Courts uphold a classification against an equal protection challenge so long as any reasonably

conceivable facts might provide a rational basis for the classification. *United States v. Pickard*, 100 F. Supp. 3d 981, 1005 (E.D. Cal. 2015) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993)).

Sure, Plaintiffs allege that the Defendants intentionally and arbitrarily categorized their businesses as "non-essential." However, the Defendants' promulgated COVID-19 related orders ostensibly make distinctions among different businesses and imposes restrictions based on their individualized risk of spreading COVID-19. *See* RNJ, ECF No. 6-2, Ex. 7 at 34. Ostensibly, these are not arbitrary distinctions. There are reasonably conceivable facts set forth by the Defendants' orders that might provide a rational basis for the classification. In light of the deferential nature of rational basis review, courts considering equal protection challenges brought by business owners against COVID-19 restrictions have upheld the restrictions. In these circumstances, one cannot make out a plausible claim for relief for violation of the Equal Protection Clause.

Plaintiffs argue evidence of whether the orders run afoul of the Equal Protection Clause should be presented at a later proceeding and that their claim is plausible. To get to that point, Plaintiffs need to allege much more than a conclusion that the orders were arbitrary, capricious, and unconnected to any state interest. "[A]llegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences," are insufficient. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008 (9th Cir. 2018) (quoting *In re Gilead Sciences Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).

Other courts have concluded that the public health orders pass rational basis review. *See Steel MMA, LLC v. Newsom*, 2021 WL 778654, at *5, 2021 U.S. Dist. LEXIS 37709 (S.D. Cal. March 1, 2021) ("Notwithstanding Plaintiffs' arguments about the efficacy or sensibility of requiring gyms to be closed while allowing other businesses to remain open, Defendants could have a legitimate reason for enacting restrictions on any indoor operation of gyms and fitness centers"); *Professional Beauty Fed. of Cal. v. Newsom*, 2020 WL 3056126, at *7, 2020 U.S. Dist. LEXIS 102019 (C.D. Cal., June 8, 2020) (applying rational basis for restrictions on hair salons) ("At minimum, there are

'plausible, arguable, or conceivable' reasons for the State's designations."); *PCG-SP Venture I, LLC v. Newsom*, 2020 WL 4344631 at *6-8, 2020 U.S. Dist. LEXIS 137155 (C.D. Cal. June 23, 2020) (finding "rational basis to shutter and restrict California's hotels"). These opinions are persuasive. Therefore, Plaintiffs' second claim for relief is dismissed as to all Defendants. This Court finds amendment would be futile. Thus, the second claim is dismissed with prejudice.

### C. Third Claim for Relief: Fifth Amendment Takings

In the last claim, the Plaintiffs allege the County and City Defendants have caused either a complete, or at least a partial, regulatory taking of Plaintiffs' property without just compensation. Plaintiffs assert the orders have deprived Plaintiffs of all economically beneficial or productive use of their property.

Every federal court in California has held that COVID-19 health orders restricting businesses are not total[5] or regulatory[6] takings. *See e.g., Abshire v. Newsom*, 2021 U.S.

---

[5] A total, or *Lucas*, taking occurs when a regulation "completely deprive[s] an owner of 'all economically beneficial us[e]' of her property." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 538 (2005) (quoting *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992)) (second alteration in original). Government regulations that effect such a taking are typically those that require land to be left substantially in its natural state. *Lucas*, 505 U.S. at 1018. This is a "relatively narrow" and relatively rare taking category, *Lingle*, 544 U.S. at 538, confined to the "extraordinary circumstance when no productive or economically beneficial use of land is permitted," *Lucas*, 505 U.S. at 1017." By this exacting standard, the Complaint does not plausibly allege that Defendants' various orders amount to a total *Lucas* taking.

[6] In assessing whether a partial, or *Penn Central*, regulatory taking occurred, courts use a three-part balancing test. This fact-based inquiry looks at: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation interferes with distinct investment backed expectations; and (3) the character of the government action. *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978). Assessing these factors, this Court is persuaded to adopt the rationale of Mission Fitness Center in addressing the same COVID-related orders challenged by Ventura County fitness centers:
> Here, assuming plaintiffs can show an economic impact on their property interest and that the Orders interfered with their distinct investment-backed expectations, defendants' Orders nevertheless are quintessential examples of regulations that

Dist. LEXIS 147223, *20-24, 2021 WL 3418678 (E.D. Cal. Aug. 5, 2021) (dismissing complaint by restaurants and lodgings); *Mission Fitness Ctr., LLC v. Newsom*, 2021 U.S. Dist. LEXIS 89055, *22-26, 2021 WL 1856552 (C.D. Cal. May 10, 2021) (dismissing complaint by fitness center); *Metroflex Oceanside LLC v. Newsom*, 2021 U.S. Dist. LEXIS 65907, *9, 2021 WL 1251225 (S.D. Cal. Apr. 5, 2021) ("District courts have consistently rejected businessowners' claims that COVID-related restrictions constitute either a per se taking or a partial taking under *Penn Central*"); *Excel Fitness Fair Oaks, LLC v. Newsom*, 2021 U.S. Dist. LEXIS 39061, *14-16, 2021 WL 795670 (E.D. Cal. Mar. 1, 2021) (dismissing complaint by fitness center); *Culinary Studios, Inc. v. Newsom*, 2021 U.S. Dist. LEXIS 23775, *39-45, 2021 WL 427115 (E.D. Cal Feb. 5, 2021) (dismissing complaint by restaurants and fitness centers); *Pcg-Sp Venture I Llc v. Newsom*, 2020 U.S. Dist. LEXIS 137155, * 28-30, 2020 WL 4344631 (C.D. Cal. June 23, 2020) (hotel).  Other courts within the Ninth Circuit have reached the same conclusion. *See, e.g., Oregon Rest. & Lodging Ass'n v. Brown*, 2020 U.S. Dist. LEXIS 220414, * 15-18, 2020 WL 6905319 (D. Or Nov. 24, 2020); *Peinhopf v. Guerrero*, 2021 U.S. Dist. LEXIS 112021, *6, 2021 WL 2417150 (D. Guam June 14, 2021).

District courts beyond the Ninth Circuit draw similar conclusions.  *See, e.g. Skatemore, Inc. v. Whitmer*, 2021 U.S. Dist. LEXIS 166744, *15, 2021 WL 3930808 (W.D. Mich. Sept. 2, 2021) (dismissing complaint by bowling alley); *Case v. Ivey*, 2021 U.S. Dist. LEXIS 102520, *66-69, 2021 WL 2210589 (M.D. Ala. June 1, 2021) (dismissing complaint of barber shops); *Underwood v. City of Starkville*, 2021 U.S. Dist.

---

adjust[ ] the benefits and burdens of economic life to promote the common good[.]  Moreover, plaintiffs fail to explain why the Orders here constitute a partial regulatory taking when the Supreme Court has found that a 32-month, complete moratorium on development was not a taking under Penn Central.  As such, plaintiffs fail to state a claim for a partial regulatory taking.

*Mission Fitness Ctr., LLC. v. Newsom*, 2021 WL 1856552, at *10 (C.D. Cal 2021) (citations and quotations omitted).

LEXIS 90739, *22-28, 2021 WL 1894900 (N.D. Miss. May 11, 2021) (dismissing complaint of fitness center); *Daugherty Speedway v. Freeland*, 520 F. Supp. 3d 1070, 1078 (N.D. Ind. 2021) (dismissing complaint by racetrack); *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199, 220-23 (D. Conn. 2020) (landlords); *TJM 64, Inc. v. Harris*, 475 F. Supp. 3d 828, 837-40 (W.D. Tenn. 2020) (restaurants); *Elmsford Apt. Assocs., LLC v. Cuomo*, 469 F. Supp. 3d 148, 162-68 (S.D. NY 2020) (landlords); *Bimber's Delwood, Inc. v. James*, 496 F. Supp. 3d 760, 782-85 (W.D. NY 2020) (bars and pool halls); *Baptiste v. Kennealy*, 490 F. Supp. 3d 353, 387-90 (D. MA 2020) (landlords).

This Court agrees that Plaintiffs have not plausibly alleged a Takings Clause claim for relief. Therefore, Plaintiffs' third claim for relief is dismissed. Regarding leave to amend, this Court finds an attempt to cure the pleading deficiencies will be futile. The various COVID-19 related orders have withstood *Penn Central* scrutiny throughout California and Plaintiffs' alleged facts are not sufficiently distinguishable from those of businesses who have already unsuccessfully challenged the orders under the same test. Therefore, the third claim for relief is dismissed with prejudice.

**D. State Law Claims**

With the federal claims dismissed, this Court's "decision of whether to exercise supplemental jurisdiction over the remaining state law claims 'is purely discretionary.'" *Couture v. Wells Fargo Bank, N.A.*, No. 11cv1096-IEG (CAB), 2011 U.S. Dist. LEXIS 88821, *13, 2011 WL 3489955, at *4 (S.D. Cal. Aug. 9, 2011) (*quoting Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009)). Based on the timing of this dismissal, this Court finds it appropriate to decline supplemental jurisdiction over the remaining state law claims. *Slidewaters*, 4 F.4th at 762 (finding no abuse of discretion where district court remanded state claims after dismissing federal constitutional claims); s*ee also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (holding that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing

the case without prejudice"); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) ("A district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'") (quoting 28 U.S.C. § 1367(c)(3)).

## IV.   CONCLUSION

Defendants' motions to dismiss are **GRANTED**.[7]  As discussed *supra*, Plaintiffs will not be able to allege additional facts to plausibly allege cognizable federal claims for violations of due process, a violation of equal protection, or for an uncompensated taking. Therefore, further amendment will be futile and claims one, two, and three are dismissed with prejudice. The Court declines to exercise supplemental jurisdiction over the remaining state law claims and the claims are dismissed without prejudice.

**IT IS SO ORDERED.**

Dated: March 8, 2022

_____
**HON. ROGER T. BENITEZ**
United States District Judge

---

[7] Also before this Court are motions from several parties requesting judicial notice be taken of numerous documents and government website postings.  A court may take judicial notice of matters of public record including "government documents available from reliable sources on the internet," *California River Watch v. City of Vacaville*, 2017 WL 3840265, at *2 n.1 (E.D. Cal. Sept. 1, 2017).

Here, Defendants ask the Court to take judicial notice of the various Public Safety Guidelines issued by the California Department of Public Health, including those directly related to hair salons and fitness centers.  Finding these documents to be proper subjects of judicial notice, the Court grants Defendants' requests for judicial notice.